Robert G. Eliason (SBN 105645)
Norman D. Morrison IV (SBN 212090)
WILD, CARTER & TIPTON
A Professional Corporation
246 West Shaw Avenue
Fresno, California 93704
Telephone (559) 224-2131
Fax (559) 229-7295
E-mail: bobeli@comcast.net

Attorneys for Plaintiff, General Charles E. "Chuck" Yeager (Ret.)

**UNITED STATES DISTRICT COURT,**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.),<br><br>Plaintiff,<br><br>vs.<br><br>CINGULAR WIRELESS LLC; BELLSOUTH; SBC COMMUNICATIONS; AMERICAN TELEPHONE & TELEGRAPH; and DOES 1 to 200, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR VIOLATION OF COMMON LAW RIGHT TO PRIVACY; VIOLATION OF CALIFORNIA CIVIL CODE § 3344; VIOLATION OF 15 USC § 1125(a) ("FALSE ENDORSEMENT") ("LANHAM ACT"); VIOLATION OF CALIFORNIA UNFAIR BUSINESS PRACTICES ACT (BUS. & PROF. CODE §§ 17200 ET SEQ.); VIOLATION OF CALIFORNIA FALSE ADVERTISING ACT (BUS. & PROF. CODE §§ 17500 ET SEQ.); UNJUST ENRICHMENT; AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, GENERAL CHARLES E. "CHUCK" YEAGER (Ret.), ("YEAGER"), and as and for his complaint against Defendants, CINGULAR WIRELESS LLC ("CINGULAR"), SBC COMMUNICATIONS, BELLSOUTH and AMERICAN TELEPHONE AND TELEGRAPH WIRELESS ("AT&T"), hereby alleges as follows:

**I.   PRELIMINARY ALLEGATIONS**

   A.   NATURE OF ACTION

   1.   This is an action for breach of California common-law rights to privacy/publicity, violation of California Civil Code Section 3344, violation of the Lanham Act (15 U.S.C. § 1125(a)) for false endorsement, and unjust enrichment.  As set forth herein, Plaintiff GENERAL

COMPLAINT

1

1  YEAGER has a well-recognized and valuable identity arising out of his accomplishments,
2  including being recognized as the first man to exceed the speed of sound (also known as "Mach
3  1"), as well as subsequently exceeding twice the speed of sound (also known as "Mach 2")
4  shortly thereafter.  As a result of his recognizable and well-known identity, GENERAL
5  YEAGER has been retained to provide commercial endorsements for selected manufacturers,
6  and they have provided compensation for his services.  In 2004, Defendant CINGULAR utilized
7  GENERAL YEAGER's name and identity in connection with an advertisement for a new service
8  it was offering to and for its cellular wireless telephone subscribers.  An integral part of this
9  advertising service included use of two motor vehicles which CINGULAR named "MACH 1"
10 and "MACH 2".  Prior to invoking and utilizing GENERAL YEAGER's name and identity in
11 this commercial advertisement, CINGULAR made no effort to obtain any permission from, or
12 enter into any agreement with, GENERAL YEAGER for the use of his name and identity.
13 Although GENERAL YEAGER is customarily and ordinarily reimbursed when his name and
14 identity is used by a manufacturer or other corporate entity, CINGULAR refused to reimburse
15 GENERAL YEAGER at his normal and customary endorsement rate, and has repeatedly refused
16 to compensate GENERAL YEAGER for the use of his name and identity, in violation of
17 California law.  Further, the unauthorized use of GENERAL YEAGER's name and identity in
18 CINGULAR's advertisement constitutes a violation of the Lanham Act, inasmuch as
19 CINGULAR employed Plaintiff's name as a false endorsement of CINGULAR's products and
20 services.  Finally, by utilizing GENERAL YEAGER's name and identity while refusing to
21 compensate him for such use, CINGULAR has unjustly profited and been enriched by its
22 wrongful actions.

