UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GENERAL CHARLES E. "CHUCK"
YEAGER (RET.),

        NO. CIV. S-07-2517 FCD GGH

      Plaintiff,

    v.               <u>MEMORANDUM AND ORDER</u>

CINGULAR WIRELESS LLC;
BELLSOUTH; SBC COMMUNICATIONS;
AMERICAN TELEPHONE &
TELEGRAPH; and DOES 1 to 200,
inclusive,

      Defendants.

----oo0oo----

    This matter is before the court on defendant AT&T Mobility

LLC's[1] ("defendant" or "AT&T") motion to dismiss plaintiff

General Charles E. Yeager's ("plaintiff" or "Yeager") complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

     [1]    On March 27, 2008, pursuant to the parties'
stipulation, the court ordered that AT&T Mobility, LLC be
substituted as defendant and that all other named defendants were
dismissed without prejudice.  (Stip. & Order [Docket #12], filed
Mar. 27, 2008.)

Procedure.  Plaintiff opposes the motions.  For the reasons set
forth below,[2] defendant's motion is DENIED.

**BACKGROUND**

Plaintiff Yeager is a retired General Officer of the United
States Air Force. (Compl., filed Nov. 21, 2007, ¶ 5.)  He served
in the Air Force during World War II as a fighter pilot, flying
P-51 Mustangs.  (Id.)  During one mission, Yeager was shot down,
evaded capture, and aided local resistance forces.  (Id.)  He
escaped from behind enemy lines to American control and resumed
his duties.  (Id.)  He is one of the few American fighter pilots
to become an "ace in a day," by downing five enemy fighters in
one mission.  (Id.)

After World War II, Yeager became a test pilot.  (Id. ¶ 6.)
In that capacity, he became the first person to break the speed
of sound, known as Mach 1.  (Id.)  Shortly thereafter, he became
the first person to exceed 2.4 times the speed of sound, known as
Mach 2.  (Id.)  He subsequently set and/or broke additional
aviation and speed records.  (Id.)  He has been featured,
recognized, and honored for his accomplishments by persons and
entities such as Marshall University, the State of West Virginia,
President Ford, the National Aviation Hall of Fame, President
Reagan, and the Aerospace Walk of Honor.  (Id.)

Yeager has utilized his name, identity, and image. (Id. ¶
8.)  He served as a spokesman for AC Delco Corp., which saw its
sales increase as a result of the use of his name, likeness,

_____

[2]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
See E.D. Cal. L.R. 78-230(h).

2

1  identity, and endorsement.  (Id.)  He has spoken to various

2  groups, organizations, and committees.  (Id.)  He has been

3  featured on the cover of numerous magazines as a result of his

4  actions, status, and historical activities.  (Id.)  Yeager

5  charges and receives a fee for the commercial use of his name,

6  image, and/or identity, and charges for any endorsements of

7  products or companies.  (Id.)

8      On approximately May 17, 2006, defendant[3] issued an

9  advertising/promotional article (the "publication") styled as a

10  "Press Release."  (Id. ¶ 14.)  The publication was intended to

11  highlight the reliability, durability, and security of

12  defendant's cellular communications network.  (Id.)  It focused

13  upon defendant's launching of a new service designed to respond

14  to disaster or emergencies to ensure the continued provision of

15  cellular service.  (Id.)  Specifically, the publication provides,

16  in relevant part:

17      Nearly 60 years ago, the legendary test pilot Chuck
       Yeager broke the sound barrier and achieved Mach 1.
18      Today, Cingular is breaking another kind of barrier
       with our MACH 1 and MACH 2 mobile command centers,
19      which will enable us to respond rapidly to hurricanes
       and minimize their impact on our customers.

20

21  (Id. ¶ 15; Ex. 1 to Compl.)  Plaintiff alleges that by utilizing

22  his name and identity in the article, defendant impaired his

23  ability to negotiate representation agreements with other

24  cellular and wireless service providers.  (Id. ¶ 18.)

25  _____

26      [3]  The complaint alleges that defendant Cingular Wireless
   LLC issued the material, but the Stipulation and Order was based
   upon plaintiff's reliance upon express representations that
27  defendant AT&T was responsible for the publication of the
   material that is the subject of this action.  (Stip & Order
28  [Docket #12].)

