MENNEMEIER, GLASSMAN & STROUD LLP
ANDREW W. STROUD (SBN 126475)
STEPHEN LAU (SBN 221051)
980 9th Street, Suite 1700
Sacramento, CA 95814
Telephone:    916-553-4000
Facsimile:    916-553-4011
E-mail:    stroud@mgslaw.com

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.),<br><br>            Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC; and DOES 1 TO 200, inclusive,<br><br>            Defendants. | Case No. 2:07-cv-02517 (FCD-GGH)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   October 30, 2009<br>Time:   2:00 p.m.<br>Room: 2<br><br>The Honorable Frank C. Damrell, Jr. |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL AND PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    Plaintiff's First and Second Claims for Relief for Common Law
              and Statutory Misappropriation Each Fail as a Matter of Law  . . . . . . . . . . . . . 6

              1.    The Mention of Plaintiff's Name in the Press Release
                    Is Permissible Incidental Use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              2.    The Press Release Contains Newsworthy Matter and
                    Is Protected Speech Under the First Amendment . . . . . . . . . . . . . . . . . . 8

        B.    Plaintiff's Lanham Act Claim Also Fails As a Matter of Law
              Because Plaintiff Has Not and Cannot Show Any Intent to
              Deceive or False Endorsement, and AT&T's Use of Plaintiff's
              Name Constitutes Nominative Fair Use  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              1.    Plaintiff Cannot Prove, and Does Not Even Allege, that
                    AT&T Subjectively Intended to Deceive Customers . . . . . . . . . . . . . . . 13

              2.    The Press Release Does Not State That Plaintiff Endorsed
                    or Was Affiliated With Cingular . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              3.    The Mention of Plaintiff in the Press Release is
                    Permissible Fair Use  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.    Because Plaintiff's Remaining Claims Are Substantially Congruent,
              They Also Fail as a Matter of Law Under the Undisputed Facts  . . . . . . . . . . . 17

              1.    Plaintiff's Claim for Violation of California's Unfair
                    Business Practices Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              2.    Plaintiff's Claim for Violation of California's False
                    Advertising Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

              3.    Plaintiff's Claim for Unjust Enrichment . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Page

*Abdul-Jabbar v. GMC,*
    85 F.3d 407 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15, 16, 17

*Accuimage Diagnostics Corp. v. Terarecon, Inc.,*
    260 F. Supp. 2d 941 (N.D. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Aligo v. Time-Life Books, Inc.,*
    1994 U.S. Dist. LEXIS 21559 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cairns v. Franklin Mint Co.,*
    24 F. Supp. 2d 1013 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

*Cairns v. Franklin Mint Co.,,*
    292 F.3d 1139 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Central Hudson Gas & Electric Corp. v. Public Serv. Commission*
    447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cleary v. News Corp.,*
    30 F.3d 1255 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Denbicare U.S.A. v. Toys "R" Us,*
    84 F.3d 1143 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11

*Feist Publics, Inc. v. Rural Telegraph Serv. Co.,*
    499 U.S. 340 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Henley v. Dillar,*
    46 F. Supp. 2d 587 (N.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hoffman v. Capital Cities,*
    255 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

*Kournikova v. General Media Communications, INc.,*
    278 F. Supp. 4th 1111, 1128 - 1129 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ladany v. William Morrow & Co.,*
    465 F. Supp. 870 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*New Kids on the Block v. News America Publ'g., Inc.,*
    971 F.2d 302 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Newcombe v. Adolf Coors Co.,*
    157 F.3d 686 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**TABLE OF AUTHORITIES**

Page

**FEDERAL CASES, Cont'd.**

*Nissan Fire & Marine Insurance Co. v. Fritz Cos.,*
  210 F.3d 1099 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

*Pooley v. National Hole-In-One Assoc.,*
  89 F. Supp. 2d 1109 (D. Ariz. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Preston v. Martin Bregman Productions, Inc.,*
  765 F. Supp. 116 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Seale v. Gramercy Pictures,*
  964 F. Supp. 918 (E.D.P.A. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Triton Energy Corp. v. Square D Co.,*
  68 F.3d 1216 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Va. State Board of Pharmacy v. Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**DOCKETED CASES**

*Charles E. Yeager v. Scot Roberson, et al.,*
  No. 2:06-CV-01196 JAM
  (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*General Charles "Chuck" Yeager and General Chuck Yeager Foundation v.*
*Connie Bowlin, Ed Bowlin et al.,*
  No. 2:08-CV-00102 WBS JFM
  (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*General Charles E. Yeager v. Tamsin Munger,*
  No. 08CECG02620
  (Fresno Superior Court 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hilton v. Hallmark Cards,*
  No. 08-55443
  (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FEDERAL STATUES AND REGULATIONS**

Federal Rule of Civil Procedure
  Rule 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Civil Procedure
  Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C.
  Section 1367(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

iii

# TABLE OF AUTHORITIES

Page

## STATE CASES

*Dora v. Frontline Video, Inc.,*
  15 Cal. App. 4th 526 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Eastwood v. Superior Court,*
  149 Cal. App. 3d 409 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gionfriddo v. Major League Baseball,*
  94 Cal. App. 4th 400 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Montana v. San Jose Mercury News, Inc.,*
  34 Cal. App. 4th 790 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Vinci v. American Can. Co.,*
  69 Ohio App. 3d 727 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATE STATUTES AND REGULATIONS

Cal. Bus. & Prof. Code
  Section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Cal. Bus. & Prof. Code
  Section 17500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Civil Code
  Section 3344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 9, 18

## MISCELLANEOUS

Restatement (Second) of Torts
  Section 652C, comment d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Rest., Restitution
  Section 1, comment c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rights of Publicity and Privacy
  Section 5.4[B][2], insert 3/96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

## I.

2

## INTRODUCTION

3      Plaintiff, General Charles E. "Chuck" Yeager (Ret.) ("Plaintiff"), has sued

4  Defendant AT&T Mobility, Inc. ("AT&T") because AT&T mentioned Plaintiff's historic

5  achievement of being the first man to break the sound barrier in a press release containing

6  information about AT&T's hurricane preparedness program (the "Press Release"). Each and

7  every one of Plaintiff's claims fail as a matter of law.

