MENNEMEIER, GLASSMAN & STROUD LLP
ANDREW W. STROUD (SBN 126475)
MARGARET CAREW TOLEDO (SBN 181227)
STEPHEN LAU (SBN 221051)
980 9th Street, Suite 1700
Sacramento, CA 95814
Telephone:   916-553-4000
Facsimile:   916-553-4011
E-mail:   stroud@mgslaw.com

Attorneys for Defendant

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.),<br><br>    Plaintiff,<br><br>v.<br><br>AT&T MOBILITY, LLC; and DOES 1 TO 200, inclusive,<br><br>    Defendants. | Case No. 2:07-cv-02517 (FCD-GGH)<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CERTIFICATION OF APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Date:    March 26, 2010<br>Time:    10:00 a.m.<br>Courtroom:    2<br><br>The Honorable Frank C. Damrell, Jr. |

# I.

# INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), defendant AT&T Mobility, LLC ("AT&T") respectfully moves this Court to certify for interlocutory appeal its December 7, 2009 order denying AT&T's motion for summary judgment.

For the reasons set forth below, this Court should certify an interlocutory appeal of its December 7th, 2009 Order. The decision involves "a controlling question of law as to which there is substantial ground for difference of opinion":

> Can speech by a corporation be properly characterized as commercial speech if it (1) does not propose any commercial transaction, (2) does not identify any products or services for sale, and (3) contains information about disaster preparedness, which received extensive coverage by independent print and electronic media coverage as a subject of public interest?

This Court answered the question, "yes." But there is a substantial ground for a difference of opinion because using the legal test applied by this Court, the Ninth Circuit most certainly would answer the question, "no." That is because the commercial speech test as articulated and applied by this Court would effectively eviscerate all non-commercial speech for corporations or any other business entities. Both the Ninth Circuit and the Supreme Court have scrupulously avoided broad holdings that would effectively deny businesses their fundamental constitutional right to engage in speech protected by the First Amendment.

The parameters of the First Amendment defense are relevant not only to this case, because the First Amendment would be a complete defense to all of Plaintiff's claims, but to every business that issues press releases or engages in speech. A ruling by the Ninth Circuit has the potential to impact numerous cases involving the scope of the First Amendment's protection for non-commercial speech by business entities.

In addition, "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The trial date for this matter has now been vacated. If the Ninth Circuit determines that summary judgment was improperly denied, then the case will end and the parties and the Court will avoid the expense and effort of

trial.

## II.

## BACKGROUND

The essential facts underlying this action are largely undisputed. It is undisputed that on May 17, 2006, Cingular Wireless issued a press release entitled "Cingular Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season" (the "Press Release"). Complaint, ¶¶ 14, 15, Exhibit 1. The Press Release was released through PR Newswire and posted on Cingular's website. The Press Release was the subject of several news items pertaining to disaster preparedness in light of the looming hurricane season. The Press Release contained information about Cingular's "preparedness for disasters, such as hurricanes," as well as information about Cingular's "emergency preparedness equipment, such as its mobile command centers." The Press Release was issued following the disastrous 2005 hurricane season in which Hurricanes Katrina, Wilma, and Rita caused substantial damage to the Gulf Coast states, and the wireless infrastructure therein. The Press Release was intended to convey information that was interesting and useful to residents of the southeastern United States, which had suffered the most from those hurricanes.

The Press Release is 755 words long. It contained a single sentence in a quote mentioning Plaintiff's historic flight, during which he broke the sound barrier for the first time. That quote appears in the middle of the fifth paragraph of the Press Release, and reads:

> "Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier and achieved Mach 1. Today, Cingular is breaking another kind of barrier with our MACH 1 and MACH 2 mobile command centers, which will enable us to respond rapidly to hurricanes and minimize their impact on our customers," de la Vega said. (Complaint, ¶ 15.)

