1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GENERAL CHARLES E. "CHUCK"
     YEAGER (RET.),
11
              Plaintiff,                    CIV. S-07-2517 KJM GGH PS
12
         vs.
13
     AT&T MOBILITY, LLC.
14                                          FINDINGS AND RECOMMENDATIONS
              Defendant.
15   _____/

16          Plaintiff is recently proceeding in this action pro se, last counsel having

17   withdrawn on April 11, 2011.  This proceeding was referred to this court by Local Rule 302(21),

18   pursuant to 28 U.S.C. § 636(b)(1).  Previously pending on this court's law and motion calendar

19   for August 11, 2011, was defendant's motion for reconsideration, filed July 8, 2011.  Andrew

20   Stroud and Stephen Lau appeared for defendant.  Plaintiff appeared in pro se.  Having heard oral

21   argument and reviewed the papers, the court now issues the following findings and

22   recommendations.

23   BACKGROUND

24          Plaintiff initiated this action on November 21, 2007, concerning a press release

25   ////

26   ////

1

1   issued by defendant[1] on May 17, 2006, in which plaintiff's name was used.  The two page

2   publication, entitled "Cingular Wireless Announces Enhanced Emergency Preparedness Program

3   for 2006 Hurricane Season," states in part:

4               'Nearly 60 years ago, the legendary test pilot Chuck Yeager broke
               the sound barrier and achieved Mach 1.  Today, Cingular is
5               breaking another kind of barrier with our MACH 1 and MACH 2
               mobile command centers, which will enable us to respond rapidly
6               to hurricanes and minimize their impact on our customers,' [Chief
               Operating Officer] de la Vega said.
7

8   (Compl., Ex. 1.)  This mention of plaintiff is the sum total of references to his name or likeness

9   in this press release.

10              On December 7, 2009, District Judge Damrell denied defendant's motion for

11  summary judgment.  Because of an interlocutory appeal from that order[2] and a stay of the action

12  as a result, as well as various substitutions and withdrawals of plaintiff's counsel, and

13  reassignment of the case to Judge Mueller, defendant did not bring its motion for reconsideration

14  until ordered to do so by the undersigned on June 24, 2011.

15              Defendant's grounds for the motion are twofold.  First, defendant argues that

16  Judge Damrell committed clear error by relying on <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463

17  U.S. 60 (1983), to find that the Press Release Release at issue was commercial speech.[3]  Second,

18  defendant submits that two recent Supreme Court cases issued after the summary judgment order

19  constitute an intervening change in the law warranting reconsideration and granting of

20  defendant's summary judgment motion.  Plaintiff opposes the motion, arguing that defendant has

21  _____

22      [1]  Although the press release mentions Cingular Wireless, the parties stipulated that
    AT&T Mobility is the entity responsible for publication of the press release.  (Dkt. # 12.)
23
24      [2]  The Ninth Circuit Court of Appeals denied defendant's request for interlocutory appeal
    on June 14, 2010.  (Dkt. # 76.)

25      [3]  The procedural posture of this case is somewhat unusual in that it requires a magistrate
    judge to determine if a district judge committed clear error.  It is nevertheless authorized under
26  E.D. Local Rule 302(21) as plaintiff previously had counsel but is now proceeding in pro se.

1  failed to show clear error or an intervening change in controlling law.

2  <u>DISCUSSION</u>

3          Parties seeking reconsideration should demonstrate "new or different facts or

4  circumstances [which] are claimed to exist or were not shown upon such prior motion, or what

5  other grounds exist for the motion."  E.D. Cal. L. R. 230 (j); <u>see</u> <u>United States v. Alexander</u>, 106

6  F.3d 874, 876 (9th Cir.1997) (citing <u>Thomas v. Bible</u>, 983 F.2d 152, 154 (9th Cir.), cert. denied,

7  508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)) (Reconsideration appropriate for a

8  change in the controlling law, facts, or other circumstances, a need to correct a clear error, or a

9  need to prevent manifest injustice).

