ZARIAN MIDGLEY & JOHNSON PLLC
John N. Zarian (SBN 145080)
960 Broadway Ave., Suite 250
Boise, Idaho 83706
Telephone: (208) 562-4900
Facsimile: (208) 562-4901
E-Mail: zarian@zmjlaw.com

*Attorneys for Plaintiff*
*Gen. Charles E. "Chuck" Yeager (Ret.)*

MENNEMEIR, GLASSMAN & STROUD LLP
Andrew W. Stroud (SBN 126475)
Stephen Lau (SBN 221051)
980 9th Street, Suite 1700
Sacramento, CA 95814
Telephone: (916) 553-4000
Facsimile: (916) 553-4011
E-mail: stroud@mgslaw.com

KOHUT & KOHUT LLP
Ronald J. Kohut (SBN 66463)
3554 Round Barn Blvd., Suite 204
Santa Rosa, CA 95403
Telephone: (707) 573-3100
Facsimile: (707) 573-3101
E-mail: ronald@kohutlaw.com

*Attorneys for Defendant AT&T Mobility, LLC*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GENERAL CHARLES E. "CHUCK" YEAGER (RET.), <br><br> Plaintiff, <br><br> v. <br><br> AT&T MOBILITY, LLC, et al., <br><br> Defendants. | Case No.: 2:07-cv-02517-KJM-GGH <br><br> **JOINT PRETRIAL STATEMENT** |

Pursuant to Local Rule 16-281 and in accordance with the Amended Status (Pretrial Scheduling) Order [Dkt. No. 37] entered on April 22, 2009, as modified by the Order dated June 23, 2011 setting pretrial conference and jury trial [Doc. No. 97], plaintiff Gen. Charles E. "Chuck" Yeager (Ret.) ("Plaintiff" or "Gen. Yeager") and defendant AT&T Mobility, LLC ("Defendant" or "AT&T") respectfully submit the following Joint Pretrial Statement:

**1.    JURISDICTION/VENUE:**

Jurisdiction is predicated upon federal question jurisdiction, 28 USC § 1332, because Plaintiff's third claim for relief for false endorsement is brought under the Lanham Act, 15 USC § 1125(a). Supplemental jurisdiction over the state law claims for violation of common law right to privacy (first claim for relief), violation of Code. Civ. Proc. § 2244 (second claim for relief), unjust enrichment (fourth claim for relief), violation of California Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (fifth claim for relief), and violation of California False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (sixth claim for relief), is proper under 15 USC § 1367.  Jurisdiction is also proper under 28 USC § 1331, based on diversity of citizenship.  In its Amended Status (Pretrial Scheduling) Order [Dkt. No. 37], the Court found that jurisdiction and venue are not disputed.

**2.    JURY/NON-JURY**:

In his Complaint [Dkt. No. 1], Plaintiff demanded, and herein again demands, a jury trial on all claims for relief in this action.  In its Answer [Dkt. No. 21], Defendant also demanded a jury trial.

**3.    UNDISPUTED FACTS:**

    **A.    Plaintiff's Statement of Undisputed Facts**

        i     On May 17, 2006, Cingular Wireless ("Cingular") released a press release under the title, "Cingular Wireless Announced Enhanced Emergency Preparedness Program for 2006 Hurricane Season" (hereinafter, the "press release").

        ii.    The press release was circulated through PR Newswire and posted on Cingular's website.

        iii.    In the middle of the fifth paragraph of the press release, it states: "'Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier and achieved Mach 1.  Today, Cingular Wireless is breaking another kind of barrier

        with our MACH 1 and MACH 2 mobile command centers, which will enable us to respond rapidly to hurricanes and minimize their impact on our customers,' de la Vega said."

    iv.    The press release contains information about Cingular's preparedness for disasters such as hurricanes, as well as information about Cingular's emergency preparedness equipment such as its mobile command centers.

    v.

    vi.    In preparing the press release, Defendant sought to make an association between breaking the sound barrier and breaking new barriers of disaster preparedness.

    vii.    The purpose of the press release was, in part, to create positive associations in people's minds with the AT&T brand so the public would think highly of the company.

