1  MENNEMEIER, GLASSMAN & STROUD LLP
   ANDREW W. STROUD (SBN 126475)
2  STEPHEN LAU (SBN 221051)
   980 9th Street, Suite 1700
3  Sacramento, CA  95814
   Telephone:    916-553-4000
4  Facsimile:    916-553-4011
   E-mail:       stroud@mgslaw.com
5
   KOHUT & KOHUT LLP
6  Ronald J. Kohut (SBN 66463)
   3554 Round Barn Blvd., Suite 204
7  Santa Rosa, CA  95403
   Telephone:  (707) 573-3100
8  Facsimile:  (707) 573-3101
   E-mail:  ronald@kohutlaw.com
9
   Attorneys for Defendant
10 AT&T Mobility, LLC

11

12                   UNITED STATES DISTRICT COURT

13                  EASTERN DISTRICT OF CALIFORNIA

14
   GENERAL CHARLES E. "CHUCK"      )   Case No. 2:07-cv-02517 (KJM-GGH)
15 YEAGER (RET.),                  )
                                   )   **DEFENDANT AT&T MOBILITY, LLC'S**
16           Plaintiff,            )   **MOTION IN LIMINE (NO. 2) TO**
                                   )   **EXCLUDE VICTORIA YEAGER'S**
17 v.                             )   **ANTICIPATED TESTIMONY ON**
                                   )   **ACTUAL CONSUMER CONFUSION**
18 AT&T MOBILITY, LLC; and DOES 1 TO )
   200, inclusive,                 )
19                                 )   Hearing Date: April 2, 2012
           Defendants.             )   Time:        1:30 p.m.
20                                 )   Trial Date:  June 4, 2012
                                   )   Courtroom:   3
21 _____ )   Judge:       Hon. Kimberly J. Mueller

22 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

23           PLEASE TAKE NOTICE that on April 2, 2012, at 1:30 p.m., or as soon thereafter

24 as counsel may be heard, in the United States District Court for the Eastern District of California,

25 Sacramento Division, Courtroom 3, located at 501 I Street, Sacramento, CA 95814, Defendant

26 AT&T Mobility, LLC ("AT&T") will and hereby does move in limine for an order excluding the

27 testimony of the following individual, Victoria Yeager, designated as a witness in this matter by

28

1  Plaintiff.  Specifically, AT&T moves to exclude any testimony from Mrs. Yeager describing

2  purported conversations that she had with unidentified third persons pertaining to their purported

3  confusion about the relationship between AT&T and Plaintiff.  Such exclusion is warranted on

4  the grounds that such testimony is without foundation and constitutes hearsay.

5          This Motion is based upon this Notice of Motion and Motion, the attached

6  Memorandum of Points and Authorities, the pleadings, records, and papers on file with this

7  Court, all matters upon which this Court may take judicial notice, and such oral arguments as the

8  Court may receive.

9  Dated: March 2, 2012          KOHUT & KOHUT LLP
                                 MENNEMEIER, GLASSMAN & STROUD LLP
10

11                       By:    /s/ Stephen Lau
12                              Stephen Lau
                                Attorneys for Defendant AT&T Mobility, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AT&T MOBILITY, LLC'S MOTION IN LIMINE (NO. 2) TO EXCLUDE VICTORIA YEAGER'S
ANTICIPATED TESTIMONY ON ACTUAL CONSUMER CONFUSION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## INTRODUCTION

4          By this motion, Defendant AT&T Mobility, LLC ("AT&T") seeks to exclude

5  Victoria Yeager's anticipated testimony regarding whether the press release at issue ("Press

6  Release") has created actual confusion among consumers.  Specifically, Mrs. Yeager intends to

7  testify that various <u>unidentified</u> <u>persons</u> indicated to her that they believed Plaintiff to be

8  associated with AT&T.  Exclusion of such testimony is warranted for two reasons.

