1
2
3
4
5
6
7
8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10  GENERAL CHARLES E. "CHUCK"
    YEAGER,
11
            Plaintiff,                    No. CIV S-07- 2517 KJM GGH
12
        vs.                               ORDER
13
    AT&T MOBILITY, LLC,
14
            Defendant.
15  _____/

16          On May 18, 2012, the court heard argument on the parties' respective motions in

17  limine. (ECF 167.) Ronald Kohut and Stephen Lau appeared for defendant AT&T Mobility,

18  LLC; John Zarian appeared for plaintiff Gen. Charles Yeager.  The court granted plaintiff's

19  motion 4 (ECF 132), but otherwise resolves the parties' motions as discussed below, and defers

20  ruling on the motions not mentioned below until trial.

21          The motions have been decided based on the record presently before

22  the court. Each ruling is made without prejudice and is subject to proper renewal, in whole or in

23  part, during trial. If a party wishes to contest a pretrial ruling, it must do so through a proper

24  motion or objection, or otherwise forfeit appeal on such grounds. *See* FED. R. EVID. 103(a);

25  *Tennison v. Circus Circus Enters., Inc.*, 244 F.3d 684, 689 (9th Cir. 2001) ("Where a district

26  court makes a tentative in limine ruling excluding evidence, the exclusion of that evidence may

1

1  only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial."

2  (alteration, citation and quotation omitted)).

3  I.      Plaintiff's Motions in limine

4          A.      Motion to Exclude Witness Tina Brown (ECF 129)

5                  Plaintiff moves to exclude (1) several exhibits related to AT&T's emergency

6  preparedness, (2) witness Tina Brown and (3) testimony related to AT&T's advertising costs in

7  2006. AT&T states it will not introduce one of the challenged exhibits and it will not introduce

8  its advertising costs. The disputed testimony and exhibits center on the hurricane season of 2005

9  and its effects on the Gulf South in order to show the context of the press release at issue in this

10 litigation. At the hearing, the court denied this motion on the condition the parties set an

11 expedited schedule for the deposition of Ms. Brown. The parties have failed to do so.

12                 "If a party fails to provide information or identify a witness as required by Rule

13 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

14 motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

15 *See R & R Sails, Inc. v. Insur. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012); FED. R. CIV. P.

16 37(c).  Defendant gave all of its proposed exhibits to plaintiff at the Final Pretrial Conference in

17 October.  Defendant argues that its failure to provide earlier disclosure is harmless because this

18 litigation has always centered on the nature of the press release as it related to the 2005 hurricane

19 season.  Plaintiff objects that he would have pursued discovery differently had defendant's

20 disclosure been properly made and moreover, if discovery is reopened, plaintiff would pursue his

21 own new discovery. At hearing, the court found the presentation of Ms. Brown's testimony and

22 the exhibits would be harmless if plaintiff was offered the opportunity to depose Ms. Brown

23 prior to trial. The court ordered the parties to identify a location and time for Ms. Brown's

24 deposition to occur. Because the parties could not agree on a schedule, the court imposes one. If

25 defendant wishes to preserve its right to call Ms. Brown as a witness, she shall be made available

26 for deposition no later than Thursday, May 31, 2012, at a location of plaintiff's choosing.

2

B.      Motion to Exclude Evidence of Other Lawsuits (ECF 131)

        Plaintiff has moved to exclude evidence of other lawsuits as evidence of plaintiff's litigiousness. Defendant contends that other lawsuits are relevant because they relate to an essential element of plaintiff's claims, that plaintiff possesses a protected right in his name. *See Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (noting that to prevail, plaintiff must prove it has a protectible ownership interest in the mark). According to defendant, these other actions show that plaintiff has assigned his protected interest in his name to a third party. Plaintiff counters that the other actions are irrelevant because Gen. Yeager's rights to control his publicity are not seriously disputed.

        Defendant provides a complaint from 2011 in another action filed by Gen. Yeager wherein he pleads that "Gen. Yeager has assigned and/or is assigning some or all of his rights, title and interest in his name, image and trademarks to [co-plaintiff]." (ECF 147-1 at 4). Defendant provides another complaint where Gen. Yeager is a co-plaintiff with The General Chuck Yeager Foundation in his Lanham Act and trademark claims. (ECF 147-2.) That complaint does not explain what rights The General Chuck Yeager Foundation has, but it does assert that "Gen. Yeager has taken steps to utilize and protect his name identity and image." (*Id.* at 5.)  Defendant also provides an unpublished California Court of Appeal opinion, which recounts the acrimonious fight over assets between members of Gen. Yeager's family wherein the court declined to address whether Gen. Yeager's "life story" rights are personal or whether they are owned by a separate corporate entity, which owns his biography. (ECF 147-3.)