23  B. <u>JURISDICTION AND VENUE</u>

24       2.       Jurisdiction is proper under 28 USC §§ 1332 and 1367.  Plaintiff is informed and
25 believes that Defendant CINGULAR was a joint venture between Defendants SBC
26 COMMUNICATIONS and BELLSOUTH prior to the purchase by SBC COMMUNICATIONS
27 and BELLSOUTH of AT&T.  At such time, Defendant CINGULAR was a Delaware Company,
28 with its headquarters in Atlanta, Georgia.  Plaintiff is informed and believes that Defendant

2
COMPLAINT

**WILD, CARTER & TIPTON**
**A PROFESSIONAL LAW CORPORATION**
246 WEST SHAW
FRESNO, CALIFORNIA 93704
TELEPHONE (559) 224-2131

CINGULAR has been merged into Defendant AT&T, and now operates under the AT&T MOBILITY corporate identity. Defendant AT&T is a Delaware Company, with its headquarters in San Antonio, Texas and/or Atlanta, Georgia. Plaintiff GENERAL YEAGER is a citizen of the United States, who maintains his residency in California. The amount in controversy exceeds One Hundred Thousand Dollars ($100,000.00).

3. Jurisdiction is also proper under 28 USC § 1331.

4. Venue is proper in the Eastern District, as Defendants CINGULAR and AT&T have, and continue to, actively seek out and engage in business throughout California, have customers located within the Eastern District of California, have solicited customers from the Eastern District's jurisdiction, advertise within the Eastern District, and engage in contracts with companies and individuals located within the Eastern District, and Plaintiff's reside in this venue.

C. THE PARTIES

5. Plaintiff GENERAL YEAGER is a retired General Officer of the United States Air Force. GENERAL YEAGER's historical background and aviation accomplishments have all served to create a valuable, unique identity and commodity. As a brief summary of some of the more pertinent facts, GENERAL YEAGER served in the U.S. Army Air Force during World War II as a fighter pilot, flying P-51 Mustangs. During one mission GENERAL YEAGER was shot down, evaded capture, and aided local resistance forces. He escaped from behind enemy lines to American control, and resumed his duties as a fighter pilot. He then went on to become one of the few American fighter pilots to become an "ace in a day", by downing five (5) enemy fighters in one mission. At the end of World War II, GENERAL YEAGER had been credited with 11.5 official victories and was credited with holding one of the first victories in his fighter group against a jet fighter plane.

6. After World War II, GENERAL YEAGER became a test pilot. In that capacity, he accomplished the feat for which he is perhaps best known, that of being the first person to break the speed of sound (known and referred to as "Mach 1"). Shortly thereafter, he again broke records, becoming the first person to exceed 2.4 times the speed of sound ("Mach 2.4").

COMPLAINT

3

He subsequently set and/or broke additional aviation and speed records.  GENERAL YEAGER then went on to command the United States Air Force Aerospace Research Pilot School, the 405th Tactical Fighter Wing, the 4th Tactical Fighter Wing, and also served as Vice-Commander of the Seventeenth Air Force.

7. Following retirement GENERAL YEAGER continued to rack up accomplishments which contribute to the value of his identity.  He has set aircraft flight records in light, general, aircraft.  He has been featured, recognized, and honored for his accomplishments by such well-respected persons and entities as Marshall University, the State of West Virginia, President Ford, the National Aviation Hall of Fame, President Reagan and the Aerospace Walk of Honor.

8. GENERAL YEAGER has taken steps to utilize and protect his name, identity and image.  He has served as a spokesman for AC Delco Corp., which saw its sales increase as a result of the use of his name, likeness, identity and endorsement.  He has spoken to various groups, organizations, and committees.  He has been featured on the cover of numerous magazines as a result of his actions, status, and historical activities.  GENERAL YEAGER charges, and receives, a fee for the commercial use of his name, image, and/or identity, and additionally charges for any endorsements of products or companies.  GENERAL YEAGER also engages in activities and appearances resulting in substantial charitable contributions.

9. Plaintiff is informed and believes that Defendant CINGULAR was a joint venture operated by Defendants, SBC COMMUNICATIONS and SOUTHWESTERN BELL, to provide cellular phone services both inside and outside of the United States.  In this capacity, CINGULAR periodically prepared, funded, authorized and released commercials, "press releases," and other promotional or advertising materials.  Such promotional and advertising materials generally consisted of statements relating to CINGULAR's pricing and subscription costs, as well as statements designed to demonstrate the reliability, security and dependability of their cellular communications network.  These promotional and advertising materials were released in a variety of formats, including audio only, audiovisual, film, print, and via the internet.

4

COMPLAINT

10.    Plaintiff is informed and believes that subsequent to the actions alleged herein, Defendant CINGULAR was purchased and/or merged into Defendant AT&T, and subsequently has continued to operate under the general names of "AT&T", "AT&T Mobility", "AT&T Wireless", and/or "Wireless by AT&T."