1    Plaintiff brings claims for (1) violation of the Lanham Act,
2 15 U.S.C. § 1125(a); (2) violation of California common law right
3 to privacy/right to control publicity and likeness; (3) violation
4 of California Civil Code § 3344; (4) unjust enrichment; (5)
5 violation of California Business and Professions Code § 17200;
6 and (6) violation of California False Advertising Act.  Defendant
7 moves to dismiss all of plaintiff's claims.

8                              **STANDARD**

9    On a motion to dismiss, the allegations of the complaint
10 must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319, 322
11 (1972).  The court is bound to give plaintiff the benefit of
12 every reasonable inference to be drawn from the "well-pleaded"
13 allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>
14 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
15 need not necessarily plead a particular fact if that fact is a
16 reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

17    Nevertheless, it is inappropriate to assume that the
18 plaintiff "can prove facts which it has not alleged or that the
19 defendants have violated the . . . laws in ways that have not
20 been alleged."  <u>Associated Gen. Contractors of Calif., Inc. v.</u>
21 <u>Calif. State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).
22 Moreover, the court "need not assume the truth of legal
23 conclusions cast in the form of factual allegations."  <u>United</u>
24 <u>States ex rel. Chunie v. Ringrose</u>, 788 F.2d 638, 643 n.2 (9th
25 Cir. 1986).

26    Ultimately, the court may not dismiss a complaint in which
27 the plaintiff has alleged "enough facts to state a claim for
28 relief that is plausible on its face."  <u>Bell Atlantic Corp. v.</u>

                                   4

1  Twombly, 127 S. Ct. 1955, 1974 (2007).  Only where a plaintiff

2  has not "nudged [his or her] claims across the line from

3  conceivable to plausible," is the complaint properly dismissed.

4  Id.  "[A] court may dismiss a complaint only if it is clear that

5  no relief could be granted under any set of facts that could be

6  proved consistent with the allegations."  Swierkiewicz v. Sorema

7  N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King &

8  Spalding, 467 U.S. 69, 73 (1984)).

9                              **ANALYSIS**

10      Defendant moves to dismiss plaintiff's claims on the basis

11  that (1) the reference to plaintiff's name is protected by the

12  First Amendment; (2) plaintiff's trademark claims fail as a

13  matter of law; (3) the reference to plaintiff's name was

14  incidental and constituted permissible fair use; and (4) all his

15  remaining claims are substantially congruent and thus, also fail

16  as a matter of law.

17  **A.   First Amendment**

18      Defendant first contends that the use of plaintiff's name in

19  the publication is protected by the First Amendment because the

20  material was a "news release" and addresses a matter of public

21  interest.  Plaintiff contends that the publication was not news,

22  but commercial speech that sought to capitalize upon plaintiff's

23  popularity, recognition, and appeal.

24      The use of a plaintiff's identity is not actionable where

25  the publication relates to matters of the public interest, "which

26  rests on the right of the public to know and the freedom of the

27  press to tell it."  Downing v. Abercrombie & Fitch, 265 F.3d 994,

28  1001 (9th Cir. 2001) (quoting Montana v. San Jose Mercury News,

                                   5

   Case 2:07-cv-02517-KJM-DAD   Document 19   Filed 06/12/08   Page 6 of 14

1  Inc., 34 Cal. App. 4th 790, 793 (1995)).  "The First Amendment

2  defense extends 'to almost all reporting of recent events,' as

3  well as to publications about 'people who, by their

4  accomplishments, mode of living, professional standing, or

5  calling, create a legitimate and widespread attention to their

6  activities.'"  Id. (quoting Eastwood v. Superior Court, 149 Cal.

7  App. 3d 409, 422 (1983).  However, under both Ninth Circuit and

8  California law, commercial speech is actionable when a

9  "plaintiff's identity is used, without consent, to promote an

10 unrelated product" of a defendant.  Gionfriddo v. Major League

11 Baseball, 94 Cal. App. 4th 400, 413 (2001) (citing Newcombe v.

12 Adolf Coors Co., 157 F.3d 686, 691-94 (9th Cir. 1998); Abdul-

13 Jabbar v. Gen. Motors Corp., 85 F.3d 407, 416 (9th Cir. 1996);

14 Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1097-98 (9th Cir. 1992);

15 White v. Samsung Electronic Am., Inc., 971 F.2d 1395, 1396 (9th

16 Cir. 1992); Midler v. Ford Motor Co., 849 F.2d 460, 461 (9th Cir.

17 1988)).  Where the use of a plaintiff's identity in an

18 advertisement is merely illustrative of a commercial theme or

19 product and does not contribute significantly to a matter of

20 public interest, a defendant cannot avail itself of the First

21 Amendment defense.  Downing, 265 F.3d at 1002-03 (holding that

22 the First Amendment defense was inapplicable where the use of

23 plaintiff's photograph was used "essentially as window-dressing

24 to advance the catalog's" theme).