8      First, Plaintiff can state no misappropriation claims against AT&T based on the

9  mere mention of his name in the Press Release. It is undisputed that AT&T's Press Release did

10  not use an image of Plaintiff, that Plaintiff's name was not mentioned in any headline or heading,

11  that the Press Release did not state that Plaintiff endorsed AT&T or its products, and that the

12  Press Release did not propose any commercial transaction or any other AT&T products for sale.

13  Indeed, it is undisputed that Plaintiff's name was only used once, when AT&T mentioned his

14  historic achievement of breaking the sound barrier when he was an officer in the United States

15  Air Force. Thus, the reference to Plaintiff was incidental and is not actionable misappropriation

16  as a matter of law.

17      Second, even if AT&T's use of Plaintiff's name were not just incidental, AT&T is

18  still protected by the First Amendment from Plaintiff's misappropriation claims. AT&T's Press

19  Release concerned a newsworthy issue – AT&T's hurricane preparedness following the

20  devastation wrought by Hurricanes Katrina, Wilma and Rita in 2005. The Press Release was

21  issued in May of 2006, just prior to the 2006 hurricane season. The purpose of the Press Release

22  was to advise the public of the substantial investment AT&T had made to ensure that cellular

23  service could be immediately restored after a hurricane. Plaintiff admits that this was the context

24  and purpose of the Press Release. All of the news articles that mentioned the Press Release only

25  focused on the hurricane preparedness issue. Not one article mentioned Plaintiff. As the Press

26  Release pertained to a newsworthy matter of public affairs, it is protected by the First

27  Amendment, and the mention of Plaintiff's name is not actionable as a matter of law for this

28  reason as well.

1    Not only is AT&T's use incidental and protected by the First Amendment,

2 Plaintiff cannot state claims based on false endorsement under the Lanham Act for additional

3 reasons as well.  As a public figure bringing an action based upon the use of his name in a

4 noncommercial publication, the actual malice standard applies to Plaintiff's Lanham Act claim.

5 Thus, in order to state a Lanham Act claim, Plaintiff must show by clear and convincing evidence

6 that AT&T subjectively intended to deceive the average consumer into believing he endorsed

7 AT&T.  This Plaintiff has not done and cannot do.  Plaintiff has no evidence, let alone clear and

8 convincing evidence, of a subjective intent by AT&T to deceive consumers.  Indeed, Plaintiff

9 admits he is unaware of any consumer who was deceived at all.  Moreover, AT&T's mention of

10 Plaintiff's name also constitutes nominative fair use.  Plaintiff admits that the Press Release in no

11 way states that Plaintiff was endorsing AT&T or its products at all.  As the Press Release did not

12 make an association between Plaintiff and AT&T, it cannot form the basis of a Lanham Act or

13 false endorsement claim.  Thus, Plaintiff's Lanham Act claim and claims based on false

14 endorsement and false advertising also fail as a matter of law.

15    Finally, because Plaintiff can state no claims for misappropriation of likeness or

16 any claims of false endorsement under the Lanham Act, the remainder of Plaintiff's state law

17 claims for unfair business practices, false advertising and unjust enrichment fail as well.  Each of

18 these claims require that AT&T must have acted improperly in the first instance.  By merely

19 mentioning Plaintiff's name in a newsworthy Press Release, AT&T did not do so.  Therefore, no

20 liability under those claims exists as well.

21    Though Plaintiff was and is a legendary test pilot, he cannot monetize his

22 achievements by requiring parties to pay him money any time his name is mentioned.[1]  Allowing

23 Plaintiff to do so would stretch both the right of publicity and trademark law well beyond their

24

25 _____

26    [1]    As this Court may be aware, Plaintiff has recently begun an onslaught of litigation
seeking to capitalize on his name or otherwise.  *See General Charles "Chuck" Yeager and*

27 *General Chuck Yeager Foundation v. Connie Bowlin, Ed Bowlin et al.*, Case No. 2:08-cv-00102
WBS JFM (ED. Cal. 2008) ; *Charles E. Yeager v. Scott Robertson, et al.*, Case No. 2:06-cv-

28 01196 JAM (ED. Cal. 2006); *General Charles E. Yeager v. Tamsen Munger*, Fresno Superior
Court Case No. 08CECG02620 (March 2008).

1  lawful bounds.  For these reasons, AT&T is entitled to judgment in its favor as a matter of law on

2  all of Plaintiff's claims.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2006, Cingular Wireless issued a Press Release entitled "Cingular

Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season."

Complaint, ¶¶ 14, 15, Exhibit 1.[2]  *See* Defendant's Separate Statement of Undisputed Material

Facts in Support of Defendant's Motion for Summary Judgment, Undisputed Fact No. 1

(hereinafter, "UF 1").  The Press Release was released through PR Newswire and posted on

Cingular's website. UF 2. The Press Release contained information about Cingular's

"preparedness for disasters, such as hurricanes," as well as information about Cingular's

"emergency preparedness equipment, such as its mobile command centers." UF 15.  The Press

Release was issued following the disastrous 2005 hurricane season in which Hurricanes Katrina,

Wilma, and Rita caused substantial damage to the Gulf Coast states, and the wireless

infrastructure therein. UF 5. The Press Release was intended to convey information that was

interesting and useful to residents of the southeastern United States, which had suffered the most

from those hurricanes.  UF 5.  The Press Release was not intended to deceive or mislead readers

into believing that Plaintiff endorsed AT&T or Cingular.  UF 21.

The Press Release is 755 words long. UF 3.  It contains a single sentence in a

quote mentioning Plaintiff's historic flight, during which he broke the sound barrier for the first

time.  That quote appears in the middle of the fifth paragraph of the Press Release, and reads:

> "Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound
> barrier and achived Mach 1.  Today, Cingular is breaking another kind of barrier
> with our MACH 1 and MACH 2 mobile command centers, which will enable us
> to respond rapidly to hurricanes and minimize their impact on our customers," de
> la Vega said.  (Complaint, ¶ 15.)

_____

[2]    Cingular Wireless later became defendant AT&T Mobility, LLC.  On March 28,
2008, the Court ordered Cingular Wireless dismissed and AT&T Mobility, LLC substituted in as
Defendant.  (Docket No. 15.)  "AT&T" refers to Cingular Wireless and AT&T interchangeably
herein.

1  Plaintiff is not pictured in the Press Release, nor referred to in any other way. UF 6 - 7. It is

2  undisputed that the Press Release does not propose any commercial transaction and does not

3  offer for sale any specific products or services. UF 9. It is undisputed that the Press Release

4  does not state that Plaintiff endorses Cingular, AT&T, or any of their products or services.