Plaintiff is not pictured in the Press Release, nor referred to in any other way. It is undisputed that the Press Release does not propose any commercial transaction and does not offer for sale any specific products or services. It is undisputed that the Press Release does not state that Plaintiff endorses Cingular, AT&T, or any of their products or services. It is also undisputed that the Press Release does not state that Plaintiff is "affiliated with Cingular, AT&T or any of their

products or services." Nor does the Press Release state that Plaintiff has benefitted from, or even purchased, any products or services offered by Cingular. Plaintiff even admits that the only thing the Press Release says about him is that he is a legendary test pilot who broke the sound barrier and achieved Mach 1 nearly 60 years ago.

On the basis of this undisputed factual record, AT&T moved for summary judgment on Plaintiff's six claims for violation of common law right to privacy, violation of his right to publicity under California Civil Code section 3344, violation of the Lanham Act, unfair business practices, false advertising and unjust enrichment. The scope of First Amendment speech protections is central to AT&T's defense and summary judgment motion. In its motion, AT&T argued that Plaintiff's claims for common law and statutory misappropriation failed as a matter of law because the Press Release contains newsworthy matter and is protected speech under the First Amendment. In addition, with respect to its Lanham Act claims, AT&T contended that Plaintiff's claim failed because when a public figure plaintiff brings a false endorsement claim against non-commercial speech, that plaintiff has to prove intent to deceive and Plaintiff failed to do so here.

On December 7, 2009, this Court denied AT&T's motion. This Court's conclusion, as a matter of law, that the Press Release is commercial speech is a controlling issue in this case.

On December 28, 2009, pursuant to the parties' stipulation, this Court entered an order (1) staying the action to allow AT&T to seek certification of this Court's December 7th Order; (2) in the event that the this Court certifies the December 7th Order and the Ninth Circuit exercises its discretion to allow an immediate appeal of the December 7th Order, staying the action pending resolution of the Ninth Circuit appeal; and (3) vacating the pre-trial deadlines and trial date.

///
///
///
///

# III.

# ARGUMENT

A.  **Legal Standard.**

Section 1292(b) allows a district court to certify an order for immediate appellate review under certain circumstances. Section 1292(b) provides as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). As the language of the statute indicates, there are three factors that the Court considers in determining whether certification of an interlocutory appeal is appropriate: (1) whether the moving party seeks to appeal an order involving a controlling question of law; (2) whether there is substantial ground for difference of opinion on that legal question; and (3) whether an immediate appeal on that legal question may materially advance the ultimate termination of the litigation.

A district court may amend its original order to add findings with respect to these three factors for an interlocutory appeal. Rule 5 of the Federal Rules of Appellate Procedure governs appeals by permission under section 1292(b):

> (a) Petition for Permission to Appeal
>
> . . .
>
> (3) If a party cannot petition for appeal unless the district court first enters an order granting permission to do so or stating that the necessary conditions are met, the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement. In that event, the time to petition runs from entry of the amended order.

FRAP 5(a)(3). If a district court certifies an order for interlocutory appeal because it involves a controlling question of law, after the order is initially entered, the proper procedure is to amend the order to contain the required certification. *See Haas v. Pittsburgh National Bank*, 627 F.2d 677, 679 n.1 (3d Cir. 1980).

B. **AT&T's First Amendment Defense Presents a Controlling Question of Law.**

Under 1292(b), the first consideration for the Court in deciding whether to certify an interlocutory appeal is whether the order being challenged involves a controlling question of law. The Ninth Circuit has explained that "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub Notice of Motion. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983). "The appeal must present a clear-cut question of law against a background of established facts." *Association of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1092 (E.D. Cal. 2008) (granting certification motion). A controlling question does not need to be dispositive of the entire lawsuit. *Id.* at 1093.

Here, the question of law is: Can speech by a corporation be properly characterized as commercial speech if it (1) does not propose any commercial transaction, (2) does not identify any product or services for sale, and (3) contains information about AT&T's disaster preparedness that received extensive print and electronic media coverage?