10         Although motions to reconsider are directed to the sound discretion of the court,

11  <u>Frito-Lay of Puerto Rico, Inc. v. Canas</u>, 92 F.R.D. 384, 390 (D.C. Puerto Rico 1981),

12  considerations of judicial economy weigh heavily in the process.  Thus Local Rule 230(j)

13  requires that a party seeking reconsideration of a district court's order must brief the "new or

14  different facts or circumstances [] claimed to exist which did not exist or were not shown upon

15  such prior motion, or what other grounds exist for the motion."  The rule derives from the "law

16  of the case" doctrine which provides that the decisions on legal issues made in a case "should be

17  followed unless there is substantially different evidence . . . new controlling authority, or the

18  prior decision was clearly erroneous and would result in injustice."  <u>Handi Investment Co. v.</u>

19  <u>Mobil Oil Corp.</u>, 653 F.2d 391, 392 (9th Cir. 1981); <u>see also</u> <u>Waggoner v. Dallaire</u>, 767 F.2d

20  589, 593 (9th Cir. 1985), <u>cert. denied</u>, 475 U.S. 1064 (1986).

21         "After thoughts" or "shifting of ground" are not appropriate bases for

22  reconsideration.  <u>Fay Corp. v. BAT Holdings I, Inc.</u>, 651 F.Supp. 307, 309 (W.D. Wash.1987),

23  aff'd,  896 F.2d 1227 (9th Cir.1990).  The standards "reflect[ ] district courts' concern for

24  preserving dwindling resources and promoting judicial efficiency."  <u>Costello v. United States</u>

25  <u>Government</u>, 765 F.Supp. 1003, 1009 (C.D. Cal.1991). "While Rule 59(e) permits a district court

26  to reconsider and amend a previous order, the rule offers an 'extraordinary remedy, to be used

1  sparingly in the interests of finality and conservation of judicial resources.'" Carroll v. Nakatani,

2  342 F.3d 934, 945 (9th Cir. 2003) (quoting 12 James Wm. Moore et al., Moore's Federal Practice

3  § 59.30[4] (3d ed.2000)).

4       A.  Whether the District Court's Bolger Analysis Was Clear Error

5          Here, defendant first claims that Judge Damrell committed clear error in relying

6  on Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 103 S.Ct. 2875 (1983), because the Press

7  Release is missing the combination of characteristics that leads to a finding of commercial

8  speech.  Defendant argues that this case does not present the circumstances found in Bolger in

9  that the Press Release did not use an advertising format, was not distributed through advertising

10  channels, and does not contain a sales pitch, or any specific products.[4]

11          Defendant contends that it was not aware of the district court's intention to rely on

12  Bolger as plaintiff did not cite to that case, and the court did not hold oral argument.  Bolger was

13  raised initially by the court in its order.

14          In Bolger, the Supreme Court considered and found the speech at issue, pamphlets

15  concerning prophylactics produced and distributed by a contraceptives manufacturer, to be

16  commercial in nature because all three of the following factors were present: (1) the party

17  conceded the pamphlets were advertisements; (2) the pamphlets contained a reference to a

18  specific product; (3) the party had an economic motivation for mailing the pamphlets.  The Ninth

19  Circuit Court of Appeals has interpreted the factors in Bolger as follows: (1) use of an

20  advertising format; (2) reference to a particular product; (3) existence of an economic motive.

21

22     [4]  The undersigned has not been involved in the merits of this case until now, which
   might explain the lack of clarity as to why the statement at issue does not qualify as historical
23  fact in the public domain.  See Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 347-
   48, 111 S.Ct. 1282, 1289 (1991) ("all facts-scientific, historical, biographical, and news of the
24  day... "may not be copyrighted and are part of the public domain available to every person");
   Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) (noting qualified defense
25  in publishing statements about "people who, by their accomplishments, mode of living,
   professional standing or calling, create a legitimate and widespread attention to their activities").
26  However, such an issue is not before the court on this motion.