**B.**    **Defendant's Statement of the Undisputed Facts**

    i.    On May 17, 2006, Cingular Wireless issued a community service press release entitled "Cingular Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season." ("Press Release"). The Press Release was released through PR Newswire and posted on Cingular's website. The Press Release is 755 words long and contains one mention of Plaintiff. In the middle of the fifth paragraph of the Press Release, it states: "'Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier and achieved Mach 1."

    ii.    The Press Release does not: (1) contain a picture of Plaintiff; (2) mention the Plaintiff in the headline; (3) propose a commercial transaction or offer for sale any specific products or services of Cingular; (4) state that Plaintiff endorses Cingular, or any of its products or services; (5) state that Plaintiff is affiliated with Cingular or any its products or services; or, (6) state that Plaintiff has ever benefitted from or purchased any products or services offered by Cingular. The Press Release does recite a commonly known historic fact: Plaintiff is the legendary test pilot who broke the sound barrier and achieved MACH 1 nearly 60

>> years ago. This historic flight occurred on October 14, 1947 as part of a military mission for the United States Air Force.
>
> iii. The Press Release was issued after the catastrophic hurricane season of 2005, where Hurricanes Katrina, Rita and Wilma severely damaged Cingular's infrastructure and ability to meet the emergency needs of its subscribers in the Gulf States. As a community service, the author of the Press Release intended to convey information that was of public interest, useful and reassuring to the residents of the Gulf States. The emergency preparedness program announced through the Press Release was the subject of follow-up news stories in the print and television media. Not one of these news articles or broadcasts mentioned Plaintiff.
>
> iv. Plaintiff cannot identify a single person who was confused by their reading of the Press Release into believing that Plaintiff endorsed Cingular. The breaking of the sound barrier is a newsworthy and historical event that is part of the public record. The Plaintiff is a public figure and there is nothing private about his participation in the achievement of breaking the sound barrier. Plaintiff has been interviewed about this achievement thousands of times throughout the world.

**4.   DISPUTED FACTUAL ISSUES:**

**A.   Plaintiff**

   i. Whether the press release is a press release or an advertising or promotional article.

   ii. Whether the press release was produced and distributed for purposes of enhancing AT&T's brand as opposed to solely conveying information of public interest.

   iii. Whether the use of press release name in the Publication was stated as a historical fact.

   iv. Whether the press release, as disseminated and distributed in combination with a "B-Roll" video, contains one or more mentions of Plaintiff's name.

      v.      Whether there was a reference to Plaintiff in any news articles or broadcasts in which Cingular's emergency preparedness program was featured.

      vi.      The nature and extent of damages to be awarded, if any, in this action.

### B. Defendant

Defendant agrees that Plaintiff's Issues i, ii, iii, and vi are disputed factual issues. However, Defendant disagrees that there is any genuine dispute as to Plaintiff's Issues iv and v.

In addition, Defendant identifies the following disputed factual issues, all of which are raised by one or more of Plaintiff's six causes of action:

      i.      Did Defendant use Plaintiff's name in connection with news or public affairs?

      ii.      Did Defendant knowingly use Plaintiff's name to advertise or sell cell phones or cell phone subscription services?

      iii.      Was Defendant's use of Plaintiff's name directly connected to Defendant's commercial purpose (i.e., was it a non-incidental use)?

      iv.      Was Plaintiff harmed?

            a.      Was he deprived of the commercial value of his name and/or endorsement?

            b.      Did he experience mental suffering (humiliation, loss of reputation)?

            c.      Was the value of his name diluted and diminished in the telecommunications market?

      v.      Was Defendant's conduct a substantial factor in causing each item of harm claimed by Plaintiff?

      vi.      What is the monetary value attached to each form of harm identified above?

      vii.      If the use was in connection with news or public affairs, did the use contain false information?

      viii.      If so, did Defendant know that the broadcast/account was false? Alternatively, did Defendant act with reckless disregard of its falsity?