9          First, Mrs. Yeager's testimony about these purported communications is so vague

10  that it is impossible to verify whether they actually ever took place.  Mrs. Yeager cannot provide

11  any evidence or details to corroborate those alleged communications, such as names, notes, or

12  documentation.  She cannot even provide copies of the email that she alleges she received from

13  confused members of the public.  Mrs. Yeager has effectively made it impossible for AT&T to

14  locate the unidentified persons she references, and to verify what they said and whether they were

15  actually confused.  Mrs. Yeager's "vague, uncorroborated, and clearly self-interested" testimony

16  must be excluded because it is "lacking a proper foundation and unsupported by specific facts."

17  *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F. 3d 1143, 1152 (9th Cir. 1999).

18          Second, Mrs. Yeager's anticipated testimony is rank hearsay.  Mrs. Yeager intends

19  to testify about out-of-court statements made by unidentified declarants to prove the truth of the

20  matters asserted – i.e., that they believe there to be an association between Plaintiff and AT&T.

21  Federal case law holds that such hearsay testimony is inadmissible.

22

## II.

23

## FACTUAL AND PROCEDURAL BACKGROUND

24          Plaintiff complains that AT&T mentioned his name without authorization in a

25  May 17, 2006 Press Release.  Among Plaintiff's causes of action against AT&T is a claim for

26  false endorsement under the Lanham Act.  In a false endorsement claim, the central issue is

27  whether the defendant's conduct likely confused consumers into believing that the plaintiff

28

endorsed the defendant's product. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007 (9th Cir. 2001). The Ninth Circuit applies an eight-factor test to determine whether such likelihood of confusion exists. *Id.* (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)). Among those eight factors, a "critical factor" is evidence of actual consumer confusion. *Kournikova v. Gen. Media Commc'ns*, 278 F. Supp. 2d 1111, 1126 (C.D. Cal. 2003); *see also Matrix Motor Co., Inc. v. Toyota Motor Corp.*, 290 F. Supp. 2d 1083, 1093 (C.D. Cal. 2003) ("The Ninth Circuit has held that 'lack of evidence about actual confusion after an ample opportunity for confusion can be a powerful indication that the [purported infringement] does not cause a meaningful likelihood of confusion.'").

AT&T deposed Plaintiff on July 16, 2009. In that deposition, AT&T asked Plaintiff whether he knew of a single consumer who actually believed that Plaintiff endorsed AT&T. Plaintiff answered that he did not:

> Q:  Do you know of anyone who was confused by the press release into thinking that you endorse AT&T products?
> A:  I can't answer the question because I don't know what they're thinking.
> Q:  Do you have any knowledge of that at all?
> A:  No.
> Q:  Do you know of anyone who actually decided to purchase AT&T's services as a result of seeing this name on the press --
> A:  Of course not.
> Q:  So you have no knowledge of that?
> A:  No.

Deposition of General Charles E. "Chuck" Yeager (Ret.) ("C. Yeager Depo.") at 61:23-62:4.

AT&T deposed Mrs. Yeager on July 17, 2009. During her deposition, Mrs. Yeager referred to three instances in which she purportedly communicated with persons who either believed that Plaintiff endorsed AT&T, or asked whether he did so.

### A.    Mrs. Yeager's Purported Communication with an Unidentified Person from DIRECTV

In deposition, AT&T asked Mrs. Yeager whether she tried to negotiate any endorsement contracts with telecommunication companies on behalf of Plaintiff. Deposition of Victoria Yeager ("V. Yeager Depo.") at 107:4-6. Mrs. Yeager responded: "I started to, probably

about the time of this press release, and that killed it." *Id.* at 107:7-8.  The following is Mrs.

Yeager's description of her conversation with an unidentified representative at DIRECTV:

> Q.   Okay.  And what happened.  Let's talk about Directv.  First of all, what happened with Directv?
> A.   Well, at a certain point, either the first call or the second call, somebody mentioned this press release and said, well, what are you doing with AT&T, and I said nothing.
> Q.   Is that somebody at Directv?
> A.   Somebody at Directv, yea.
> Q.   And do you know who that was?
> A.   No.  I really don't.  They've – I've tried to look for that, but they've changed leadership, as I understand it, and ownership. Or maybe just leadership.  I don't know.
> Q.   Do you have notes of that conversation with Directv?
> . . .
> A.   I'll look.  I don't think so, but I'll look.