        Defendant claims these documents are relevant to show that Gen. Yeager may not be the sole owner of the rights in his "life story" and therefore may not be entitled to prosecute this action.  Federal Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." The documents identified by defendant are of questionable relevance. The latter two in particular, do not make any fact more or less probable.

1   Whatever probative value admission of these cases may present, such probative value "is

2   substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading

3   the jury, undue delay, [or] wasting time." FED. R. EVID. 403. Plaintiff's motion is granted.

4         C.     Motion to Exclude Evidence Controverting Early Findings  (ECF 134)

5           Earlier in this litigation, defendant moved for summary judgment on its

6   affirmative defense that the press release at issue does not constitute "commercial speech." (ECF

7   48.) The court denied defendant's motion, finding the press release in fact did constitute

8   commercial speech. (*See* ECF 66 at 10-11, 13.) Plaintiff now seeks to exclude any evidence or

9   argument controverting that finding as violating "law of the case doctrine."  "Under the 'law of

10  the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided

11  by the same court, or a higher court, in the same case." *United States v. Bad Marriage*, 439 F.3d

12  534, 538 (9th Cir. 2006).  A denial of a motion for summary judgment does not become law of

13  the case.  *Dessar v. Bank of America Nat. Trust and Sav. Ass'n*, 353 F.2d 468, 470 (9th Cir.

14  1965).

15          However, determining whether speech is protected or not is a question of law. *See*

16  *Bolger v. Youngs Drug Prods. Corp*., 463 U.S. 60, 65 (1983); *Connick v. Myers*, 461 U.S. 138,

17  148 n.7, 150 n.10 (1983).  The court has already addressed this issue at length in its summary

18  judgment order and its denial of defendant's motion for reconsideration. If no new facts could

19  affect the court's earlier findings, the presentation to the jury may be streamlined to dispense

20  with potentially confusing and irrelevant argument.  *Portsmouth Square v. Shareholders*

21  *Protective Comm.*, 770 F.2d 866, 868-69 (9th Cir. 1985) ("If the pretrial conference discloses

22  that no material facts are in dispute and that the undisputed facts entitle one of the parties to

23  judgment as a matter of law," the court may summarily dispose of the case or claims.). On the

24  first day of trial, the court will allow defendant to proffer the material facts, if any, it expects

25  may disturb the court's earlier finding.

26  /////

1      D.      Motion to Exclude Expert David Drews (ECF 135)

2              A party seeking disqualification of an expert in order to prevent disclosure of the

3      party's confidential information bears the burden of showing (1) it had an objectively reasonable

4      belief that a confidential relationship existed and (2) that the party actually disclosed confidential

5      information. *Stencil v. Fairchild Corp.*, 174 F.Supp.2d 1080 (C.D. Cal. 2001); *In re JDS*

6      *Uniphase Corp. Securities Litigation*, No. C-02-1486 CW (EDL), 2006 WL 2845212 (N.D. Cal.

7      Sept. 26, 2006). Here, Mrs. Yeager submitted an affidavit claiming she had a conversation with

8      Mr. Torres that lasted approximately one hour and that she discussed litigation strategy with him.

9      On this basis, plaintiff seeks to impute disqualification from Mr. Torres to Mr. Drews because

10     they are employed by the same firm, CONSOR. Plaintiff has failed to show that Mrs. Yeager's

11     call with Mr. Torres established an objectively reasonable belief a confidential relationship

12     existed because it was a relatively brief conversation in anticipation only of possibly retaining

13     CONSOR. Moreover, Mrs. Yeager's generally alleging that she discussed litigation strategy and

14     disclosed confidential information, without any further specificity, is insufficient to warrant

15     disqualifying Mr. Torres, much less impute any disqualification to Mr. Drews, given there is no

16     evidence or suggestion that Mr. Drews ever spoke with Mr. Torres about this litigation. Plaintiff

17     has failed to carry his burden; this motion is denied.

18  II.    Defendant's Motions in limine

19      A.      Motion to Exclude Expert Jon Albert-Levy  (ECF Nos. 122 & 126)

20              Defendant argues the expert report by Jon Albert-Levy is not supported by proper

21     economic methodology or evidence. Defendant does not argue that Mr. Albert-Levy is not

22     qualified to be an expert, but rather that his methods are inadequate.  Mr. Albert-Levy based his

23     initial report on a review of the press release and the deposition testimony of AT&T's Mark

24     Seigel. He did not review plaintiff's other endorsement contracts or their terms. His

25     supplemental report is based on an email exchange with an employee of Neil Armstrong where

26     he represented that he may wish to contract with Mr. Armstrong. Defendant contends an email

5

exchange under false pretenses with an employee of Mr. Armstrong is wholly lacking as an expert methodology. Defendant further submits a recent email exchange between defendant and the same employee of Neil Armstrong wherein she states that Mr. Armstrong simply does not do national campaign advertising. (ECF 187). According to defendant, this further undermines Mr. Albert-Levy's purported methodology.