11.    Plaintiff is informed and believes that Defendant SBC COMMUNICATIONS was one of the two owners of Defendant CINGULAR COMMUNICATIONS, a joint venture between SBC COMMUNICATIONS and BELLSOUTH, at the relevant times herein. Plaintiff is informed and believes that SBC COMMUNICATIONS subsequently purchased and/or merged with Defendant AT&T, and now operates under the general names "AT&T".

12.    Plaintiff is informed and believes that Defendant BELLSOUTH was one of the two owners of Defendant CINGULAR COMMUNICATIONS, a joint venture between SBC COMMUNICATIONS and BELLSOUTH, at the relevant times herein.

13.    Plaintiff is informed and believes that Defendant AT&T is the corporate successor and owner of Defendant CINGULAR COMMUNICATIONS. Plaintiff is informed and believes that Defendant SBC COMMUNICATIONS acquired AT&T in approximately late 2005, and as a result of this acquisition and other steps, Defendant CINGULAR became wholly owned by Defendant AT&T in approximately December, 2006. Defendant AT&T subsequently renamed Defendant CINGULAR to "AT&T MOBILITY", and continues to operate CINGULAR under the names "AT&T MOBILITY", "AT&T", and "Wireless from AT&T". This continued operation and ownership is demonstrated by Defendant AT&T's own web site, which includes the statements "Wireless from AT&T, formerly CINGULAR WIRELESS, is the largest wireless company in the United States, with more than 63 million subscribers who use the nation's largest digital voice and data network." (http://www.wireless.att.com/about/) and "Following AT&T's merger with BELLSOUTH in December 2006, CINGULAR WIRELESS is now solely owned by AT&T." (http://www.wireless.att.com/about/cingular-history.jsp).

D.    THE UNAUTHORIZED USE OF GENERAL YEAGER'S NAME AND IDENTITY

14.    Plaintiff is informed and believes that on approximately May 17, 2006, Defendant CINGULAR caused to be issued an advertising/promotional article styled as a "Press Release"

COMPLAINT 5

WILD, CARTER & TIPTON
A PROFESSIONAL LAW CORPORATION
246 WEST SHAW
FRESNO, CALIFORNIA 93704
TELEPHONE (559) 224-2131

(the "infringing material"). The infringing material was intended to highlight the reliability, durability and security of CINGULAR's cellular communications network, and highlighted CINGULAR's launching of a new service designed to respond to disaster or emergencies to ensure the continued provision of cellular service.

15. A copy of the infringing material is attached hereto as Exhibit "1". The pertinent paragraph states:

> "Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier and achieved Mach 1. Today, Cingular is breaking another kind of barrier with our MACH 1 and MACH 2 mobile command centers, which will enable us to respond rapidly to hurricanes and minimize their impact on our customers," de la Vega said. (http://att.centralcast.net/cingularnewsarchive/Release.aspx?ID=3944, visited 11/2/2007; also see http://www.wireless.att.com/learn/articles-resources/emergency-preparedness.jsp. ; last visited 11/7/2007)

16. Defendants actively took steps to distribute and disseminate the infringing material, and made the infringing material available to others for republication and distribution.

17. The infringing material was published, distributed and disseminated in a variety of media, including on various websites believed to be owned, managed, or controlled by Defendants. The infringing material continues to be widely available on the Internet, and is easily located by performing a search utilizing such search engines as Yahoo! and Google. The infringing material continues to be made available on Defendant AT&T's corporate website following AT&T's acquisition of CINGULAR. (A copy of the infringing materials is located at http://att.centralcast.net/cingularnewsarchive/Release.aspx?ID=3944, visited 11/2/2007; also see http://www.wireless.att.com/learn/articles-resources/emergency-preparedness.jsp ; last visited 11/7/2007)

18. By utilizing GENERAL YEAGER's name, identity and likeness in the infringing material, Defendants impaired the ability of GENERAL YEAGER to negotiate representation agreements with other cellular and wireless service providers, thereby depriving him of his established earning potential.