25      In this case, plaintiff alleges that defendant's publication

26 was an "advertising/promotional article styled as a 'Press

27 Release" and was intended to highlight the reliability,

28 durability, and security of defendant's cellular communications

6

network.  (Compl. ¶ 14.)  On a motion to dismiss, the court must take as true plaintiff's allegation that the article, although titled as a "news release," was really an advertisement.  Viewing the allegations in the light most favorable to the plaintiff and drawing all reasonable inferences therefrom, the complaint sufficiently alleges that defendant used plaintiff's name and reputation for its own advantage to promote an unrelated product or theme.  These allegations are not contradicted on their face by the text of the publication attached to the complaint.[4]

Defendant argues in both its moving papers and reply brief that the publication is a news release on emergency preparedness and thus, asks the court to make a determination that it is entitled to First Amendment protection as a matter of law.  At this stage of the litigation, where the court may only look at the allegations in the complaint and must view those allegations in the light most favorable to the plaintiff, the court cannot make such a determination.  Nor has defendant cited the court any case where a court has made such a determination on a motion to dismiss.  Therefore, in light of the procedural posture of this motion and the allegations set forth in the complaint, the court cannot find that defendant may avail itself of the First Amendment defense as a matter of law.[5]

_____

[4]    The court notes that it is not making a finding, as a matter of law, regarding the nature or interpretation of the publication.  Rather, the court merely notes that, on a motion to dismiss, the publication could be read consistently with plaintiff's allegations.

[5]    The court also notes that defendant is not precluded from raising these arguments at a later stage in the litigation where the court would apply a different standard of review and may properly consider evidence.

**B.   Trademark**

Defendant also contends that plaintiff's trademark claims fail as a matter of law because his achievements in breaking the sound barrier are within the public domain.  Plaintiff contends that he has sufficiently alleged a claim under the Lanham Act, 15 U.S.C. § 1525(a), through defendant's unauthorized use of his name and identity in connection with the alleged advertisement.

A false endorsement claim is actionable under the Lanham Act where a party can show that the use of any false or misleading representation of fact is "likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person." Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1107 n.7 (9th Cir. 1992); 15 U.S.C. § 1525(a).  In order to prevail on a false endorsement claim, a plaintiff must demonstrate that the alleged advertisement created a likelihood of confusion over whether the plaintiff was endorsing defendant's product. White v. Samsung Electronics Am., Inc., 971 F.2d 1395, 1399-1400 (9th Cir. 1992) (internal citations omitted).

In this case, plaintiff alleges that the use of plaintiff's name and identity was both unauthorized and likely to cause confusion by consumers as to the affiliation, connection, and/or association of plaintiff with defendants.  Viewing the publication in light of plaintiff's allegations, which the court must accept as true, plaintiff has sufficiently stated a claim for false endorsement in violation of the Lanham Act.

Defendant argues that plaintiff's achievement in breaking the sound barrier is a matter common to all and thus, plaintiff does not have an actionable interest in the publication.

8

Defendant relies primarily on the Ninth Circuit's decision in Nancy Ann Storybook Dolls, Inc. v. Dollcraft, Co., 197 F.2d 293 (9th Cir. 1952). However, the facts of Nancy Ann are clearly distinguishable from the facts alleged in plaintiff's complaint. In Nancy Ann, the plaintiff, a marketer of dolls, brought suit against a competing manufacturer, asserting that it was infringing its trademarks in the names Storybook, Goldilocks, Little Bo-Peep, June Girl, Mistress Mary, Little Miss Donnett, Red Riding Hood, Little Miss Muffett, and Story. 197 F.2d at 295. The Ninth Circuit noted that the names for which the plaintiff sought protection identified "characters well-known in the literature of childhood for scores of years" and that those names were descriptive of those characters, not the output of the plaintiff. Id. The court further noted that manufacturers cannot reach into the public domain and appropriate portions for their exclusive use. Id. Therefore, the court held that the plaintiff did not have an actionable trademark claim.