5  UF 10. It is also undisputed that the Press Release does not state that Plaintiff is "affiliated with

6  Cingular, AT&T or any of their products or services." UF 11. Nor does the Press Release state

7  that Plaintiff has benefitted from, or even purchased, any products or services offered by

8  Cingular. UF 12. Plaintiff admits that the only thing the Press Release says about him is that he

9  is a legendary test pilot who broke the sound barrier and achieved Mach 1 nearly 60 years ago.[3]

10  UF 13.

11  　　　　The Press Release focuses on Cingular's activities in preparation for hurricane

12  season. UF 1. The discussion of Cingular's hurricane preparedness in the Press Release was

13  carried in several newspapers, including:

14  　　1.　　National news wires such as Reuters (May 17, 2006) and Associated Press (June 1,
　　　　　　　2006);

15

16  　　2.　　Regional newspapers such as *Clarion-Ledger* (May 25, 2006), *Tampa Tribune*
　　　　　　　(May 30, 2006), *Augusta Chronicle* (June 4, 2006), *Florida Times-Union* (June 4,
　　　　　　　2006), *Shreveport Times* (June 13, 2006), *New Orleans CityBusiness* (July 31,

17  　　　　　　　2006), and *Orlando Sentinel* (May 29, 2006);

18  　　3.　　Trade publications such as *TR's State NewsWire* (May 18, 2006), *RCR Wireless
　　　　　　　News* (May 29, 2006) *Wireless Week* (June 9, 2006) and *Satellite News* (May 29,

19  　　　　　　　2006);

20  　　4.　　National cable news channel CNN (June 13, 2006); and

21  　　5.　　Local news stations such as WTVT in Tampa-St. Petersburg (May 17, 2006) and
　　　　　　　WINK in Ft. Myers-Naples (June 2, 2006).

22

23

24

25  　　　[3]　　In addition to the Press Release, PR Newswire released "B-roll" video of
　　Cingular's Mobile Access Command Headquarters trailers that could be shown on television.

26  Declaration of Mark Siegel in Support of Defendant's Motion for Summary Judgment at ¶ 5. In
　　one video segment a Cingular employee was also shown reading from the Press Release,

27  including the line that mentions General Yeager. *Id.* at ¶ 5. Those videos have been removed
　　from the PR Newswire website. *Id.* at ¶ 5. No television broadcast reporting on Cingular's

28  emergency preparedness program mentioned Plaintiff in any way or showed the video of the
　　Cingular representative reading his name. *Id.* at ¶ 5.

1    None of these news articles or broadcasts referred to Plaintiff. UF 16.  In fact, Plaintiff cannot

2    identify a single person who was actually confused by the Press Release into believing that he

3    was endorsing AT&T or its products and services.  UF 18.

4            Notwithstanding these facts, on November 21, 2007, Plaintiff filed his complaint.

5    Plaintiff seeks damages from AT&T for violation of common law right to privacy, violation of

6    his right to publicity under California Civil Code section 3344, violation of the Lanham Act,

7    unfair business practices, false advertising and unjust enrichment.  Complaint at ¶¶ 19-62.  On

8    March 27, 2008, AT&T filed a motion to dismiss, which was denied.  (Docket No. 19.)

9            AT&T now seeks summary judgment against Plaintiff on all of Plaintiff's claims,

10   on the grounds, inter alia, that the mere mention of Plaintiff's historic achievement in a

11   newsworthy Press Release is not actionable under any of Plaintiff's theories as a matter of law.

12                                    **III.**

13                                 **ARGUMENT**

14           Under the Federal Rules of Civil Procedure, summary adjudication is appropriate

15   when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

16   there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

17   matter of law." Fed. R. Civ. P. 56(c).  The principal purpose of the rule is to dispose of factually

18   unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

19           The moving party bears the initial burden of demonstrating the absence of a

20   genuine issue of fact.  *Celotex Corp.*, 477 U.S. at 325.  If the nonmoving party has the burden of

21   proof at trial, the moving party only needs to show "that there is an absence of evidence to

22   support the nonmoving party's case."  *Id*.  Once the moving party has met its burden of proof, the

23   nonmoving party must produce evidence on which a reasonable trier of fact could find in its

24   favor viewing the record as a whole in light of the evidentiary burden the law places on that

25   party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The

26   nonmoving party cannot simply rest on its allegations without any significant probative evidence

27   tending to support the complaint. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d

28   1099, 1102-03 (9th Cir. 2000).  Instead, through admissible evidence the nonmoving  party

1  "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P.

2  56(e).

### A.  Plaintiff's First and Second Claims for Relief for Common Law and Statutory Misappropriation Each Fail As a Matter of Law.

Plaintiff's first claim for relief alleges that Defendant violated Plaintiff's common law right of privacy by misappropriating his likeness. Complaint, ¶¶ 19-29.  To prevail on a misappropriation of likeness claim under common law, a plaintiff must prove: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) (citing *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (1983)).

Plaintiff's second claim for relief alleges a violation of Civil Code section 3344, which creates a *statutory* cause of action for misappropriation of likeness.  Complaint, ¶¶ 30-37. To prevail on a misappropriation claim under section 3344, "the plaintiff must prove all the elements of the common law cause of action.  In addition, the plaintiff must allege a knowing use by the defendant as well as a direct connection between the alleged use and the commercial purpose." *Downing*, 265 F.3d at 1001.

Misappropriation claims under the common law and Section 3344 are subject to the same defenses.  First, no misappropriation results if the defendant's use of the plaintiff's name and likeness was merely incidental.  *See Pooley v. National Hole-In-One Assoc.*, 89 F. Supp. 2d 1108, 1112 (D. Ariz. 2000).  Second, even if the defendant's use of the plaintiff's name was more than incidental,  the First Amendment permits such use in the course of reporting news and other matters of public interest.  *Downing*, 265 F.3d 994 at 1001.  In this case, those two defenses defeat Plaintiff's misappropriation and Lanham Act claims.

### 1.  The Mention of Plaintiff's Name in the Press Release Is Permissible Incidental Use.

The mention of Plaintiff's name in the Press Release was so fleeting and inconsequential that it is protected by the incidental use doctrine.  "The doctrine of incidental use was developed to address concerns that penalizing every unauthorized use, no matter how

457.01.PLE.MSJ.ps and as in support.wpd                     6

1    insignificant or fleeting, of a person's name or likeness would impose undue burdens on

2    expressive activity." *Preston v. Martin Bregman Productions, Inc.*, 765 F. Supp. 116, 120 (S.D.