This is a pure question of law against a background of established facts. It is undisputed that the Press Release does not propose or reference any commercial transaction. It is also undisputed that the Press Release does not identify any specific products or services for sale. It is undisputed that the Press Release contains information about AT&T's preparedness for disasters. It is also undisputed that such disaster preparedness information was the subject of extensive media attention, including newspapers, trade journals, and television news.

This question of law is controlling in that it could materially affect the outcome of the litigation. If the Ninth Circuit finds that the Press Release is non-commercial speech, all of Plaintiffs' causes of action fail, and the parties need not go to trial. Specifically:

- If the Press Release is non-commercial speech, then it is fully protected by the First Amendment. The First Amendment defense defeats both the common law and statutory misappropriation of likeness claim. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1001 (9th Cir. 2001) ("Under both the common law cause of

action and the statutory cause of action, no cause of action will lie for the publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it.").

- If the Press Release is non-commercial speech, then Plaintiff's false endorsement claim under the Lanham Act fails as well. If the speech is non-commercial, Plaintiff must prove by clear and convincing evidence that Defendant subjectively intended to deceive consumers into believing that Plaintiff endorsed AT&T. *Kournikova v. General Media Communications, Inc.*, 278 F. Supp. 2d 1111, 1129 (C.D. Cal. 2003) ("a public figure . . . cannot prevail on her false endorsement claim unless she can establish by clear and convincing evidence that [defendant] subjectively intended that the average reader – or the average browser – believe that [plaintiff] . . . approved use of her name and likeness"). Plaintiff's opposition to summary judgment shows that he has no such evidence of an actual intent to deceive.

- The remaining causes of action are derivative of the misappropriation and false endorsement claims. Without misappropriation or false endorsement, there is no unfair competition or unjust enrichment. Likewise, without false endorsement or commercial speech, there is no false advertising. *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998) ("Section 17500 bars dissemination of any statement regarding the sale of personal property 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'").

Thus, because the issue of whether the Press Release constitutes commercial speech goes to the very heart of all the Plaintiff's claims, this question presents a "controlling question of law" within the meaning of section 1292(b).

///

///

///

**C.   There Is Substantial Ground for a Difference of Opinion Regarding the Law Governing Commercial Speech.**

The second factor under section 1292(b) is that there must be substantial ground for a difference of opinion on the issue. "Disagreement with the Court's ruling does not create a 'substantial ground for difference'; the proponent of an appeal must make some greater showing." *Association of Irritated Residents*, 634 F. Supp. 2d at 1090. "[T]he central inquiry is the strength of the arguments in opposition to the challenged ruling." *Helman v. Alcoa Global Fasteners Inc.*, 2009 U.S. Dist. LEXIS 64720, *17 (C.D. Cal. 2009). In denying AT&T's motion for summary judgment, this Court found that the Press Release should be characterized as commercial speech. However, there are very strong arguments in opposition to that ruling.

**1.   The *Bolger* Case is Readily Distinguishable.**

In support of its ruling on this issue, the Court relies upon the *Bolger* case, a case that Plaintiff did not cite and that Defendant consequently had no occasion to brief. *See* Order at 9:3-4, *citing Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 690 (1983). Yet, the *Bolger* case is readily distinguishable. The publications at issue in *Bolger* were a series of flyers distributed by a pharmaceutical company. Some of those flyers clearly proposed a commercial transactions, while others were "informational" in nature without explicitly proposing a commercial transaction. The Supreme Court found even the "informational pamphlets" to be commercial speech because (1) the company conceded that they were advertisements, (2) they referred to a specific product, and (3) the distributor of the publication had an economic motivation for mailing the publication. *Bolger*, 463 U.S. at 66 - 68. Even in such a case, the informational pamphlet's non-commercial element was compelling enough that Justice Stevens would not subject the pamphlet to commercial regulation. *Id.* at 80 – 84 (Stevens, J. Concurring in judgment).