4

1  S.O.C., Inc. v. County of Clark, 152 F.3d 1136, 1144 n. 8, *as amended by* 160 F.3d 541 (9th Cir.

2  1998).

3            Judge Damrell relied on Bolger in analyzing the Press Release.  He found that the

4  central theme of the Press Release was how defendant's emergency preparedness program

5  enhanced its wireless services.  The court also noted that the service provider was mentioned

6  multiple times throughout the publication.  "[T]he publication did not seek to inform the reader

7  about emergency preparedness generally, but rather how defendant's wireless service specifically

8  had been improved to handle such emergencies."  The order also referred to testimony by the

9  writer of the publication, which revealed that its purpose was to create positive associations with

10  the AT&T brand.  The court found that although none of these facts was dispositive, the

11  publication, when looked at as a whole, was commercial speech.  Order, filed December 7, 2009,

12  at 10-11. (Dkt. # 66.)

13            Defendant argues that when the three Bolger factors are applied, a finding that the

14  Press Release is not commercial speech is required.  First, defendant claims that it never

15  conceded that its Press Release was advertising because it was not distributed through advertising

16  channels, it is a text only document containing dry, technical details, and it does not offer any

17  product or service for sale.  The Press Release was not disseminated in newspapers or on air, but

18  was only posted on the PR Newswire and on Cingular's website.  This Press Release was later

19  published by news outlets, including Reuters, Associated Press, CNN, and local newspapers and

20  television.  Defendant argues that the fact that this release was picked up by so many mainstream

21  news media outlets indicates that it was newsworthy and not advertising, or it would not have

22  been disseminated by these outlets.

23            Defendant argues that the Press Release does not meet the second Bolger factor

24  either in that it does not reference a particular product.  It does not pitch a particular cell phone or

25  cell phone plan for purchase.  Defendant argues that without reaching the third factor, it is clear

26  under the first two factors that the Press Release lacks the "combination of ... characteristics" that

1   make it commercial speech under Bolger.  Because the first two prongs of the Bolger test have

2   not been met, defendant argues that summary judgment is appropriate.[5]

3           Clear error presupposes a manifest failure to consider material facts presented to

4   the court before the decision.  See Personal Communications Devices v. Platinum Cargo, 2011

5   WL 3319538, at *2 (citing C.D. Cal. L.R. 7-18).  As plaintiff quotes, "[t]o be clearly erroneous, a

6   decision must strike us as more than just maybe or probably wrong; it must, as one member of

7   this court recently stated during oral argument, strike us as wrong with the force of a five-week

8   old, unrefrigerated dead fish."  Fisher v. Roe, 263 F.3d 906, 912 (9th Cir. 2001) (citation

9   omitted), *overruled on other grounds by* Payton v. Woodford, 346 F.3d 1204 (9th Cir. 2002).

10  Here, the district court properly considered Bolger although it did not specifically frame its

11  analysis in terms of the three factors cited by defendant.  The fact that defendant can make

12  reasonable, and potentially meritorious, arguments to the contrary does not transform the

13  decision into clear error. Therefore, the undersigned declines to find clear error in the decision.

14  As discussed *infra*, the two recent Supreme Court cases cited by defendant do not affect the

15  Bolger analysis or the court's application of it.

16      B.  Recent Supreme Court Law

17          Defendant cites two Supreme Court cases decided this year, arguing that they have

18  dramatically expanded the free speech rights of corporations since the district court's order was

19  issued.  Defendant interprets the first case, Citizens United v. FEC, ___ U.S. ___ ,130 S.Ct. 876

20  (2010), as "proclaim[ing] that corporate speakers and individual speakers have equal standing

21  before the First Amendment."  (Def.'s Mot. at 1-2.)  In actuality, the opinion discussed whether

22  corporations could use their funds to make expenditures for political speech and found that such

23  speech could not be suppressed on the basis of the speaker's corporate identity.  The

24  communications at issue there were electioneering communications, speech that expressly

25  _____

26          [5] The next section addresses defendant's argument that the third Bolger factor, economic
    motivation, has been effectively eliminated by two recent Supreme Court cases.