      ix.      Did Defendant gain a commercial benefit or some other advantage by using Plaintiff's name?

    x. Did Plaintiff's privacy interests outweigh the public interest served by Defendant's use of his name?

      a. What was the seriousness of the interference with Plaintiff's privacy?

    xi. What is the likelihood that Defendant's use of Plaintiff's name caused confusion as to endorsement?

      a. What is the level of recognition that Plaintiff has among the segment of the society for whom the Defendant's product is intended?

      b. What is the relatedness of the fame or success of the Plaintiff to the Defendant's product?

      c. What is the evidence of actual confusion?

      d. What were the marketing channels used?

      e. What was the likely degree of purchaser care?

      f. What was Defendant's intent on selecting the Plaintiff?

      g. Is there a likelihood of expansion of the product lines?

    xii. Was Defendant's use of Plaintiff's name nominative fair use?

      a. What is the degree of likely consumer confusion?

      b. Did Defendant use Plaintiff's name because of a lack of alternative description terms?

      c. Did Defendant use only so much of Plaintiff's name/identity as was reasonably necessary to identify him?

      d. Did Defendant do anything in connection with Plaintiff's name that would suggest sponsorship or endorsement of Defendant's product or service by Plaintiff?

**5. DISPUTED EVIDENTIARY ISSUES:**

 A. **Plaintiff**

  Based on currently available information, Plaintiff identifies the following issues of which he reserves the right to seek the Court's resolution pretrial through motions *in limine*. In identifying these

issues, Plaintiff reserves the right to identify and designate additional areas arising, including areas in response to any matters that Defendant may raise during pretrial proceedings in this action.

    i. Plaintiff will seek to exclude the testimony of Defendant's expert, David Drews, on the grounds that Plaintiff's agent consulted with him in significant detail concerning the facts of this action prior to his retention by Defendant.

    ii. Plaintiff will seek to exclude any evidence or argument at trial that Plaintiff is seeking to "profit" from his service in the United States Air Force.

    iii. Plaintiff will seek to exclude any evidence or argument at trial concerning unrelated civil actions and matters to which Plaintiff was or is a party.

    iv. Plaintiff will seek to exclude any evidence or argument at trial regarding Plaintiff's legal representation in this or any other civil action.

    v. Plaintiff will seek to exclude any evidence not disclosed by Defendant during discovery.

    vi. Plaintiff will seek to exclude any evidence of settlement negotiations not already automatically excluded by the Court.

    vii. Plaintiff will seek to exclude any evidence of Defendant's entire marketing or advertising budget.

Plaintiff requests that the Court set a briefing schedule for motions *in limine* or any other anticipated pretrial motions at the pretrial conference.

B. **Defendant**

Defendant anticipates several disputes concerning the admissibility of certain evidence and/or testimony. (Defendant reserves the right to file motions *in limine* in regard to other issues as they emerge.) Specifically, those three disputes are as follows.

    i. Defendant anticipates that Plaintiff's expert, Jon Albert, a/k/a Jon Albert-Levy, will attempt to offer inappropriate and inadmissible opinion testimony. In Plaintiff's expert disclosure, Mr. Albert offered numerous opinions that lack factual foundation, are unsupported by any referenced data, constitute legal conclusion, and are not

            necessary to assist the trier of fact. Defendant will seek to exclude any such testimony by motion *in limine*.

    ii.    Defendant anticipates that Plaintiff will attempt to offer inadmissible hearsay evidence in support of his assertion that the Press Release created actual confusion among consumers. Defendant will seek to exclude any such testimony by motion *in limine*.

    iii.    Defendant anticipates that Plaintiff will attempt to mention Defendant's products or services in a manner that is designed to play on existing prejudices of the jurors, or create prejudice where it does not already exist. Defendant will seek to exclude any such testimony or argument by motion *in limine*.

    iv.    Defendant will seek to exclude any evidence not disclosed by Defendant during discovery.

    v.    Defendant will seek to exclude any claim or argument for damages that are legally unavailable to Plaintiff under his legal theories and/or causes of action, and any evidence in support thereof.