*Id.* at 107:18-108:9.  Later, when asked whether she can recall anything else the DIRECTV

representative said about the Press Release, Mrs. Yeager answered: "No.  I just remember them –

no, I don't."  *Id.* at 109:18-20.  Mrs. Yeager never produced any notes of her purported

conversation with DIRECTV.  Declaration of Andrew W. Stroud in Support of Motions  in

Limine ("Stroud Decl.") at ¶ 9.

> **B.    Mrs. Yeager's Purported Conversation with Unidentified Person from Disability Resources, Inc.**

Later in the deposition, AT&T asked Mrs. Yeager how she first heard about the

Press Release.  Mrs. Yeager responded as follows:

> A.   I was trying to think about this.  It was either – we got some [e-mail] from the public saying, oh, now you're with AT&T.  We'll have to buy AT&T.  But there was somebody I think, and I have to go research a little bit more, that called up and said, oh, do you think AT&T will be willing to support DRI [Disability Resources, Inc.]?  And I said, what are you talking about?  I think that's what that – that's how I found out, and I went and looked on the Internet.
> But it was somebody that said -- because if General Yeager is attached with a company or a fund-raiser, other people will jump on board, friends I'm talking about.  And there's certainly a following on the web site and just people that follow any postings that we do, and they -- they're an audience, a ready audience.
> Q.   Okay.  Did -- was this person who called you, do you know if this person was from DRI?

A.    One of the fund-raisers, I think, but I have to – I'm not absolutely certain it
was he.  I have to go – I was trying to find it last night, and I didn't quite
find any notes that would make me sure.
Q.    Do you know if you have any notes?
A.    I didn't find them but I'll look.
Q.    Okay.  And again, counsel – if you do locate them, would you please give
them to your counsel?
A.    Yeah.

V. Yeager Depo. at 110:1-23.

Later in the deposition, Mrs. Yeager once again mentioned her conversation with

the DRI representative.

Q.    And are you aware of anybody who was confused into thinking that
General Yeager endorsed AT&T or its products?
A.    Yes.
Q.    Who is that?
A.    Me.  No, not really.  Not that I can think of right now except for the guy
that called, and I'll try to figure out who that was in the three or four calls.
Q.    Again, that was the DR – the gentleman from DRI?
A.    Yes.

*Id*. at 136:14-24.  Again, Mrs. Yeager never produced any notes reflecting that this conversation

with DRI took place.  Stroud Decl. at ¶ 9.

**C.    Purported Emails from Unidentified Visitors of Plaintiff's Web Site**

Elsewhere in the deposition, AT&T followed up on Mrs. Yeager's prior testimony

that she might have heard about the Press Release from "E-mails off our web site."  *Id*. at

109:23-24.  Here is the testimony that followed:

Q.    Okay.  And then you indicated something about E-mails that were received on the
web site.  What did you mean by that?
A.    There is a place on our web site that says contact us, and the E-mails come to us.
Q.    Okay.  And did you receive some E-mails about AT&T or about this press
release?
A.    Yes.  Asking us is General Yeager endorsing AT&T, and do we need to
now buy AT&T or Cingular it was at the time.  Are we now endorsed or
are we now supposed to buy Cingular products.
Q.    Do you have copies of those E-mails?
A.    No.  I – didn't occur to me to keep them.

V. Yeager Depo. at 111:2-12.  Mrs. Yeager then testified that Plaintiff's Web site

(www.chuckyeager.com) is serviced by Robert Tarn and maintained on servers belonging to the

DEFENDANT AT&T MOBILITY, LLC'S MOTION IN LIMINE (NO. 2) TO EXCLUDE VICTORIA YEAGER'S
ANTICIPATED TESTIMONY ON ACTUAL CONSUMER CONFUSION

1   San Fernando Valley Engineers Council.  *Id.* at 112:3-113:6.  Subsequently, AT&T issued a

2   subpoena to Mr. Tarn requesting any and all email messages received through the Web site that

3   reference either Cingular or AT&T.  Stroud Decl. at ¶ 11.  Mr. Tarn's search uncovered six

4   messages, five of which are "spam," and none of which bear any resemblance to what Mrs.