Rule 702 of the Federal Rules of Evidence allows the court to admit expert testimony when it will "assist the trier of fact" and it is "based upon sufficient facts or data;" "is the product of reliable principles and methods;" and the expert "applied the principles and methods reliably. . . ." The rule thus reflects the holding of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which recognized the district court's gatekeeping function over expert testimony. *Frye v. Warden*, 2010 WL 3210767, at *1 (E.D. Cal. Aug. 10, 2010). In *Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court held that a district court's gatekeeping function was not limited to scientific testimony but rather covered all expert testimony. It declined to impose a rigid test but instead gave the district courts "latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id*. at 152 (emphasis in original). The burden is on the proponent of the evidence. *Lust v. Merrell Dow Pharmaceuticals, Inc*., 89 F.3d 594, 598 (9th Cir. 1996).

In *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000), the Ninth Circuit provided a set of principles to apply in situations such as this where the proffered expert relies on experiential knowledge:

. Whether the opinion is based on scientific, technical, or other specialized knowledge;

. Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;

. Whether the expert has appropriate qualifications-i.e., some special knowledge, skill, experience, training or education on that subject matter.

1             . Whether the testimony is relevant and reliable.

2             . Whether the methodology or technique the expert uses "fits" the
conclusions (the expert's credibility is for the jury).

3

            . Whether its probative value is substantially outweighed by the
4             risk of unfair prejudice, confusion of issues, or undue consumption
of time.

5

6 *Hankey*, 203 F.3d at 1168 (citations omitted); *see also United States v. Alatorre*, 222 F.3d 1098,

7 1104 (9th Cir. 2000) (admitting agent's "experiential expert testimony" where agent "had twelve

8 years of experience as a special agent, specialized training in the methods by which narcotics are

9 used and sold, and extensive knowledge of marijuana smuggling as a result of his work as a case

10 agent and in other capacities."); *United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007) ("A

11 district court's reliability determination does not exist in a vacuum, as there exist meaningful

12 differences in how reliability must be examined with respect to expert testimony that is primarily

13 experiential in nature as opposed to scientific."); *but see Zenith Electronics Corp. v. WH-TV*

14 *Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2007) (explaining that expert relying on industry

15 expertise "either had no method or could not describe one. He was relying on intuition, which

16 won't do.").  In his deposition testimony, Mr. Albert-Levy explains his long career in celebrity

17 endorsements and that his assignment of value was the product of applying that experience. For

18 instance, when questioned over how he came to his initial valuation, Mr. Albert-Levy states:

19             In a broad sense, I refer mentally to thousands of documents that
I've been acquainted with, part of, for the last 33 years regarding
20             celebrity negotiations, contracts, et cetera, which outlines how
much people are being paid, being offered, et cetera. . . [As] a
21             general body of information, there's those thousands of other
documents that I – you know, that lead me to certain opinions, so
22             in the broad sense.

23 (Deposition of Mr. Albert-Levy, August 11, 2009, 121:15-122:2.) Elsewhere in his deposition he

24 outlines those factors he considers relevant in determining a valuation for celebrity

25 endorsements. (*Id.* at 99:25-100:10.) Mr. Albert-Levy's application of his general knowledge to

26 the present factual situation is not so unreliable as to merit his disqualification. However, to the

extent defendant seeks to preclude Mr. Albert-Levy's testimony regarding customer confusion, the court defers that ruling until trial. The court will allow voir dire prior to Mr. Albert-Levy's testimony.  Defendant's motion is otherwise denied.

Defendant also moves to bar opinion testimony from Mr. Albert-Levy related to his untimely supplemental report, which increased by fourfold the value he assigned to Mr. Yeager's endorsement. This new report was not based on any evidence not already known to Mr. Albert-Levy at the time of his deposition. However, he waited until February of 2012 to supplement his earlier expert report, relying mainly on an email exchange that occurred in 2009. As discussed above, with an untimely disclosure under Rule 26, admission is allowed only where the late disclosure is harmless or substantially justified.  Here, there is no justification for plaintiff's expert to have waited two and half years to supplement a report based on information that was known to him at his original deposition. In addition, the disclosure is not harmless because it significantly alters the monetary figure Mr. Albert-Levy would project as damages. As such, the supplemental report and conclusions based thereon are properly excluded. Defendant's motion is granted in this respect.

IT IS SO ORDERED.

DATED:  May 30, 2012.

_____
UNITED STATES DISTRICT JUDGE