///
///
///

6

COMPLAINT

## II. CLAIMS FOR RELIEF

### 1. FIRST CLAIM FOR RELIEF

### (Violation of California Common Law Right to Privacy/
### Right to Control Publicity and Likeness)

19. Plaintiff incorporates herein by reference paragraphs 1-18 as if they were set forth in full herein.

20. On or about May 16, 2006, Defendants, without Plaintiff's prior consent or agreement, invaded Plaintiff's right to privacy by utilizing his name and identity through utilizing it in the infringing materials in such a manner that it could be inferred that Plaintiff was actually, or had agreed to, endorse Defendants' services and products.

21. The statement which is the basis of the invasion of privacy is attached hereto as Exhibit "1", and set forth in both Exhibit "1" and paragraph 13.

22. The appropriation was unauthorized and without Plaintiff's consent or agreement.

23. Defendants' conduct involved the appropriation of Plaintiff's personality, name, likeness and identity because the use of Plaintiff's name in association with the infringing materials implied his assistance with its preparation, consent to its use, and constituted the use of his expertise, professional status, and endorsement.

24. The appropriation was for the Defendants' advantage in that the Plaintiff is an extremely well known and recognized individual, has a record of success in the endorsement of other products, and was made for the Defendants' pecuniary gain and profit.

25. As a proximate result of the above disclosure, Plaintiff suffered loss of reputation and standing in the community, all of which caused him humiliation, embarrassment, hurt feelings, mental anguish, and suffering all to his general damage in an amount according to proof.

26. As a further proximate result of the above-mentioned disclosure, Plaintiff has suffered injury to his business, in that he has lost the ability to enter into endorsement and representation agreements with potential competitors or rivals of Defendants as he has been viewed as endorsing Defendants and their products and services, and the value and utility of his

WILD, CARTER & TIPTON
A PROFESSIONAL LAW CORPORATION
246 WEST SHAW
FRESNO, CALIFORNIA 93704
TELEPHONE (559) 224-2131

1  name has been impaired by the wrongful, improper, and unlicensed use of his name, likeness and
2  identity all to his special damage in an amount according to proof.

3      27.    In making the disclosure described above, Defendants were guilty of oppression,
4  fraud, or malice, in that Defendants made the disclosure with the intent to injure and annoy
5  Plaintiff by utilizing his established, well known name, likeness and identity with a willful and
6  conscious disregard of Plaintiff's rights.  Plaintiff therefore seeks an award of punitive damages.

7      28.    Defendants have continued to maintain and disseminate the infringing material,
8  and continues to make it available to a worldwide audience on its web site.  Unless and until
9  enjoined and restrained by Order of this Court, Defendants' continued publication will cause
10 Plaintiff great and irreparable injury in that material that appears to indicate that Plaintiff
11 supports and endorses Defendants' products and services will continue to be made available,
12 thereby interfering with Plaintiff's ability to engage in endorsement agreements with potential
13 competitors of Defendants.  Plaintiff has no adequate remedy at law for the injuries being
14 suffered in that Defendants took active steps to disseminate and publish the infringing material,
15 and as a result of Defendants' intentional actions the infringing material is now available on a
16 number of independent websites.

17     29.    Plaintiff first discovered the foregoing and operative facts subsequent to the
18 republication of same less than one year prior to the filing of this Complaint.

### 2. SECOND CLAIM FOR RELIEF
### (Violation of California Civil Code § 3344)

22     30.    Plaintiff incorporates herein by reference each of the preceding allegations of this
23 Complaint as if they were set forth in full herein.

24     31.    California Civil Code § 3344 provides in relevant portion that:

> any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent…shall be liable for any damages sustained by the person or persons injured as a result thereof.  In addition, in any action brought under this section, the person who violated the section shall be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a

WILD, CARTER & TIPTON
A PROFESSIONAL LAW CORPORATION
246 WEST SHAW
FRESNO, CALIFORNIA 93704
TELEPHONE (559) 224-2131

result of the unauthorized use, and any profits from the unauthorized use that are attributable to the use and are not taken into account in computing the actual damages. In establishing such profits, the injured party or parties are required to present proof only of the gross revenue attributable to such use, and the person who violated this section is required to prove his or her deductible expenses. Punitive damages may also be awarded to the injured party or parties…The prevailing party in any action under this section shall also be entitled to attorney's fees and costs.

32. Plaintiff's name and identity were utilized in the Defendants' infringing material without his permission or consent.

33. The commercial value of Plaintiff's name and identity has been established by prior endorsement agreements and similar agreements. The use of Plaintiff's name and identity in endorsement deals for other companies has resulted in an increase in sales and marketing, and it is therefore likely that use of Plaintiff's name and identity here similarly resulted in an increase in Defendants' profits.