Conversely, in this case, plaintiff's interest in his name and identity was created by his own actions. None of the allegations in the complaint support defendant's analogy that plaintiff is attempting to take a name or identity that has already passed into the public domain and appropriate it for his own use. As such, at this stage in the litigation, defendant's argument that plaintiff does not have an actionable interest in his name and identity under the Lanham Act is unavailing.

**C.   Defenses**

Defendant next contends that the use of plaintiff's name in the publication is not actionable because the use was merely

9

incidental, and because it constituted permissible fair use. Plaintiff argues that defendant's alleged defenses are premature and should not be considered on a motion to dismiss.

On a motion to dismiss, the court's analysis is limited to facts alleged in the pleadings, and all reasonable inferences must be construed in the light most favorable to the plaintiff. See Cruz, 405 U.S. at 322; Schermerhorn, 373 U.S. at 753 n.6.   In this context, the court generally agrees that it would be highly unusual for a court to dismiss a complaint on the basis that a defendant has proven an affirmative defense.   Designer Skin, LLC v. S&L Vitamins, Inc., CV 05-3699, 2007 WL 841471 (D. Ariz. Mar. 19, 2007).   However, where the court can discern from the face of the pleadings that an affirmative defense applies as a matter of law, dismissal pursuant to Rule 12(b)(6) may be appropriate.   See Weisbach v. County of Los Angeles, 119 F.3d 778, 783 n.1 (9th Cir. 1997) ("A plaintiff may plead herself out of court.") (quotations and citation omitted).

### 1.   Incidental Use

Defendant contends that plaintiff's claims fail because defendant's reference to plaintiff in the publication constituted incidental use.[6]   "Whether the incidental use doctrine is

---

[6]   It is not clear from defendant's motion and the cases cited in support of this argument whether it is asserting incidental use as a defense to only plaintiff's Lanham Act and California False Advertising Act claims or to all of plaintiff's claims.   Incidental use is generally raised as a defense to claims based on right of publicity or misappropriation of name or likeness.   See Pooley v. National Hole-In-One Ass'n, 89 F. Supp. 2d 1108 (D. Ariz. 2000); Henley v. Dillard Dept. Stores; 46 F. Supp. 2d 587 (N.D. Tex. 1999); see also Restatement (Second) of Torts § 652C, comment *d*.   However, because as set forth, *infra*, the court cannot determine that this defense applies at this stage in the litigation, the court will assume that defendant is

applicable is determined by the role that the use plays with respect to the entire publication." Id.  The rationale for the incidental use defense is that an incidental use has no commercial value.  Pooley v. National Hole-In-One Ass'n, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000).  Generally, "a plaintiff's name is not appropriated by mere mention of it."  Restatement (Second) of Torts § 652C, comment *d*.  Moreover, a claim may not be actionable when the value of a plaintiff's likeness is not appropriated because "it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him."  Id.

Plaintiff has alleged that the reference to plaintiff was made for defendant's "pecuniary gain and profit," was done to support defendant's "business activities," and is "directly related to the goods and services" defendant provides.  (Compl. ¶¶ 24, 40.)  When plaintiff's allegations are given the benefit of every reasonable inference, and these allegations are read in conjunction with the publication, plaintiff has sufficiently pled that defendant's reference to plaintiff in the publication was made to take advantage of his reputation, prestige, and value associated with him, and thus, not incidental.[7]  Morever, defendant has failed to cite any case where, on a motion to

_____

asserting incidental use as a defense to all of plaintiff's claims.

[7]  The court again notes that it is not making a finding, as a matter of law, regarding the interpretation of the publication.  The court also notes that defendant is not precluded from raising these arguments at a later stage in the litigation where the court would apply a different standard of review and may properly consider evidence.

dismiss, a court has dismissed a claim based upon the applicability of the incidental use defense. <u>See</u> <u>Seale v. Gramercy Pictures</u>, 964 F. Supp. 918 (E.D. Pa. 1997) (summary judgment); <u>Vinci v. American Can Co.</u>, 591 N.E.2d 793 (Ohio 1990) (same). Therefore, the court cannot determine as a matter of law that defendant's reference to plaintiff in the publication was merely incidental and thus, not actionable.