3    N.Y. 1991). As this Court observed, "[w]hether the incidental use doctrine is applicable is

4    determined by the role that the use plays with respect to the entire publication." *See* Memo. and

5    Order, dated June 12, 2008, at 11:1-2 (citing Restatement (Second) of Torts § 652C, comment d).

6    Generally, "a plaintiff's name is not appropriated by mere mention of it." *See Id.* at 11:5-6. A

7    misappropriation claim may be dismissed before trial on the basis of the incidental use defense.

8    *See, e.g., Aligo v. Time-Life Books, Inc.*, 1994 U.S. Dist. LEXIS 21559 (N.D. Cal. 1994)

9    (granting motion to dismiss misappropriation of likeness claim on grounds that defendant's use

10   of the plaintiff's image was incidental); *Ladany v. William Morrow & Co.*, 465 F. Supp. 870, 872

11   (S.D.N.Y. 1978) (granting summary judgment against plaintiff's misappropriation of likeness

12   claim on incidental use grounds); *Preston*, 765 F. Supp. at 120 (same).

13          Here, Plaintiff's name plays a very small role in the Press Release relative to the

14   publication as a whole. The Press Release is 755 words long and contains only one mention of

15   his name. UF 3. There is no picture of Plaintiff on the Press Release. UF 6. Nor is his name

16   mentioned in any headline or headings. UF 7. Rather, it appears for the first and only time in the

17   middle of the fifth paragraph. UF 8. Moreover, it is undisputed that the Press Release "does not

18   state that [Plaintiff] endorses CINGULAR, AT&T, or any of their products or services." UF 10.

19   Nor does the Press Release "state that [he] is affiliated with CINGULAR, AT&T, or any of their

20   products or services." UF 10. Plaintiff even admits that the Press Release does not state that

21   Plaintiff has ever benefitted from, or even purchased, any products or services offered by

22   CINGULAR or AT&T. UF 12.

23          Further, the Press Release did not exploit Plaintiff's reputation, prestige, or any

24   values associated with him. Rather, what the Press Release invoked was a historic *event* in

25   which a significant barrier was broken, i.e., the breaking of the sound barrier in 1947. Because

26   the Press Release sought to make a point about the innovativeness of its preparedness program, it

27   was the *event* – and not the *man* – which was important to the Press Release. The breaking of the

28   sound barrier is not a personal characteristic, or even a personal achievement, of Plaintiff's.

1  Rather, the breaking of the sound barrier was the achievement of a team of engineers, scientists,

2  and pilots working for the United States Air Force.[4] If the Press Release took advantage of

3  anything, it took advantage of a completed mission of the U.S. military, not Plaintiff's personal

4  prestige or reputation.  An incidental recitation of historical events, even in the context of a

5  commercial message, is protected expression.  *See Vinci v. American Can. Co.*, 69 Ohio App. 3d

6  727, 729 (1990) (when a soft drink company used the names and likenesses of Olympic athletes

7  in advertising campaign, "the mention of the athletes' names within the context of accurate

8  historical information was incidental to the promotion" in the absence of "any implication that

9  the athletes used, supported, or promoted the product").  Likewise a plaintiff's name is not

10  appropriated by "reference to it in connection with legitimate mention of his public activities."

11  *See* Restatement (Second) of Torts, § 652C, comment d.

12       As AT&T's mention of Plaintiff in its Press Release is merely incidental,

13  Plaintiff's first and second claims fail as a matter of law.

14       **2.    The Press Release Contains Newsworthy Matter and is Protected
   Speech Under the First Amendment.**

15

16       Even if the Court determines that the mention of Plaintiff's name in the Press

17  Release rises above "incidental use," Plaintiff's misappropriation claims still fail.  That is

18  because AT&T's mention of his name is constitutionally protected expression under the First

19  Amendment.

20       Under both the common law and Section 3344, "no cause of action will lie for the

21  publication of matters in the public interest, which rests on the right of the public to know and

22  the freedom of the press to tell it."  *Downing*, 265 F.3d 1001 (quoting *Montana v. San Jose*

23  *Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995)).  "The First Amendment defense extends

24  'to almost all reporting of recent events,' as well as to publications about 'people who, by their

25  accomplishments, mode of living, professional standing, or calling, create a legitimate and

26

27

---

28      [4]    Plaintiff readily admits that his historic flight on October 14, 1947 was part of a
military mission for the United States Air Force.  UF 14.

457.01.PLE.MSJ.ps and as in support.wpd         8

1  widespread attention to their activities.'" *Id.*[5]  A misappropriation of likeness claim may be

2  dismissed on summary judgment on the basis of the First Amendment defense.  *See, e.g., Mont.*

3  *v. San Jose Mercury News*, 34 Cal. App. 4th 790 (1995) (upholding trial court's grant of

4  summary judgment against misappropriation claim on First Amendment grounds); *Dora v.*

5  *Frontline Video, Inc.*, 15 Cal. App. 4th 536 (1993) (same).

6          Here, the undisputed facts show that the Press Release reported on newsworthy

7  and/or matters of public interest.  The Press Release was published in May 2006.  UF 4.  Months

8  earlier, the Gulf Coast states had been devastated by Hurricane Katrina (August 2005), Hurricane

9  Wilma (October 2005), and Hurricane Rita (September 2005).  Many of the victims of those

10  hurricanes were left without any form of communication services for long periods of time.[6]  For

11  those victims, and their friends and family, it was important to know whether their

12  telecommunications providers were making efforts to be prepared for such disasters in the future.

13          The Press Release provided that information about Cingular's

14  telecommunications services.  Plaintiff admits, as he must, that the Press Release contains

15  "information about [Cingular's] preparedness for disasters, such as hurricanes" as well as

16  "information about [Cingular's] emergency preparedness equipment, such as its mobile

17  command centers."  UF 15.  That is not trivial information about the latest consumer gadget or

18  cellular plan.  Rather, that information addresses public concerns about whether, during the next

19  disaster, Cingular customers can expect to reach family, friends, law enforcement officers, and

20  medical providers.  As such, the Press Release addresses a matter of *public interest* in the truest

21  sense of the term.  Indeed, in drafting the Press Release, the author of the Press Release

22  consciously intended to convey information that was useful and interesting to residents of the

23  southeastern United States.  UF at 5.