Here, two of the three elements are missing. AT&T does not concede that the Press Release was an advertisement. Indeed, it is undisputed that the Press Release does not propose any commercial transaction at all. It is also undisputed that the Press Release does not mention any specific products or services for sale. Moreover, there is an additional fact here not

present in *Bolger*: several newspapers, trade journals, and TV stations found the subject matter of AT&T's Press Release to be a matter of public interest and so newsworthy that they reported the story in the newspaper and on TV. There is no evidence that the informational pamphlet about venereal diseases in *Bolger* garnered such press coverage. And, such press coverage demonstrates that the Press Release was not advertising, but informational.

As demonstrated in other cases applying the *Bolger* test in this circuit, the most critical element to be considered is whether the speech at issue proposes a commercial transaction. If it does not, then the speech should not be deemed commercial speech. *See e.g., William O'Neil & Co. V. Validea.com Inc.*, 202 F. Supp 2d 1113, 1119-1120 (C.D. Cal 2002) (book about investment strategies using name of public figure not commercial speech); *Oxycal Lab v. Jeffers*, 909 F. Supp 719, 723-725 (S.D. Cal. 1995) (as main purpose of defendant's book was not to propose commercial transaction, it was not commercial speech). Here, the main purpose of the Press Release was to assure consumers that they would still have cellular service following a cataclysmic event. Such information does not propose a commercial transaction nor constitute commercial speech.

Indeed, even this Court acknowledges that the appropriate classification of the Press Release presents a close question. Specifically, the Court observed: "Informational publications that refer to or promote a specific product, but are not mere proposals to engage in commercial transactions, present a closer question regarding the appropriate classification of the type of speech." Order at 9:24-26. Presumably, the question is even closer if the informational publication does not refer to or promote a specific product nor propose a commercial transaction – which is the undisputed situation here.

2.   **Under This Court's Application of the *Bolger* Test, All Businesses Will Invariably Lose Their First Amendment Rights.**

Substantial disagreement also exists because of this Court's articulation and application of the *Bolger* three-part test in its Order. As established by controlling Ninth Circuit precedent, in *Bolger* "the Supreme Court held that speech could properly be characterized as commercial when (1) the speech is admittedly advertising, (2) the speech references a specific

product, and (3) the speaker has an economic motive for engaging in the speech." *Am. Acad. Of Pain Mgmt v. Joseph*, 353 F. 3d 1099, 1106 (9th Cir. 2004). Under the *Bolger* test as established in the Ninth Circuit, it would appear to be beyond dispute that the Press Release is not commercial speech.

First, nowhere does AT&T concede or admit that the Press Release constitutes advertising. The Press Release is exactly what it purports to be: a Press Release. As it proposes no commercial transaction, nor offers for sale any specific service or product, the Press Release has none of the indicia of advertising. Therefore, the first *Bolger* factor favors a finding that the Press Release is not commercial speech.

Second, it was *undisputed* that the Press Release did not mention any specific service or product as required by the Ninth Circuit to constitute commercial speech. In its Order this Court states that this prong is satisfied because "Defendant's name as a service provider is mentioned multiple times throughout the Publication." Order at p. 10:27-28. Yet, the "name" that is mentioned is the name of Cingular, the company, not a "*specific*" Cingular product as required by the Ninth Circuit. *See Joseph*, 353 F.3d at 1106. A significant difference exists between mentioning a company's name versus mentioning its product or services. Just as Coca Cola, the company, is not Coca Cola the product, so too Cingular Wireless Services, the company, is not Cingular Wireless's cell phone plan. Thus, because the Press Release does not mention any specific product as required by the Ninth Circuit to constitute commercial speech, the second prong of the *Bolger* test also favors a finding of non-commercial speech.