1  promotes the election or defeat of a candidate.  Defendant quotes the court's statement:

2      Premised on mistrust of governmental power, the First Amendment
       stands against attempts to disfavor certain subjects or viewpoints.
3      See, e.g., United States v. Playboy Entertainment Group, Inc., 529
       U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (striking
4      down content-based restriction). Prohibited, too, are restrictions
       distinguishing among different speakers, allowing speech by some
5      but not others. See First Nat. Bank of Boston v. Bellotti, 435 U.S.
       765, 784, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). As instruments to
6      censor, these categories are interrelated: Speech restrictions based
       on the identity of the speaker are all too often simply a means to
7      control content.

8      Quite apart from the purpose or effect of regulating content,
       moreover, the Government may commit a constitutional wrong
9      when by law it identifies certain preferred speakers. By taking the
       right to speak from some and giving it to others, the Government
10     deprives the disadvantaged person or class of the right to use
       speech to strive to establish worth, standing, and respect for the
11     speaker's voice. The Government may not by these means deprive
       the public of the right and privilege to determine for itself what
12     speech and speakers are worthy of consideration. The First
       Amendment protects speech and speaker, and the ideas that flow
13     from each.

14  Citizens United, 130 S.Ct. at 898-99.

15          The court's rationale for this statement, however, is inconsistent with defendant's

16  interpretation.  The court stated: "it is inherent in the nature of the political process that voters

17  must be free to obtain information from diverse sources in order to determine how to cast their

18  votes." Id. at 899.  The court's task in that case was to analyze two conflicting lines of

19  precedent: one that forbade restrictions on political speech based on the speaker's corporate

20  identity, and a later line of cases that permitted restrictions.  Id. at 903.  Citizens United did not

21  refer to Bolger, let alone discredit it or impliedly overrule it in any way, and expectedly so, as the

22  entirety of this decision was focused on political speech and campaign spending, and has no

23  application here.

24          At most, defendant can state only that based on scholarly academic analyses, this

25  case proposes that the content of the speech rather than the motivations of the speaker should be

26  examined, and that given a future case, the court will do away with the commercial speech

7

1  doctrine or apply a stricter scrutiny to it.  Such reasoning is far too attenuated a proposition for

2  this court to adopt.

3        As to the second recent Supreme Court case raised in defendant's motion, <u>Sorrell</u>

4  <u>v. IMS Health Inc.</u>, ___ U.S. ___, 131 S.Ct. 2653, (June 23, 2011), defendant argues that it went

5  further than <u>Citizens United</u> by holding that even corporate speech in furtherance of a

6  commercial enterprise is entitled to full First Amendment protection.  In that case, the court

7  struck down a Vermont statute that restricted the sale of pharmacy records which revealed the

8  prescribing practices of individual doctors so that pharmaceutical manufacturers could not use

9  them for marketing and sales purposes.  The Supreme Court found the statute was impermissible

10  as a content and speaker based speech restriction, and that the speech at issue was fully protected

11  by the First Amendment, even if it is in aid of pharmaceutical marketing.  Therefore, Vermont's

12  statute was subjected to heightened judicial scrutiny.  <u>Id.</u> at 2659.  The court found that speech

13  relating to public health and safety is just as important as political speech, if not more so.  <u>Id.</u> at

14  2664.

15        Defendant argues that speech concerning public safety, such as during hurricanes,

16  rises to the same importance.  Defendant invokes a link between <u>Citizens United</u> and <u>Sorrell</u>,

17  both written by Justice Kennedy, to create an inference that corporate speech equates to

18  individual speech, and in fact notes Justice Breyer's dissent in which he recognizes this

19  significant departure in the law concerning commercial speech.  <u>Id.</u> at 2677.  Additionally,

20  defendant points out that the district court conceded the analysis was a close call under <u>Bolger</u>,

21  Order, at 4, and if so, the two recent Supreme Court opinions change the outcome in favor of

22  protected speech.  In fact, defendant argues, <u>Sorrell</u> (and to a lesser extent <u>Citizens United</u>),