## 6. RELIEF SOUGHT:

Plaintiff seeks the following relief, as set forth in his Complaint [Dkt. No. 1], according to proof at trial: (a) general damages; (b) statutory damages; (c) special damages; and (d) exemplary or punitive damages. Plaintiff also seeks restitution of any and all benefits received by Defendant through the use of Plaintiff's name, identity, and/or likeness. In addition, Plaintiff also seeks the costs incurred in prosecuting this action, as well as reasonable attorney's fees. Finally, Plaintiff seeks an injunction barring Defendant from utilizing, or permitting to be utilized, Plaintiff's name in connection with Defendant's products, services, or endeavors without an executed agreement, and an order requiring Defendant to affirmatively act to remove infringing material from the Internet or other accessible media.

## 7. POINTS OF LAW:

### A. Plaintiff

The following issues remain to be litigated:

    i.    Common law and statutory Claims for Misappropriation

        a.      Whether Defendant appropriated Plaintiff's name or likeness to Defendant's advantage resulting in injury to Plaintiff, and any liability therefor.

        b.      Whether Defendant knowingly appropriated Plaintiff's name or likeness and whether there is a direct connection between the alleged use and a commercial purpose, and any liability therefor.

   ii.     False Endorsement Claim

        a.      Whether Defendant used a uniquely distinguishing characteristic of Plaintiff's identity in a manner likely to confuse consumers as to Plaintiff's sponsorship or approval of Defendant or its services or products, and any liability therefor.

   iii.    Unfair Business Practices Act Claim

        a.      Whether any use of Plaintiff's name by Defendant was an unlawful, unfair or fraudulent business act, and any liability therefor.

   iv.    False Advertising Act Claim

        a.      Whether the Publication contained any statement which was untrue or misleading, and which is known, or which by the exercise or reasonable care should be known, to be untrue or misleading, and any liability therefor.

   v.     Unjust Enrichment Claim

        a.      Whether Defendant received a benefit and unjustly retained that benefit at Plaintiff's expense, and any liability therefor.

B.    **Defendant**

Plaintiff has asserted six causes of action. The principal causes of action to be tried are (1) misappropriation of likeness (under both common law and Civil Code section 3344), and (2) false endorsement (under the Lanham Act). Plaintiff bears the burden of proving each element of those causes of action.

With respect to the statutory misappropriation of likeness claim, there are four key issues: (1) whether Defendant mentioned Plaintiff's name in connection with news or public affairs (if so, Plaintiff must prove that the Defendant's statements were false and known by the Defendant to be false); (2) whether Defendant mentioned Plaintiff's name to advertise or sell a particular product; (3) whether the mention of Plaintiff's name bears a direct connection to Defendant's commercial purpose; and, (4) whether Plaintiff was damaged. Defendant anticipates that Plaintiff's damages theory will hinge on the monetary value of his commercial endorsement. Plaintiff's common law claim for misappropriation poses substantially the same issues.

Plaintiff's false endorsement claim under the Lanham Act presents two key issues. The first is whether Defendant's mention of Plaintiff's name is one that is likely to lead to consumer confusion. This Court has held that the "confusion" analysis is governed by the eight-factor test set out in *AMF, Inc v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). The second issue is whether Defendant's mention of Plaintiff's name constitutes nominative fair use.

**8.    ABANDONED ISSUES:**

To date, Plaintiff has not abandoned any claims or causes of action in this lawsuit.

**9.    WITNESSES:**

A list of witnesses that Plaintiff may call at trial is set forth in the accompanying Exhibit A to this Joint Pretrial Statement – Plaintiff's Witness List.

A list of witnesses that Defendant may call at trial is set forth in the accompanying Exhibit B to this Joint Pretrial Statement – Defendant's Witness List.

**10.    EXHIBITS - SCHEDULES AND SUMMARY:**

A list of exhibits that Plaintiff may offer at trial in this action is set forth in the accompanying Exhibit C to this Joint Pretrial Statement – Plaintiff's Exhibit List.