5   Yeager described.  *Id.*, Ex. I.  Mrs. Yeager has still not produced the purported email messages

6   she referenced in her testimony *(id.* at ¶ 10), even though AT&T requested that she conduct an

7   appropriate search for that email.  V. Yeager Depo. at 114:14-115:7.

### III.

### ARGUMENT

**A.   Victoria Yeager's Anticipated Testimony About Actual Consumer Confusion Is Inadmissible Because It Is Lacking in Foundation and Probative Value.**

12         As described above, the only testimony that Plaintiff intends to offer about actual

13   consumer confusion caused by the Press Release comes from his wife, Victoria.  In her

14   deposition testimony, Mrs. Yeager referred to three occasions in which she purportedly spoke to

15   persons who were confused about the relationship between Plaintiff and AT&T.  Those consist

16   of: (1) a telephone call with an unidentified representative at DIRECTV, (2) a telephone call

17   from an unidentified representative of Disability Resources, Inc., and (3) her receipt of email

18   messages from visitors of Plaintiff's Web site.[1]

19         Mrs. Yeager's accounts of these various communications are similar in their

20   vagueness and selectivity.  With respect to the representatives from DIRECTV and DRI, Mrs.

21   Yeager could not recall the names of the persons she spoke to, their titles, or even their gender.

---

[1]         Significantly, two of these instances did not involve consumers or members of the buying public per se.  Rather, DIRECTV and DRI are corporate entities who (by Mrs. Yeager's account) were considering a business association with Plaintiff.  "The Ninth Circuit has . . . indicated that it does not regard evidence of confusion on the part of business clients or associates as necessarily probative of actual consumer confusion."  *Matrix Motor Co., Inc. v. Toyota Motor Corp.*, 290 F. Supp. 2d 1083, 1094 (C.D. Cal. 2003) (*citing Japan Telecom, Inc. v. Japan Telecom American, Inc.*, 287 F.3d 866, 874 (9th Cir. 2002)).  On this basis alone, any testimony from Mrs. Yeager relating to her conversations with DIRECTV and DRI representatives should be excluded as irrelevant.

457.01.TRIAL.MIL.actual.confusion.wpd                         7

1   Nor could she recall how many times she purportedly spoke to those persons.  Nor could she

2   produce any notes or documentation reflecting those alleged conversations.  Significantly, Mrs.

3   Yeager could recall little about the contents of those conversations other than that those third

4   parties happened to mention an association between Plaintiff and AT&T.  As for the email

5   messages she allegedly received through Plaintiff's Web site, neither she nor the webmaster can

6   provide hard or electronic copies.  Consequently, Mrs. Yeager leaves no way for AT&T to verify

7   whether those communications actually took place, or exactly what each of those third parties

8   had to say.  (Indeed, Mrs. Yeager's accounts of those communications are so vague that it is

9   unclear whether any of those third parties actually said that the <u>Press Release led them to believe</u>

10  <u>that Plaintiff endorses AT&T.</u>)  That lack of verifiability is convenient for Mrs. Yeager, who

11  obviously holds an interest in the outcome of this lawsuit.

12          The Ninth Circuit has ruled that such vague, self-interested testimony is

13  inadmissible to establish consumer confusion in intellectual property disputes.  In *Filipino*

14  *Yellow Pages*, the plaintiff publication company published a phone book called the "Filipino

15  Yellow Pages."  *Filipino*, 193 F.3d at 1144-45.  The plaintiff sued a rival publisher for

16  infringing its alleged trademark in that term.  *Id*.  In opposing summary judgment, the plaintiff

17  submitted a declaration from its own president (Jornacion) to establish that the defendant's use of

18  a purported trademark confused the public, leading to $82,000 in losses for the plaintiff.  *Id*. at

19  1145-46.  The district court held that Jornacion's testimony was inadmissible, and the Ninth