34. At the time of the infringing materials, Plaintiff customarily charged One Hundred Thousand Dollars ($100,000.00) to One Hundred Fifty Thousand Dollars ($150,000.00) per year as an endorsement fee.

35. As a result of Defendants' wrongful actions, Plaintiff has been forced to retain counsel and bring this suit.

36. Plaintiff therefore seeks general damages, specific damages, punitive damages and attorneys' fees and costs.

37. Plaintiff first discovered the foregoing and operative facts subsequent to the republication of same less than one year prior to the filing of this Complaint.

### 3. THIRD CLAIM FOR RELIEF

**(Violation of Lanham Act, 15 USC § 1125(a)/False Endorsement)**

38. Plaintiff incorporates herein by reference each of the preceding allegations of this Complaint as if they were set forth in full herein.

39. The pertinent language of 15 U.S.C. § 1125(a) provides that:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any

9
COMPLAINT

combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

40. Defendants are engaged in the business of providing goods and services, specifically including cellular and wireless phone and data services to consumers throughout the United States. The infringing material was made in support of Defendants' business activities, and is directly related to the goods and services provided by Defendants.

41. Defendants' use of Plaintiff's name, likeness, and identity in the infringing material constituted a false or misleading description of fact or misrepresentation of fact that is likely to cause confusion to consumers, and deceives consumers as to the affiliation, connection, and/or association of Plaintiff with Defendants.

42. Defendants' use of Plaintiff's name, likeness, and identity was made without Plaintiff's permission, knowledge, or license.

43. Plaintiff has been, and is likely to continue to be, harmed by the misrepresentation of fact.

44. Plaintiff therefore seeks general damages, specific damages, punitive damages and attorneys' fees and costs.

45. Plaintiff first discovered the foregoing and operative facts subsequent to the republication of same less than one year prior to the filing of this Complaint.

### 4. FOURTH CLAIM FOR RELIEF
### (Unjust Enrichment)

46. Plaintiff incorporates herein by reference each of the preceding allegations of this Complaint as if they were set forth in full herein.

47. Defendant has unjustly enriched itself by receiving a benefit – the use of Plaintiff's extremely well known and established name, likeness, and identity in an advertisement endorsing and supporting Defendants' products – and profited thereby. By doing

10
COMPLAINT

so, and by refusing to compensate Plaintiff for his established endorsement fee, Defendants did, and continue to, unjustly retain the benefit at the expense of Plaintiff.

48. Plaintiff therefore seeks restitution of the benefit unjustly retained by Defendants and attorneys fees and costs.

49. Plaintiff first discovered the foregoing and operative facts subsequent to the republication of same less than one year prior to the filing of this Complaint.

## 5. FIFTH CLAIM FOR RELIEF

### (Violation of California Business & Professions Code § 17200 et seq. – Unfair Business Practices)

50. Plaintiff incorporates herein by reference each of the preceding allegations of this Complaint as if they were set forth in full herein.

51. By designing, creating, releasing, distributing and permitting the infringing materials to remain available for viewing on internet websites owned or controlled by Defendants, Defendants have engaged in, and are still engaging in, unfair competition and business practices as defined in California Business and Professions Code Section 17200, throughout the State of California.

52. Such unfair competition and business practices include, but are not limited to, the following:

(a) Defendants caused the infringing materials to be created and released, and intentionally utilized the name, identity and likeness of Plaintiff while knowing that they had no authorization, permission, license, or grant to utilize Plaintiff's name, identity and likeness;

(b) Defendants violated Plaintiff's common law right to privacy by misappropriating his name or likeness for their own use and enjoyment;

(c) Defendants violated California Civil Code § 3344 by misappropriating Plaintiff's name, likeness or identity for purposes of commercial gain;

(d) Defendants' creation, release, and distribution of the infringing material

11
COMPLAINT

constituted a violation of 15 USC 1125(a), the "Lanham Act", by creating or implying a false endorsement of Defendants' products by Plaintiff;

(e) By the use of Plaintiff's well recognized and established name and identity, the Defendants profited at Plaintiff's expense;

(f) By implying that the Plaintiff had endorsed Defendants' products, Defendants impaired Plaintiff's ability to seek out possible endorsement or representation agreements and contracts with other cellular service providers, thereby interfering with Plaintiff's potential business agreements.