**2.   Permissible Fair Use**

Defendant also contends that its reference to plaintiff in the publication constitutes nominative fair use. The Ninth Circuit has distinguished between two types of fair use: "'classic fair use,' in which 'the defendant has used the plaintiff's mark to describe the defendant's own product,' and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the plaintiff's product' for the purpose of, for example, comparison to the defendant's product." <u>Cairns v. Franklin Mint Co.</u>, 292 F.3d 1139, 1150 (9th Cir. 2002) (citing <u>New Kids on the Block v. New Am. Publ'g, Inc.</u>, 971 F.2d 302, 308 (9th Cir. 1992)). The nominative fair use defense is applicable "where the use of a trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." <u>New Kids on the Block</u>, 971 F.2d at 307-08.[8] As such, nominative fair use "does not implicate the source-identification function that is the purpose of the trademark." <u>Id.</u> at 308. Accordingly, "it does not

---

[8]   Unlike incidental use, nominative fair use has often been applied as a specific defense to claims under the Lanham Act. <u>See</u> <u>New Kids</u>, 971 F.2d at 306; <u>Abdul Jabbar</u>, 85 F.3d at 412.

constitute unfair competition; such use is fair because it does
not imply sponsorship or endorsement by the trademark holder."
<u>Id.</u>

To establish whether the use of a mark constitutes
nominative fair use, a defendant must meet three requirements:

> First, the product or service in question must be one
> not readily identifiable without use of the trademark;
> second, only so much of the mark or marks may be used
> as is reasonably necessary to identify the product or
> service; and third, the user must do nothing that
> would, in conjunction with the mark, suggest
> sponsorship or endorsement by the trademark holder.

<u>Id.</u>

Defendant contends that, with respect to the third element,
nothing in the publication suggests that plaintiff sponsors,
endorses or has ever benefitted from any of defendant's products
or services.  To support this contention, defendant argues that
only one reference to plaintiff was made in the publication, that
the reference was not made in connection with any product or
service that was for sale, and that the publication was not an
advertisement.

In his complaint, however, plaintiff has alleged that the
publication is an "advertising/promotional article."  (<u>Id.</u> at ¶
14.) Moreover, plaintiff has also alleged that the reference to
him in the publication:

> constituted a false or misleading description of fact
> or misrepresentation of fact that is likely to cause
> confusion to consumers, and deceives consumers as to
> the affiliation, connection and/or association of
> Plaintiff with Defendants.

(Compl. ¶ 41.)  These allegations are not contradicted by other
allegations in the complaint or the publication itself.
Therefore, the court cannot find as a matter of law that

1  defendant's reference to plaintiff in the publication makes no

2  suggestion of sponsorship or endorsement by plaintiff.  Thus,

3  defendant's assertion that the nominative fair use defense

4  applies is premature.[9]

5  **D.    Plaintiff's Remaining Claims**

6        Finally, defendant contends that plaintiff's claims for

7  violation of California Business and Professions Code § 17200,

8  violation of California False Advertising Act, and unjust

9  enrichment must be dismissed because they are substantially

10 congruent to plaintiff's other claims.  Because, as set forth

11 above, the court finds defendant's prior arguments unpersuasive,

12 defendant's motion to dismiss the remaining state law claims is

13 also DENIED.

14                          **CONCLUSION**

15        Therefore, for the foregoing reasons, defendant's motion to

16 dismiss is DENIED.

17        IT IS SO ORDERED.

18 DATED: June 12, 2008

19

20                          _____
                            FRANK C. DAMRELL, Jr.
                            UNITED STATES DISTRICT JUDGE

21

22

23        [9]     Since the test for nominative fair use is conjunctive,
   all elements must be met for the defense to apply.  <u>See</u> <u>New Kids</u>,
24 971 F.2d at 308.  Therefore, it is not necessary at this time for
   the court to discuss the other elements.

25
        Further, defendant has again failed to cite any case where,
26 on a motion to dismiss, a court has dismissed a claim based upon
   the nominative fair use.  <u>See</u> <u>New Kids</u>, 971 F.2d 302 (summary
27 judgment); <u>Abdul-Jabbar</u>, 85 F.3d 407 (same); <u>Cairns</u>, 292 F.3d
   1139 (same); <u>Wham-O, Inc. v. Paramount Pictures, Corp.</u>, 286 F.
28 Supp. 2d 1254 (N.D. Cal. 2003) (temporary restraining order).

                                14