24

25          [5]    Civil Code section 3344 specifically exempts from liability the use of a name in
       connection with the reporting of a matter in the public interest.  *See* Civil Code § 3344(d)

26  (providing that no prior consent is required for "use of a name, . . . photograph, or likeness in
       connection with any news, public affairs, or sports broadcast or account, or any political

27  campaign"); *Montana*, 34 Cal. App. 4th at 793-94.

28          [6]    Pursuant to Evidence Code 201, this Court may take judicial notice of the two
       preceding facts, as they are easily verified and not subject to reasonable dispute.

1          Further, there is undisputed extrinsic evidence that the Press Release addressed a

2   newsworthy matter.  From May to July 2006, Cingular's emergency preparedness efforts were

3   the subject of news stories distributed by numerous media outlets.   Specifically, Cingular's

4   emergency preparedness program was the subject of news stories on:

> 1.   National news wires such as Reuters (May 17, 2006) and Associated Press (June 1, 2006);
>
> 2.   Regional newspapers such as *Clarion-Ledger* (May 25, 2006), *Tampa Tribune* (May 30, 2006), *Augusta Chronicle* (June 4, 2006), *Florida Times-Union* (June 4, 2006), *Shreveport Times* (June 13, 2006), *New Orleans CityBusiness* (July 31, 2006), and *Orlando Sentinel* (May 29, 2006);
>
> 3.   Trade publications such as *TR's State NewsWire* (May 18, 2006), *RCR Wireless News* (May 29, 2006) *Wireless Week* (June 9, 2006) and *Satellite News* (May 29, 2006);
>
> 4.   National cable news channel CNN (June 13, 2006); and
>
> 5.   Local news stations such as WTVT in Tampa-St. Petersburg (May 17, 2006) and WINK in Ft. Myers-Naples (June 2, 2006).

14   UF 16.  Thus, the undisputed evidence shows that numerous news outlets found the subject

15   matter of the Press Release of sufficient newsworthiness to report in news stories.

16          Despite this undisputed evidence, Plaintiff may nevertheless argue that the Press

17   Release is pure commercial speech and therefore entitled to less First Amendment protection.

18   *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (2001) (commercial speech "is

19   actionable when a plaintiff's identity is used, without consent, to promote an unrelated product"

20   of a defendant).  But any such argument is meritless.   By Plaintiff's own reading of the law,

21   "commercial speech has been defined as speech 'proposing a commercial transaction.'"

22   Plaintiff's Memo. of P.'s and A.'s in Opposition to Motion to Dismiss at 4:16-17 (citing *Cent.*

23   *Hudson Gas & elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 562 (1980)); *see also Hoffman*

24   *v. Capital Cities*, 255 F.3d 1180, 1184 (9th Cir. 2001) ("the core notion of commercial speech is

25   that it does no more than propose a commercial transaction") (internal quotation marks omitted).

26   Here, Plaintiff admits that the Press Release "does not propose any commercial transactions" and

27   ///

28   ///

1  "does not offer for sale any specific products of services." UF 9.  That admission is dispositive

2  that the Press Release is not "commercial speech."[7]

3         Plaintiff may also argue that the Press Release is commercial in that its ultimate

4  purpose is to create consumer confidence in Cingular's products and services.  But that is not the

5  test by which speech is determined to be commercial, nor could it be.  Under such a test, virtually

6  any speech by Cingular, AT&T, or any for-profit enterprise would constitute commercial speech.

7  After all, it is rare that a commercial entity says or does anything that is completely unrelated to

8  the ultimate goal of increasing consumer confidence in its products.  But clearly, it is not the case

9  that all speech by a for-profit entity is necessarily unprotected commercial speech.  *See*

10  *Gionfriddo,* 94 Cal. App. 4th 400, 412 (argument that only "'media business[es are] subject to

11  First Amendment free speech/press protections' . . . is meritless").  Rather, when speech contains

12  commercial aspects intertwined with expressive or informative aspects, the speech as a whole is

13  protected.  *See Hoffman*, 255 F.3d at 1195.  In the *Hoffman* case, a magazine published an article

14  about fashion accompanied by a digitally-altered photograph of Dustin Hoffman in a current

15  designer dress.  *Id.* at 1183.  The Ninth Circuit concluded that the use of Hoffman's image was

16  noncommercial speech entitled to First Amendment protection, holding, in part, that the

17  magazine "did not use Hoffman's image in a traditional advertisement printed merely for the

18  purpose of selling a particular product . . . [n]or did the article simply advance a commercial

19  message."  *Id.* at 1185.  The Ninth Circuit concluded with the observation that "'[t]here are

20  commonsense differences between speech that does no more than propose a commercial

21  transaction and other varieties,'" and that "common sense tells us this is not a simple

22  advertisement."  *Id.* at 1185-86 (quoting *Va. State Bd. of Pharmacy v. Citizens Consumer*

23  _____

24         [7]     That admission – that the Press Release does not propose any commercial

25  transaction – makes this case distinguishable from all of the cases previously cited by Plaintiff in
   responding to Defendant's First Amendment defense.  In Plaintiff's cases, the speech at issue

26  clearly involved the proposal of a commercial transaction.  *See Downing*, 265 F.3d 994 (a catalog
   that is Abercrombie's "largest advertising vehicle" that accounts for "approximately 80% of

27  Abercrombie's overall advertising budget"); *Abdul-Jabbar v. GMC*, 85 F.3d 407 (9th Cir. 1996)
   (television commercial for GMC vehicles); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 689

28  (9th Cir. 1998) (magazine advertisement for beer); *Henley v. Dillar*, 46 F. Supp. 2d 587, 589
   (N.D. Tex. 1999) (newspaper advertisement for a shirt).

457.01.PLE.MSJ.ps and as in support.wpd                    11

MEMO. OF P.'S AND A.'S IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1    *Council, Inc.*, 425 U.S. 748, 771 n.24 (1976)). Here, too, it is common sense (and undisputed)

2    that the Press Release does not propose a commercial transaction, but conveys valuable

3    information about Cingular's emergency preparedness.