Third, this Court found that AT&T had an economic motive in issuing the Press Release because it informed the reader that AT&T's wireless service specifically had been improved, and because the writer of the Press Release testified that its purpose was, in part, to create "positive associations with the AT&T brand." Order at p. 11:5-6. Neither of these determinations satisfies the "economic motive" prong as well. No evidence was presented that AT&T was seeking to sell more services or sold more services as a result of the Press Release. Nor was any evidence presented that AT&T had any motive other than addressing a matter of great public concern that arose during Hurricane Katrina; i.e., the reliability of wireless services

following a natural disaster. That the author, Mr. Siegel, desired to create positive associations with the AT&T brand is not surprising and is unavoidable, given that he is employed by AT&T and that AT&T was issuing the Press Release.

Strict adherence to the *Bolger* factors as actually articulated by the Ninth Circuit is critical in free speech cases. It is axiomatic that every press release issued by a business will mention the business' name. It also goes without saying that businesses always have a general economic motive in issuing press releases, and that press releases are usually issued in order to create positive associations with the business. Thus, under the *Bolger* test as applied by this Court, *all* corporate speech will now be deemed commercial speech. This is not the law. The Ninth Circuit has said that "the core notion of commercial speech is that it does no more than propose a commercial transaction." *Hoffman v. Capital Cities*, 255 F. 3d 1180, 1184 (9th Cir. 2001). Here, it is undisputed that the Press Release does not propose any commercial transaction. It is also undisputed that the Press Release does not offer for sale any specific products or services. It is further undisputed that the Press Release contains news-worthy information about AT&T's preparedness for disasters. Thus, as the Press Release lacks the core element for defining commercial speech, and as the *Bolger* factors as applied by the Ninth Circuit favor a finding that the Press Release is non-commercial speech, a strong argument exists that the Press Release is not commercial speech.

**D.    An Immediate Appeal from the Order Will Materially Advance the Ultimate Termination of the Litigation.**

The final consideration for a court in determining whether to certify an interlocutory appeal is whether an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The controlling question does not need to dispose of the litigation, only advance its ultimate termination." *Association of Irritated Residents*, 634 F. Supp. 2d at 1092. "Immediate appeal should be granted where there is 'a highly debatable question that is easily separated from the rest of the case, that offers an opportunity to terminate the litigation completely, and that may spare the parties the burden of a trial that is expensive for them even if not for the judicial system.'" *Helman*, 2009 U.S. Dist.

LEXIS 64720, *17, *quoting* Wright, Miller, & Cooper, *Federal Practice & Procedure, Jurisdiction 2d* § 3930, at 436 (1996).

Here, an immediate appeal will materially advance the ultimate termination of the litigation. If the Ninth Circuit finds that the Press Release is non-commercial speech, all of Plaintiff's causes of action fail, and the parties need not go to trial, for the reasons explained above. Moreover, this issue is sufficiently important that it will materially advance the resolution of other existing and prospective lawsuits. Corporations frequently invoke the names of living and deceased historical figures in the course of describing its innovations and achievements. Already, General Yeager has filed suit against AMD in Santa Clara Superior Court for mentioning his name (and that of Neil Armstrong) in relation to a new computer processor. Plaintiff has also very recently sued Virgin Atlantic Airlines in San Francisco Superior Court because Virgin Atlantic mentioned his name (and that of Buzz Aldrin) in connection with new features on its airplanes. *See* AT&T's Request for Judicial Notice in Support of 1292(b) Certification, Exhs. A and B. This Court should permit the Ninth Circuit to evaluate a decision that has the potential to increase right of publicity litigation dramatically, and to decrease the freedom of corporate entities to speak freely as well.

## IV.

## CONCLUSION

For all the foregoing reasons, AT&T respectfully requests that this Court certify pursuant to 28 U.S.C. § 1292(b) an interlocutory appeal from the December 7th Order denying AT&T's motion for summary judgment. The Court's determination of the motion involves a controlling question of law, there is a substantial ground for a difference of opinion, and an immediate appeal from the order will materially advance the ultimate termination of the litigation.

///
///
///
///

1 | Dated: January 8, 2010

MENNEMEIER, GLASSMAN & STROUD LLP

By: _____
Andrew W. Stroud
Attorneys for Defendant AT&T Mobility, LLC