23  overturn <u>Bolger</u> insofar as commercial speech no longer receives only qualified protection under

24  the First Amendment, and there is no longer authorized speech-discrimination based on a

25  corporation's economic interest in speaking.  It is true that <u>Sorrell</u> did state that the statute at

26  issue imposed a speaker and content based burden on protected speech, sufficient to justify

1   application of heightened judicial scrutiny, (Id. at 2667); however, the Supreme Court in no way

2   modified the Bolger test.  It had the opportunity to specifically delete the third factor from the

3   Bolger analysis and declined to do so.  Furthermore, Judge Damrell did not analyze the Press

4   Release solely in terms of the status of the speaker, a corporation, or its economic motivation.

5   He clearly considered the other factors as set forth above.

6           Specifically, a reading of Sorrell indicates that it referenced Bolger three times in

7   regard to specific points without discrediting or modifying this precedent in any way, let alone

8   overruling it.  Sorrell, 131 S.Ct. at 2669, 2670, 2672.  For example, the court distinguished a

9   cited principle that "private decisionmaking can avoid government partiality and thus insulate

10  privacy measures from First Amendment challenge" as inapposite to the Sorrell case, with a *cf.*

11  reference to Bolger.  Id. at 2669.

12          At hearing, plaintiff cited cases decided post-Sorrell which construe its effect on

13  Bolger consistently with this court's view.  In particular, Dex Media West, Inc. v. City of Seattle,

14  ___ F.Supp.2d ___, 2011 WL 2559391 (W.D. Wash. June 28, 2011),  had occasion to discuss

15  Sorrell and apply Bolger within days after the Sorrell decision.  At issue in Dex Media West was

16  the city's ordinance which banned distribution of yellow pages type phone books unless certain

17  conditions were met, because so many residents had complained of these unwanted deliveries to

18  their homes.  In upholding the ordinance, the court applied Bolger to find that the yellow pages

19  were commercial speech, and then applied an intermediate scrutiny analysis under Central

20  Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561, 100 S.Ct. 2343

21  (1980).  Id. at *4, *8.  The court considered all three Bolger factors as cited above, without

22  modification.  It found that the yellow pages contain many advertisements, that the directories

23  reference specific products, and that plaintiffs had an economic motivation in delivering the

24  directories to the doorsteps of Seattle's residents.  Id. at *4.  In fact, the court noted that aside

25  from Bolger, common sense dictates that yellow page directories in general should not receive

26  the highest level of scrutiny under the First Amendment.  Id. at *5.  The court did mention

*Sorrell*, but only on one point: to distinguish the regulation there as paternalistic in permitting the government to control the access to the material. *Id.* at *8. Perhaps *Sorrell* merely reflects, as plaintiff contends, the First Amendment's hostility toward government censorship, which is not the case here. This context of *Sorrel*, involving the challenge to a state law implicating the First Amendment, is far different from the challenge to a Press Release made here by an individual.

Defendant proposes that this court in essence find that *Bolger* has been overruled, an act which it has no authority to do. As the Supreme Court has stated:

> We do not acknowledge, and we do not hold, that other courts should conclude our more recent cases have, by implication, overruled an earlier precedent. We reaffirm that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."
> *Rodriguez de Quijas*, supra, at 484, 109 S.Ct., at 1921–1922.

*Agostini v. Felton*, ___ U.S. ___, 117 S.Ct. 1997, 2017 (1997).

For this court to grant defendant's motion for reconsideration would, in essence, require it to overrule *Bolger* which the court cannot do.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that: Defendant's motion for reconsideration, filed July 8, 2011, (dkt. # 98), be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The

////

////

1  parties are advised that failure to file objections within the specified time may waive the right to

2  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: August 29, 2011

4                                              /s/ Gregory G. Hollows
                                     UNITED STATES MAGISTRATE JUDGE

5  GGH:076/Yeager2517.rec.wpd

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26