A list of exhibits that Defendant may offer at trial in this action is set forth in the accompanying Exhibit D to this Joint Pretrial Statement – Defendant's Exhibit List.

**11. DISCOVERY DOCUMENTS:**

A. **Plaintiff**

Based on currently available information, Plaintiff identifies the categories of discovery documents listed below and which he may offer at trial in this action. By identifying the documents below, Plaintiff does not waive any objections he now has or may have to the admissibility in evidence of such documents in some respects or for certain purposes. Plaintiff also objects and does not disclose information or documents to the extent that such disclosure might otherwise call for information protected by any recognized privilege or doctrine protecting disclosure. Plaintiff also objects to producing information within his possession, the disclosure of which is subject to or precluded by restrictions of confidentiality imposed by, or pursuant to, a third party agreement or Court Order.

| Date | Description |
| --- | --- |
| 06/22/2009 | Defendant's Responses to Plaintiff's Request for Production of Documents, Set One |
| 04/16/2009 | Plaintiff's Responses to Defendant's Request for Production of Documents, Set One |
| 04/16/2009 | Plaintiff's Responses to Defendant's Requests for Admissions, Set One |
| 05/18/2009 | Plaintiff's Responses to Defendant's Requests for Admissions, Set Two |
| 08/24/2009 | Defendant's Responses to Plaintiff's Request for Admissions, Set One |
| 04/16/2009 | Plaintiff's Responses to Defendant's Special Interrogatories, Set One |
| 06/22/2009 | Defendant's Responses to Plaintiff's Interrogatories, Set One |
| 08/24/2009 | Defendant's Responses to Plaintiff's Interrogatories, Set Two |
|  | Plaintiff's Expert Report and Disclosure |
| 05/21/2009 | Deposition of Mark Siegel |
|  | Defendant's Expert Disclosure and Report |

B. **Defendant**

Defendant may offer at trial any and all portions of the following discovery documents:

    i.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Request for Admissions, Set One;

    ii.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Request for Admissions, Set Two;

    iii.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Special Interrogatories, Set One;

    iv.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Special Interrogatories, Set Two;

    v.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Request for Production of Documents, Set One

    vi.    Plaintiff's Responses to Defendant AT&T Mobility LLC's Request for Production of Documents, Set Two

    vii.    Deposition of Plaintiff

    viii.    Deposition of Victoria Yeager

    ix.    Deposition of Jon Albert (a/k/a Jon Albert-Levy);

    x.    Plaintiff's Expert Disclosure and Report;

    xi.    Affidavit of Robert B. Tarn;

    x.    Defendant's Expert Disclosure and Report.

**12. FURTHER DISCOVERY OR MOTIONS:**

    A.    **Plaintiff**

        i.    Plaintiff's counsel was only recently substituted as counsel of record in this action, and may seek a continuance of the trial date to allow counsel time to obtain, gather and review pertinent files which are still being sought.

        ii.    Plaintiff may seek to "claw back" privileged records, if any, that may have been inadvertently produced to Defendant during the course of discovery.

    B.    **Defendant**

Defendant does not anticipate filing any further discovery or pretrial motions.

Defendant would oppose any motion for continuance. This case has been pending since 2007, and Defendant seeks its expeditious resolution. Plaintiff's failure to retain trial counsel until the eleventh hour is his own doing. Plaintiff's previous attorney, Joanna Mendoza, moved to withdraw in February 2011, and the Court granted that motion in April. Also in April, Plaintiff received notice that a jury trial was scheduled for December. Thus, Plaintiff had ample warning that he needed to locate trial counsel, and ample opportunity to do so. Moreover, it is not the case that Plaintiff was somehow unable to locate his current counsel, John Zarian, until recently. In fact, Mr. Zarian has been representing Plaintiff in at least one other litigation matter since January 2011. Finally, Defendant seeks the opportunity to examine Plaintiff at trial, and Defendant might be deprived of that opportunity -- in light of Plaintiff's age -- if trial is further delayed.