20  Circuit affirmed:

21              In his declaration, Jornacion testified that [plaintiff] had suffered lost revenues of
                at least $82,000 as a result of consumer confusion generated by [defendant's] use
22              of the term "Filipino Consumer Yellow Pages" in its advertising.  <u>Jornacion was</u>
                <u>unable to identify any of the supposedly confused consumers who contacted him</u>
23              <u>regarding incorrect placement of their advertisements, however</u>.  Accordingly,
                [defendant] objected to these portions of Jornacion's testimony as lacking a
24              proper foundation and unsupported by specific facts.  The district court sustained
                these objections, striking Jornacion's claim of lost revenue, as well as his claim of
25              contacts by confused advertisers.  <u>In light of the apparent lack of a foundation for</u>
                <u>Jornacion's comments</u>, the district court's evidentiary rulings were not erroneous.
26

27  *Id*. at 1151-52 (emphasis added).  The Ninth Circuit went on to find that Jornacion's self-

28

1  interested testimony also lacks "substantial probative value." *Id*. at 1152.  In particular, the Ninth

2  Circuit found that Jornacion was a "partial source" whose "vague, uncorroborated, and clearly

3  self-interested testimony" was insufficient to defeat summary judgment against the plaintiff's

4  trade dress claim.  *Id*.

5          *Filipino Yellow Pages* is not alone in rejecting unverifiable testimony about

6  consumer confusion from biased sources.  In *Matrix Motor Co., Inc. v. Toyota Motor Corp.*, the

7  plaintiff alleged that consumers were confused by the defendant's use of the plaintiff's purported

8  trademark.  *Matrix Motor*, 290 F. Supp. 2d at 1093.  The court found that the plaintiff's claims of

9  actual confusion were "unreliable" and unsubstantiated by evidence.  *Id*.  In particular, the court

10  noted that "[the plaintiff's] CEO could not provide any further information, such as names of

11  people who were allegedly confused, the dates of any inquiries, the nature of the alleged

12  confusion, or any documentary evidence supporting MMC's allegations."  *Id*. at 1093-94.

13  Similarly, in *Global Mfr. Group v. Gadget Universe.com*, 417 F. Supp. 2d 1161 (S.D. Cal. 2006),

14  the court rejected testimony by the plaintiff's president offered to establish consumer confusion

15  in a trade dress action.  There, the plaintiff's president testified at deposition that he heard ten

16  voice mail messages from consumers expressing confusion, but was unable to provide the names

17  of those callers.  *Id*. at 1175.  The court found that such testimony had little probative value due

18  to the absence of "specific facts."  *Id*.

19          Here, too, the Court should exclude Mrs. Yeager's testimony about her alleged

20  communications with purportedly confused third parties.  Like the declaration rejected by the

21  Ninth Circuit, Mrs. Yeager's anticipated testimony is "vague, uncorroborated, and clearly self-

22  interested."  Indeed, Mrs. Yeager has effectively insulated her testimony from corroboration by

23  not providing any identifying information about the persons with whom she purportedly spoke.

24  Thus, her testimony is inadmissible because it is lacking a proper foundation and unsupported by

25  specific facts.

26  / / /

27

28
DEFENDANT AT&T MOBILITY, LLC'S MOTION IN LIMINE (NO. 2) TO EXCLUDE VICTORIA YEAGER'S
ANTICIPATED TESTIMONY ON ACTUAL CONSUMER CONFUSION

1

**B.    Victoria Yeager's Anticipated Testimony About Actual Consumer Confusion Is Inadmissible Hearsay.**

2

3          Mrs. Yeager's testimony should also be excluded pursuant to Federal Rule of

4    Evidence 802.  Mrs. Yeager intends to testify that she heard various third parties say that they

5    thought there to be a relationship between Plaintiff and AT&T.  But because Mrs. Yeager cannot

6    identify those third parties, AT&T has had no opportunity to depose them about exactly what

7    they said or what they believed.  Nor will AT&T have any opportunity to cross-examine these

8    third parties before a jury.  And unlike controlled consumer surveys conducted by non-party

9    experts, Mrs. Yeager's reports of her communications with third parties are without any element

10   of rigor or objectivity.  It is precisely this unfairness and unreliability that the hearsay rule was

11   designed to prevent.