53. As a result of the foregoing, Plaintiff is entitled to civil penalties, an Order for the restitution of any and all monies or property obtained and disgorgement of all profits derives from or achieved through the use of Plaintiff's name, identity or likeness, attorneys fees and costs, and injunctive relief.

54. Plaintiff first discovered the foregoing and operative facts subsequent to the republication of same less than one year prior to the filing of this Complaint.

## 6. **SIXTH CLAIM FOR RELIEF**
### **(Violation of California False Advertising Act)**

55. Plaintiff hereby incorporates by reference each of the preceding allegations as if they were fully set forth herein.

56. California's False Advertising Law (California Bus. & Prof. Code §§ 17500 et seq.) makes it unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,…in any advertising device…or in any other manner or means whatsoever, including over the internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

57. Defendants disseminated to members of the public in this State, and throughout the United States and abroad, the infringing material that was deceptive in that it could lead a

12
COMPLAINT

reasonable person to infer that GENERAL YEAGER had endorsed the Defendants' products. These statements were disseminated through a variety of means, including but not limited to advertisements made over the internet.

58. The statements were untrue and misleading.

59. Defendants knew, or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

60. Defendants' actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

61. As a direct and proximate result of these acts, consumers have been and are being harmed.

62. Plaintiff first discovered the foregoing and operative facts subsequent to the republication of same less than one year prior to the filing of this Complaint.

### III. Relief Sought/Prayer

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

60. For general damages according to proof.

61. For statutory damages, according to proof.

62. For special damages, according to proof.

63. For exemplary or punitive damages, according to proof.

64. For restitution of any and all benefits received by Defendants through the use of Plaintiff's name, identity, and likeness.

65. For costs of suit incurred herein.

66. For reasonable attorneys fees incurred in filing and prosecuting this suit.

67. For injunctive relief to prohibit, prevent and bar Defendants from continuing to utilize, or permit to be utilized, GENERAL YEAGER's name in connection with Defendants' products, services, or endeavors without an executed agreement; and to require Defendants to

///

///

13
COMPLAINT

1 affirmatively act to remove the infringing material from the Internet and other mediums where it
2 is still accessible.

## DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, GENERAL CHARLES E. "CHUCK" YEAGER, and hereby demands trial by jury on all claims in and for the above-captioned action.

Date: November 21, 2007

                WILD, CARTER & TIPTON
                A Professional Corporation

                /s/  Robert G. Eliason
                ROBERT G. ELIASON, ESQ.

                Attorneys for Plaintiff,
                Gen. Charles "Chuck" Yeager (Ret.)

WILD, CARTER & TIPTON
A PROFESSIONAL LAW CORPORATION
246 WEST SHAW
FRESNO, CALIFORNIA 93704
TELEPHONE (559) 224-2131

14
COMPLAINT

**Exhibit 1**

En Español | Asian La



**Residential**
**Small Business**
**Enterprise Solutions**
**Customer Support**
**Corporate Information**



Refine Search

<< [Back to News Rele

### Cingular Wireless Announces Enhanced Emergency Preparednes Program for 2006 Hurricane Season

**Company rolls out mobile command centers to help restore service when disaster strikes**

TAMPA, Fla., May 17 /PRNewswire/ -- Cingular Wireless today announced an expande emergency preparedness program for the 2006 hurricane season. At the heart of this multifaceted program are two new mobile command centers that can be brought into affected area quickly, providing full communications capabilities as well as working ar sleeping quarters for Cingular employees. The objective: Making sure wireless service be restored as quickly as possible.

Cingular is investing $1.8 billion this year to enhance and improve its network covera the Southeast, including adding more than 800 new cell sites. That investment includ more than $60 million for hurricane preparedness to harden the network with additio generators and to implement Cingular's enhanced emergency response program.

"Cingular's goal is to be as prepared as possible whenever and wherever disaster hits be able to restore any wireless service outages as quickly as possible; and to assist w overall relief efforts as much as we possibly can," said Ralph de la Vega, chief operati officer of Cingular. "We continue to invest millions of dollars in our networks, our syst and our emergency response efforts to be better prepared for hurricanes and other disasters."