     **B.    Plaintiff's Lanham Act Claim Also Fails As a Matter of Law Because
       Plaintiff Has Not and Cannot Show Any Intent to Deceive or False
       Endorsement, and AT&T's Use of Plaintiff's Name Constitutes Nominative
       Fair Use.**

7         In his third claim for relief, which is also his only federal claim, Plaintiff alleges

8    that AT&T violated the Lanham Act by falsely claiming that Plaintiff endorses AT&T's

9    products. Complaint, ¶¶ 38-49. The Ninth Circuit recognizes "[a] false endorsement claim

10   based on the unauthorized use of a celebrity's identity . . . [which] alleges the misuse of a

11   trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely

12   distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's

13   sponsorship or approval of the product." *Abdul-Jabbar v. GMC*, 85 F.3d 407, 410 (9th Cir.

14   1996). "If the defendant's use does not on its face contain a clear message of endorsement, [the]

15   plaintiff must produce evidence, usually in the form of market research or consumer surveys,

16   showing exactly what message customers received from [the] defendant's ad. Once that message

17   is ascertained, plaintiff must then prove the second element, that [the] message is false or

18   misleading." *Seale v. Gramercy Pictures*, 964 F. Supp. 918, 930 (E.D. P.A.1997) (quoting J.

19   Thomas McCarthy, The Rights of Publicity and Privacy § 5.4[B][2] (insert 3/96)).

20        Moreover, due to the potential impact on First Amendment rights, when a false

21   endorsement claim is brought by a *public figure* against *non-commercial* speech, that plaintiff

22   has the burden of proving an additional element: that the defendant subjectively intended that

23   consumers believe that the plaintiff approved of the use of his name or likeness. *Hoffman v.*

24   *Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1189 n.3 (9th Cir. 2001) (ruling for defendant on

25   Lanham Act claim because plaintiff "does not explain how the evidence or testimony shows that

26   [the defendant] subjectively intended that the reader believe [plaintiff] had endorsed the use of

27   his name or likeness or the selection of the clothes"). "When a public figure (who is complaining

28   about the use of her identity in a noncommercial speech) brings a false endorsement claim, it is

1  banned by the First Amendment unless the plaintiff produces clear and convincing evidence that

2  the defendant acted with actual malice in creating the false impression of endorsement."

3  *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 4th, 1111, 1128 (C.D. Cal.

4  2003).

### 1. Plaintiff Cannot Prove, and Does Not Even Allege, that AT&T Subjectively Intended to Deceive Consumers.

7  For all the reasons set forth in Section III.A.2 *supra*, the Press Release constitutes

8  non-commercial speech. *See also Hilton v. Hallmark Cards*, No. 08-55443 (9th Cir. filed August

9  31, 2009) ("As one of our sister circuits has recognized . . . 'commercial speech is best

10 understood as speech that merely advertises a product or service for business purposes.'").

11 Moreover, Plaintiff is clearly a public figure.  UF 17.  Thus, it is Plaintiff's burden to prove by

12 clear and convincing evidence that Defendant subjectively intended to deceive consumers into

13 believing that Plaintiff endorsed AT&T. *Kournikova*, 278 F. Supp. 2d 1111, 1129 ("a public

14 figure . . . cannot prevail on her false endorsement claim unless she can establish by clear and

15 convincing evidence that [defendant] subjectively intended that the average reader – or the

16 average browser – believe that [plaintiff] . . . approved use of her name and likeness").

17 Here, the undisputed evidence is that the Press Release was not intended to

18 deceive or mislead readers into believing that Plaintiff endorses AT&T or Cingular.  UF 21.

19 However, Plaintiff does not allege – much less present clear and convincing evidence of – a

20 subjective intent to deceive in support of his false endorsement claim.  For this reason alone,

21 Plaintiff's false endorsement claim fails.

### 2. The Press Release Does Not State That Plaintiff Endorsed or Was Affiliated With Cingular.

24 Even if the Court finds that the Press Release is non-commercial speech,

25 Plaintiff's false endorsement claim fails under the undisputed facts.  In his pleadings, Plaintiff

26 alleges that Defendant made a "false or misleading description of fact or misrepresentation of

27 fact that is likely to cause confusion to consumers, and deceives consumers as to the affiliation,

28 connection, and/or association of Plaintiff with Defendants."  Complaint at ¶ 41.    When

1  pressed, however, Plaintiff admits that the Press Release "does not state that [he] endorses

2  CINGULAR, AT&T, or any of their products or services" or that Plaintiff is "affiliated with

3  CINGULAR, AT&T, or any of their products or services." Uf 10-11. Plaintiff even admits that

4  the Press Release does not state that he has ever benefitted from, or purchased, any products or

5  services offered by CINGULAR or AT&T. UF 12.

6          Having conceded that the Press Release does not actually state that Plaintiff

7  endorses Defendant, the onus is on Plaintiff to advance some evidence that a significant number

8  of consumers confusedly believes the contrary. But Plaintiff has no such evidence whatsoever.

9  Plaintiff has presented no market studies, consumer surveys, or any other evidence which says

10 that consumers now associate Plaintiff with Defendant by virtue of the Press Release. Moreover,

11 Plaintiff cannot identify a single person who was confused by the Press Release into believing

12 that Plaintiff endorses AT&T or Cingular. UF 18. In short, Plaintiff's allegation that the Press

13 Release is likely to mislead consumers is idle speculation supported by no evidence whatsoever.[8]

14 In the absence of such evidence, Plaintiff's false endorsement claim must fail. *See Seale*, 964 F.

15 Supp. at 930 (where Lanham Act plaintiff failed to present evidence that the use of his likeness

16 inside a musical CD brochure "implies to the consumer public that he endorses, approves, or is

17 otherwise affiliated with" the CD or that "the consumer public 'was actually deceived' into

18 ///

19

20     [8]     As revealed in Plaintiff's responses to interrogatories and to deposition
21 questioning, Plaintiff himself cannot identify a single person who confusedly believes that
   Plaintiff endorses AT&T. In deposition, Victoria Yeager stated that she recalls "three or four
22 calls" in which she spoke to persons who believed that Plaintiff was affiliated with AT&T.
   Stroud Declaration at ¶ 9, Exh. H (Victoria Yeager Deposition at 134:2-23; 136:14-20).
23 However, Mrs. Yeager could not identify the names of those people or provide any way for
   Defendant to locate them. Mrs. Yeager also stated that Plaintiff's website
24 (http://ChuckYeager.com) received some email messages asking whether Plaintiff endorsed
   AT&T. *Id.* at 110:2-14. Again, however, she cannot produce any copies of those email
25 messages. *Id.* Moreover, when Defendant subpoenaed Robert Tarn, the webmaster who
   maintained that website, he could not identify or produce any such messages. Stroud Declaration
26 at ¶ 10, Exh. I. Simply put, Mrs. Yeager's vague and unverifiable testimony is not significant
27 and probative evidence of potential or actual consumer confusion. *See Nissan Fire & Marine*,
   210 F.3d at 1102-03 ("The nonmoving party cannot simply rest on its allegations without any
28 significant probative evidence tending to support the complaint.").