To the extent that Plaintiff has ever produced privileged records to Defendant, that privilege has been expressly waived. Plaintiff's prior counsel expressly told Defendant's counsel on multiple occasions that the privilege was waived, including during the transcribed deposition of General Yeager on July 16, 2009. However, in order to avoid any unnecessary motion practice before the Court, Defendant will return the documents at the pre-trial conference.

**13.  STIPULATIONS:**

The parties do not make any stipulations at this time.  However, in order to allow for more efficient trial proceedings, counsel for the parties will endeavor to work together in order to stipulate to the admissibility of appropriate exhibits or facts.

**14.  AMENDMENTS-DISMISSALS:**

The parties do not request any amendment or dismissal at this time.

**15.  SETTLEMENT NEGOTIATIONS:**

The parties do not believe that further settlement negotiations and/or a court settlement conference under L.R. 270 would be helpful.

**16.  AGREED STATEMENTS:**

Presentation of this case to the jury upon an Agreed Statement of Facts does not appear feasible at this time.

**17. SEPARATE TRIAL OF ISSUES:**

Based on the claims at issue in this action, the separate trial of issues is neither feasible nor advisable at this time.

**18. IMPARTIAL EXPERTS-LIMITATION ON EXPERTS:**

There is no need for the Court to appoint an impartial expert or limit the number of expert witnesses in this action.

**19. ATTORNEYS' FEES:**

Plaintiff is seeking to recover his attorneys' fees pursuant to the statutes that govern his second cause of action (violation of California Civil Code § 3344) and third cause of action (violation of the Lanham Act, 15 USC § 1125(a)). Plaintiff will seek such fees in compliance with the applicable manner and time limitations set forth in Local Rule 54-293.

Defendant will also seek to recover its fees under Civil Code section 3344(a). Defendant requests that a fee motion be heard in the time set forth in Local Rule 293(a) and under the criteria set forth in Local Rule 293(c).

**20. TRIAL EXHIBITS:**

The parties do not request any special handling of trial exhibits beyond the Court's usual and customary practice. However, plaintiff plans to utilize an ELMO or similar device and projection screen to present exhibits and demonstratives during the trial.

**21. PROTECTIVE ORDER:**

The parties may request the Court to enter an appropriate protective order in this action.

**22. MISCELLANEOUS:**

Besides the matters previously disclosed, the parties have no other matters to bring to the Court's attention at this time.

**23. STATEMENT OF EVERY NON-DISCOVERY MOTION AND ITS RESOLUTION:**

On March 27, 2008, Defendant filed a motion to dismiss all of Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim [Dkt. No. 13]. The Court denied Defendant's motion in its entirety on June 12, 2008, [Dkt. No. 19].

On August 27, 2008, the law firm of Wild, Carter and Tipton moved to withdraw as counsel for Plaintiff [Dkt. No. 25]. This motion was granted on September 9, 2008 [Dkt. No. 31].

On October 2, 2009, Defendant filed a motion for an order granting summary judgment on all of Plaintiff's claims on the grounds that those claims fail as matter of law [Dkt. No. 48]. The Court denied Defendant's motion in its entirety on December 7, 2009 [Dkt. No. 66].

On January 8, 2010, Defendant filed a motion, pursuant to 28 USC § 1292(b), to certify for interlocutory appeal the Court's December 7, 2009 denial of Defendant's motion for summary judgment [Dkt. No. 69]. The Court granted Defendant's motion on March 15, 2010 [Dkt. No. 75].

On June 15, 2010, the U.S. Court of Appeals for the Ninth Circuit denied Defendant's petition for permission to appeal the Court's denial of its motion for summary judgment [see Dkt. No. 76].

On September 15, 2010, the law firm of Wolf, Rifkin, Shapiro, Shulman & Rabkin, LLP moved to withdraw as counsel for Plaintiff [Dkt. No. 80]. This motion was granted on October 18, 2010 [Dkt. No. 84].

On February 24, 2011, Joanna R. Mendoza, P.C., moved to withdraw as counsel for Plaintiff [Dkt. No. 92]. This motion was granted on April 11, 2011 [Dkt. No. 95].