12          *Icon Enters. Int'l, Inc. v. American Prods. Co.*, 2004 U.S. Dist. LEXIS 31080

13   (C.D. Cal. 2004) is instructive.  In *Icon*, the plaintiff sought to have non-party retailers testify that

14   customers were confused by the defendant's use of a purported trademark.  *Id.*, at *37.  The

15   defendants moved to exclude such testimony as hearsay, arguing "that Plaintiffs have no

16   corroborating documentation or specific details regarding the statements, such as the identity of

17   the third parties, when the calls were made, exactly what was said, what the callers were

18   confused about, and whether they were actual customers of Plaintiff."  *Id*.  The *Icon* court agreed,

19   holding that "the testimony of the retailers that unidentified consumers were confused is

20   inadmissible."  *Id*. at *47.

21          In so ruling, the *Icon* court surveyed a series of Ninth Circuit cases in which

22   litigants sought to admit the statements of unidentified third parties to establish consumer

23   confusion.  As the *Icon* court noted, courts routinely reject such evidence as inadmissible

24   hearsay.  *See Matrix Motor Co.,* 290 F. Supp. 2d at 1094 (testimony that unidentified consumers

25   were confused, unsupported by documentary evidence or details, is "unreliable and nothing more

26   than inadmissible hearsay"); *Avery Dennison Corp. v. Acco Brands Inc.*, 1999 U.S. Dist. LEXIS

27   21464, at *54 (C.D. Cal. 1999) (declaration from plaintiff's employee that he received phone

28

1  calls from confused consumers was inadmissible hearsay because "no identification is made of

2  the people allegedly confused, and no reason or explanation is given by these unidentified people

3  for their confusion"); *Fierberg v. Hyundai Motor Am.*, 1997 U.S. Dist. LEXIS 22453 (C.D. Cal.

4  1997) (ruling that letters offered by plaintiff's sponsors regarding consumer confusion was

5  double hearsay)); *Alchemy II, Inc. v. Yes! Entm't Corp.*, 844 F. Supp. 560, 569-70 n.12 (C.D.

6  Cal. 1994) (ruling that plaintiff's claims of misdirected phone calls, a declaration regarding

7  third-party comments showing confusion, and a newspaper article referring to defendant's

8  product as a newer 'version' of plaintiff's product, were all inadmissible hearsay).  Post-*Icon*

9  cases regarding the same issue are in accord.  *See Instant Media, Inc. v. Microsoft Corp.*, 2007

10  U.S. Dist. LEXIS 61443, at *37 (N.D. Cal 2007) (rejecting plaintiff's evidence of consumer

11  confusion in trademark case because "a summary of purported telephone calls and written

12  inquiries constitutes inadmissible hearsay"); *Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F.

13  Supp. 2d 1089, 1097 (D. Ariz. 2006) (in false endorsement action, "testimony, offered to prove

14  the truth of the matter asserted – that consumers did think the [product at issue] was endorsed by

15  Plaintiffs – is inadmissible hearsay").

16          Here, Mrs. Yeager intends to testify about out-of-court statements made by

17  various unidentified third parties for the truth of the matter they assert, i.e., that they believed

18  Plaintiff to endorse AT&T.  This Court should exclude any such statements as inadmissible

19  hearsay.

20  / / /

21

22

23

24

25

26

27

28

DEFENDANT AT&T MOBILITY, LLC'S MOTION IN LIMINE (NO. 2) TO EXCLUDE VICTORIA YEAGER'S
ANTICIPATED TESTIMONY ON ACTUAL CONSUMER CONFUSION

1

**IV.**

2

**CONCLUSION**

3          For the foregoing reasons, AT&T respectfully requests that the Court exclude

4 Victoria Yeager's anticipated testimony concerning her alleged communications with third

5 parties who purportedly expressed a belief that Plaintiff was associated with AT&T.

6 Dated: March 2, 2012                    KOHUT & KOHUT LLP
                                          MENNEMEIER, GLASSMAN & STROUD LLP

7

8

                        By:     /s/ Stephen Lau
9                               Stephen Lau
                                Attorneys for Defendant AT&T Mobility, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT AT&T MOBILITY, LLC'S MOTION IN LIMINE (NO. 2) TO EXCLUDE VICTORIA YEAGER'S
ANTICIPATED TESTIMONY ON ACTUAL CONSUMER CONFUSION