This year, Cingular will introduce two new two mobile command centers called Mobile Access Command Headquarters (MACH 1 and MACH 2) to its hurricane and disaster r efforts. These fully-equipped, completely self-sufficient centers can be rapidly deploye into an affected area where they can be set up and operating within two hours of arri They are equipped with generators, a satellite dish for constant communications, LAN connectivity and a PBX phone system. More than 30 technicians can work in and from MACH 1 and MACH 2. MACH 1 is a 53-foot tractor-trailer that expands on each side to reveal 1,000 square feet of workspace. MACH 2 is a 38-foot gooseneck trailer that ca transported to more remote locations.

"Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier achieved Mach 1. Today, Cingular is breaking another kind of barrier with our MACH and MACH 2 mobile command centers, which will enable us to respond rapidly to hurricanes and minimize their impact on our customers," de la Vega said.

Other elements of Cingular's enhanced emergency preparedness program include:

        - Permanent and portable generators.  Cingular has added 1,200 perman

**Sign-up and Save!**
Exclusive offers and helpful tips from our monthly up2speed email newsletter.
Register | Update Profile

```
            and portable generators, bringing the total to more than 4,500.  Ce
            sites located in hurricane-affected areas are equipped with these
            generators, and can run for up to 36 hours without refueling during
            commercial power outages.
          - Two emergency communications SUVs.  These house military-grade
            satellite communications with access to the Internet, multi-channel
            voice over IP capability, radio communications and satellite news a
            information.
          - Cells on Wheels (COWs). These are self-contained mobile cell sites
            can be towed or driven into an area to provide extra call capacity
            to restore communications following a disaster.
          - Cells on Light Trucks or (COLTs).  These are trucks that can be dri
            to a location where a mobile cell site is needed and include two ma
            for microwave antennas.
          - Mobile Sales Office.  This is a mobile store stocked with batteries
            chargers and replacement phones; inventory that first responders ne
            most in emergency situations.
          - A four-person R.V.  This can support up to four technicians for sev
            days who are working to restore service.
          - Full hazardous materials capability.  This consists of equipment an
            training that enables Cingular emergency responders to work on any
            hazmat event in partnership with BellSouth's SABER (Service Assuran
            Brigade/Emergency Response) team.
          - Generators.  These will be deployed onto flatbed trailers and then
            transported to cell sites, retail stores, switches, offices, call
            centers and anywhere else back-up power may be needed.
          - Base camp.  This includes two sleeping tents with floors, carpet,
            showers, bathrooms, and washers and dryers, air conditioning and he
            for more than 80 people.  Base camp staff will have access to a ful
            kitchen and dining facility, and Cingular has already pre-ordered
            12,000 ready-to-eat meals.  In addition, the camp will be staffed b
            full-time nurse.
```

All of Cingular's enhanced emergency preparedness equipment, which is housed near Atlanta, can be deployed in just two to four hours, the company noted. Atlanta is also location of the company's regional network operations center, which monitors and maintains Cingular's network 24/7 and allows Cingular personnel to assess and begin act on an emergency situation within minutes.

Cingular provides updated information on its hurricane preparation and tips for consu to stay in touch during and after a storm strikes at http://www.cingularhurricaneupdates.com/ . High resolution photos are also available download on the site.

About Cingular Wireless

Cingular Wireless is the largest wireless carrier in the United States, serving 55.8 mill customers. Cingular, a joint venture between AT&T Inc. (NYSE: T) and BellSouth Corporation (NYSE: BLS), has the largest digital voice and data network in the nation the ALLOVERâ„¢ network -- and the largest mobile-to-mobile community of any natio wireless carrier. Cingular is a leader in third generation wireless technology. Its 3G network is the first widely available service in the world to use HSDPA (High Speed Downlink Packet Access) technology. Cingular is the only U.S. wireless carrier to offer RolloverÂ®, the wireless plan that lets customers keep their unused monthly minutes Details of the company are available at http://www.cingular.com/. Get Cingular Wirel press releases emailed to you automatically. Sign up at http://cingular.mediaroom.co

SOURCE: Cingular Wireless

CONTACT: Regional Media, Caroline Crowe, wireless, +1-404-808-8254, or caroline.crowe@cingular.com, or National Media, Mark Siegel, office, +1-404-236-6312, or mark.a.siegel@cingular.com, both of Cingular Wireless

Web site: http://www.cingularhurricaneupdates.com/
http://www.cingular.com/

http://cingular.mediaroom.com/

© 2003-2007 AT&T Knowledge Ventures. All rights reserved. Privacy Policy YELLOWPAGES.com