1  believing that he endorses, approves, or is affiliated with" the CD, judgment for defendant was

2  affirmed).

3        In truth, what Plaintiff attempts to assert is not a false endorsement claim, but a

4  claim to some kind of trademark right in the events of October 14, 1947. Specifically, Plaintiff

5  appears to claim entitlement to a profit whenever a commercial entity makes mention of his name

6  in connection with the breaking of the sound barrier. However, it is well-established that mere

7  facts – "scientific, historical, biographical, and news of the day" -- are not intellectual property;

8  rather, they are part of the "public domain available to every person." *Feist Pubs., Inc. v. Rural*

9  *Tel. Serv. Co.*, 499 U.S. 340, 342 (1991) (stating that factual events may not be copyrighted).[9]

10  That rule applies with particular force where the factual event at issue is not a private act, but a

11  historic accomplishment of the U.S. military. In short, Plaintiff may not, in the guise of a false

12  endorsement claim, assert a monopoly on all mentions of a historic event.

13        **3.     The Mention of Plaintiff in the Press Release Is Permissible Fair Use.**

14        Plaintiff's admission – that the Press Release does not say that he endorses

15  Defendant – also supports summary judgment under the nominative fair use doctrine.

16        The Ninth Circuit differentiates between two types of fair use: "'classic fair use,'

17  in which 'the defendant has used the plaintiff's mark to describe the defendant's own product,'

18  and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the

19  plaintiff's product' for the purpose of, for example, comparison to the defendant's product."

20  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). The nominative fair use

21  defense applies "where the use of a trademark does not attempt to capitalize on consumer

22  confusion or to appropriate the cachet of one product for a different one." *New Kids on the Block*

23  *v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992). As such, nominative fair use

24  "does not implicate the source-identification function that is the purpose of the trademark." *Id.* at

25  308. Nominative fair use is a defense to a claim for violation of the Lanham Act. *Abdul-Jabbar,*

---

[9]     Plaintiff admits, as he must, that the breaking of the sound barrier is a newsworthy and historical event that is part of the public record. UF 19. Plaintiff has also admitted that he has been interviewed about that event millions of times all over the world. UF 20.

MEMO. OF P.'S AND A.'S IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

85 F.3d at 412; *New Kids on the Block*, 971 F.2d at 306.  The court may grant summary judgment

against a Lanham Act claim on grounds of nominative fair use.  *See, e.g., New Kids on the Block*,

971 F.2d at 306 (affirming summary judgment against plaintiff asserting trademark claim on

grounds of nominative fair use).

      To establish whether the use of a mark constitutes nominative fair use, a

defendant must meet three requirements:

> First, the product or service in question must be one not readily
> identifiable without use of the trademark; second, only so much of
> the mark or marks may be used as is reasonably necessary to
> identify the product or service; and third, the user must do nothing
> that would, in conjunction with the mark, suggest sponsorship or
> endorsement by the trademark holder.

*New Kids*, 971 F.2d at 308.  The third requirements is key in this case: Has AT&T done anything

in conjunction with Plaintiff's name which would suggest sponsorship or endorsement by

Plaintiff?  The answer is clearly "No."  Plaintiff admits that the Press Release does not state that

he endorses Defendant, is affiliated with Defendant, or has purchased or benefitted from

Defendant's products or services.  UF 10-12.  In fact, Plaintiff admits that "the only thing" the

Press Release says about him is that he is a legendary test pilot who broke the sound barrier and

achieved MACH 1 60 years ago.  UF 13.  In sum, the Press Release limits its mention of Plaintiff

to reciting a single fact about him: that he broke the sound barrier in 1947.

      In that respect, this case is distinguishable from *Abdul-Jabbar*.  In that case, GMC

ran a television commercial which made liberal use of Lew Alcindor's name and

accomplishments.  In that television commercial:

> . . . A disembodied voice asks, "How 'bout some trivia?"  This
> question is followed by the appearance of a screen bearing the
> printed words, "You're Talking to the Champ."  The voice then
> asks, "Who holds the record for being voted the most outstanding
> player of this tournament?"  In the screen appear the printed words,
> "Lew Alcindor, UCLA, '67, '68, '69."  Next, the voice asks, "Has
> any car made the 'Consumer Digest's Best Buy' list more than
> once? [and responds:] The Oldsmobile Eighty-Eight has."  A
> seven-second film clip of the automobile, with its price, follows.
> During the clip, the voice says, "In fact, it's made that list three
> years in a row.  And now you can get this Eighty-Eight special
> edition for just $ 18,995."  At the end of the clip, a message
> appears in print on the screen: "A Definite First Round Pick,"

accompanied by the voice saying, "it's your money."  A final
printed message appears: "Demand Better, 88 by Oldsmobile."

*Abdul-Jabbar*, 85 F. 3d at 409.  Abdul-Jabbar filed Lanham Act claims, and GMC asserted the

nominative fair use defense.  The court rejected that defense.  Specifically, the court found that

GMC's use of Alcindor's name and identity was so extensive as to imply endorsement: "[B]y

using Alcindor's record to make a claim for its car - like the basketball star, the Olds 88 won an

'award' three years in a row, and like the star, the car is a 'champ' and a 'first round pick' –

GMC has arguably attempted to" appropriate Abdul-Jabbar's cachet.  *Id.*  Here, however, the

Press Release recites only a single fact about Plaintiff, that he broke the sound barrier.  As stated

in *Abdul-Jabbar*, "[h]ad GMC limited itself to the 'trivia' portion of its ad, GMC could likely

defend the reference to Lew Alcindor as a nominative fair use."  *Id.*  That is precisely the case

here.[10]

### C.    Because Plaintiff's Remaining Claims Are Substantially Congruent, They Also Fail As a Matter of Law Under the Undisputed Facts.