On July 8, 2011, Defendant filed a motion for reconsideration of the Court's December 7, 2009 denial of Defendant's motion for summary judgment [Dkt. No. 98]. On August 30, 2011, U.S. Magistrate Judge Gregory Hollows recommended that Defendant's motion be denied [Dkt. No. 104]. Defendant did not object to Judge Hollow's findings and recommendations.

**24.    REMAINING CLAIMS AGAINST EACH DEFENDANT:**

None of Plaintiff's six claims has been dismissed, and all six claims against Defendant survive and remain in this action. The claims asserted by Plaintiff against Defendant are for:

A.    Violation of California common law right to privacy (first claim for relief);

B.    Violation of California Civil Code § 2244 (second claim for relief);

C.    Violation of the Lanham Act, 15 USC § 1125(a) (third claim for relief);

D.    Unjust enrichment (fourth claim for relief);

E.    Violation of California Unfair Business Practices Act, Bus. & Prof. Code §§ 17200 *et seq.* (fifth claim for relief); and,

F.      Violation of California False Advertising Act, Bus. & Prof. Code §§ 17500 *et seq*. (sixth claim for relief).

**25.    ESTIMATED NUMBER OF TRIAL DAYS:**

Plaintiff estimates that trial will take approximately 5 days to complete.

Defendant estimates that trial will take approximately 5 full days to complete.

**26.    STATEMENT OF CASE TO BE READ TO JURY:**

A.      **Plaintiff's Proposed Statement**

The plaintiff in this civil action is General Charles E. "Chuck" Yeager, who is a former test pilot now retired from the United States Air Force. In 1947, Gen. Yeager became the first person to fly an aircraft at a speed that exceeds that of the speed of sound, also known as breaking the sound barrier or breaking MACH 1. The defendant is AT&T Mobility, LLC or "AT&T." AT&T provides wireless telephone communications, among other services, and is a successor company to Cingular Wireless.

This dispute arises out of the use of Gen. Yeager's name in a publication entitled "Cingular Wireless Announces Enhanced Emergency Preparedness Program for 2006 Hurricane Season." The publication at issue included Gen. Yeager's name without his consent.

Gen. Yeager asserts that, in creating and distributing the foregoing publication, the Defendant violated his right of publicity and unlawfully used his name or likeness, without consent, in connection with commercial activities. At trial, Gen. Yeager seeks monetary damages and injunctive relief.

AT&T admits that it used Gen. Yeager's name in the publication at issue, but asserts that its use was lawful. AT&T denies that its use of Gen. Yeager's name violated any of his rights as alleged in the Complaint or that he is entitled to any damages or an injunction.

B.      **Defendant's Proposed Statement**

On May 17, 2006, Cingular Wireless issued a community service press release announcing the steps it had taken to prepare for the 2006 hurricane season in the Southeastern United States. The announcement followed the 2005 hurricane season, which had included the well-publicized Katrina, Rita and Wilma Hurricanes. This case arises from the language used by Cingular in the Press Release. Cingular Wireless is now owned by defendant AT&T Mobility LLC. In its press release, Cingular referred to General Chuck Yeager's participation in the historic event of breaking the sound barrier.

General Yeager has brought this action and is seeking damages against AT&T as a result of his name having been used in Cingular's community service press release without his permission.

**27.   CONCLUSION:**

The parties reserve the right to supplement, expand or modify this pretrial statement as appropriate.

DATED: October 26, 2011

**ZARIAN MIDGLEY & JOHNSON, PLLC**

By/s/ *John N. Zarian*
John N. Zarian
*Attorney for Plaintiff*
*Gen. Charles E. "Chuck" Yeager (Ret.)*

**MENNEMEIR, GLASSMAN & STROUD LLP**

**KOHUT & KOHUT LLP**

By_____
Stephen Lau
*Attorney for Defendant AT&T Mobility LLC*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 26th day of October, 2011, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

                      */s/ John N. Zarian*
                      John N. Zarian