#### 1.    Plaintiff's Claim for Violation of California's Unfair Business Practices Act.

In his fifth claim for relief, Plaintiff alleges that Defendant engaged in unfair

business practices in violation of the California Unfair Business Practices Act (Cal. Bus. &. Prof.

Code § 17200 et seq.).  Complaint, ¶¶ 50-54.  Under that legislation, "unfair competition

includes 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue

or misleading advertising[.]'"  *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D.

Cal. 1998) (quoting Cal. Bus. & Prof. Code § 17200).

Here, Plaintiff contends that Defendant engaged in unfair business practices by:

(1) distributing materials utilizing Plaintiff's name without his permission; (2) "violat[ing]

Plaintiff's common law right to privacy by misappropriating his name;" (3) "violat[ing]

California Civil Code § 3344;" (4) "violat[ing] 15 U.S.C. 1125(a), the 'Lanham Act,' by creating

---

[10]    As Plaintiff's third claim for relief under the Lanham Act is his only federal claim, should this Court dismiss that claim, it should also dismiss all of Plaintiff's remaining state law claims as well.  *See* 28 U.S.C. § 1367(c)(3).

457.01.PLE.MSJ.ps and as in support.wpd                    17

1  or implying a false endorsement;" (5) profiting at Plaintiff's expense by use of Plaintiff's name;

2  and (6) impairing Plaintiff's ability to seek out possible endorsement agreements with other

3  cellular service providers.  Complaint ¶ 52(a)-(f).  In other words, Plaintiff's allegation that

4  Defendant violated the Unfair Business Practices Act is derivative of his other allegations – that

5  Defendant violated the Lanham Act, Civil Code section 3344, and Plaintiff's common law right

6  to control use of his likeness.  Thus, Plaintiff's claim for unfair business practices rises and falls

7  with those other claims.

8          For all the reasons set forth in Section III.A and B *supra*, Defendant's

9  misappropriation and false endorsement claims fail as a matter of law under the undisputed facts.

10  Because those failed claims are substantially congruent to Plaintiff's unfair business practices

11  claim, the latter claim must fall as well.  *See Denbicare U.S.A. v. Toys "R" Us*, 84 F.3d 1143,

12  1152 (9th Cir. 1996) (where plaintiff's unfair business practice claim was based on trademark

13  claim, "since dismissal of [the plaintiff's] Lanham Act claim was proper, dismissal of its § 17200

14  claim was proper as well."); *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994) (holding

15  that the trial court correctly dismissed unfair business practice claims after the trial court

16  dismissed the substantially congruent Lanham Act claims); *Cairns*, 24 F. Supp. 2d at 1043.

17          **2.     Plaintiff's Claim for Violation of California's False Advertising Act**.

18          In his sixth claim for relief, Plaintiff alleges that Defendant violated California's

19  False Advertising Law (Bus. &. Prof. Code § 17500 et seq.).  Complaint, ¶¶ 55-62.  "Section

20  17500 bars dissemination of any statement regarding the sale of personal property 'which is

21  untrue or misleading, and which is known, or which by the exercise of reasonable care should be

22  known, to be untrue or misleading.'"  *Cairns*, 24 F. Supp. 2d at 1037 (quoting Bus. &. Prof.

23  Code § 17500).

24          Plaintiff's false advertising claim under state law fails for at least two reasons.

25  First, the Press Release is not an advertisement, in that it is not a statement regarding the sale of

26  personal property.  Second, Plaintiff's false advertising claim fails because the Press Release

27  does not contain any false statements or implications of endorsement.  Specifically, the

28  allegations underlying Plaintiff's false advertising claim are the same as those underlying his

1    false endorsement claim under the Lanham Act.  For all the reasons set forth in Section III.B.

2    *supra*, Plaintiff's Lanham Act claim fails as a matter of law under the undisputed facts.

3    Consequently, Plaintiff's false advertising claims under state law must fail as well.  *See Cairns v.*

4    *Franklin Mint Co.*, 24 F. Supp. 2d at 1043  ("With respect to the false implications of

5    endorsement, the Court's conclusion that plaintiffs have failed to establish a fair chance of

6    success on their § 43(a) false endorsement claim applies with equal force to . . . plaintiffs' false

7    advertising and unfair competition claims under state law.").

8                    **3.      Plaintiff's Claim for Unjust Enrichment**.

9                    Finally, Plaintiff asserts a claim for unjust enrichment.  To prevail on an unjust

10   enrichment claim, Plaintiff must prove: (1) receipt of a benefit by the Defendant and (2) unjust

11   retention of the benefit at Plaintiff's expense.  *Accuimage Diagnostics Corp v. Terarecon, Inc.*,

12   260 F. Supp. 2d 941, 958 (N.D. 2003).  The recipient of the benefit is liable only if the

13   circumstances are such that, as between the two persons, it is unjust for the recipient to retain it.

14   Rest., Restitution, § 1, com. c.

15                   Plaintiff's unjust enrichment claim fails for at least two reasons.  As a threshold

16   matter, there is no evidence that Defendant received any meaningful benefit by virtue of the

17   appearance of Plaintiff's name in the Press Release.  More important, even if Defendant received

18   some benefit, there is nothing "unjust" about Defendant's retention of such benefit.  As explained

19   above, Defendant's mention of Plaintiff's name in the Press Release is constitutionally protected

20   speech.  Moreover, the Press Release did not say that Plaintiff endorsed or was affiliated with

21   Cingular or AT&T.  Rather, Plaintiff's name was mentioned only in incidental fashion.  For all of

22   these reasons, there is nothing unjust about Defendant's conduct.

23                                          **IV.**

24                                    **CONCLUSION**

25                   Although Plaintiff is a legendary test pilot, this does not mean that no one can

26   mention his name or accomplishments without his permission.  Here, AT&T cited Plaintiff's

27   accomplishments and used his name in a manner that does not violate Plaintiff's right to privacy,

28   is protected speech as a matter of law, and does not constitute false endorsement, or any

1    endorsement at all.  Plaintiff has not and cannot adduce any evidence to the contrary.  Therefore,

2    AT&T respectfully requests that this Court grant judgment in its favor on all of Plaintiff's claims,

3    and in this action.

4

5    Dated: October ___, 2009          MENNEMEIER, GLASSMAN & STROUD LLP

6

7                                     By: _____

8                                        Andrew W. Stroud
                                         Attorneys for Defendant AT&T Mobility, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28