IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GENERAL CHARLES E. "CHUCK" YEAGER,

      Plaintiff,

vs.

AT&T MOBILITY, LLC,

      Defendant.

      No. CIV S-07- 2517 KJM GGH

      ORDER

/

      On June 4, 2012, the present action went to trial on two claims: plaintiff General Charles Yeager's claim that defendant AT&T Mobility, LLC violated his common law right to publicity and plaintiff's related right to publicity claim based on California Civil Code section 3344. (ECF 208.)  On June 8, 2012, the jury returned a verdict in favor of plaintiff on the California statutory claim and in favor of defendant AT&T Mobility, LLC on the common law claim. (ECF 222.) Defendant now moves for judgment as a matter of law on the California statutory claim under Federal Rule of Civil Procedure ("Rule") 50. (ECF 242.) For the reasons set forth herein, the court denies defendant's motion.

/////

/////

/////

1

I. <u>BACKGROUND</u>

In the wake of Hurricanes Katrina, Rita and Wilma, large portions of the southeastern United States were affected by cell phone outages. This was a source of frustration to cell phone users who were anxiously attempting to locate relatives and loved ones. In response to coverage failures during the 2005 hurricane season, defendant updated its emergency preparedness plans. One new addition was a mobile unit that transmits a cell signal and is capable of housing repair-persons. Defendant named this unit a mobile access command headquarters, otherwise known as "M.A.C.H." In announcing its preparation for the upcoming hurricane season through a press release on PRNewswire.com, defendant used the name of plaintiff Charles Yeager because his singular achievement of breaking the sound barrier and achieving "Mach 1" dovetailed with the acronym used to describe the mobile units. In its fifth paragraph, the press release stated:

> Nearly 60 years ago, the legendary test pilot Chuck Yeager broke the sound barrier and achieved Mach 1. Today, Cingular is breaking another kind of barrier with our MACH 1 and MACH 2 mobile command centers, which will enable us to respond rapidly to hurricanes and minimize their impact on our customers.

Upon learning that defendant used his name without his permission, plaintiff initiated the present suit.

II. <u>JUDGMENT AS A MATTER OF LAW</u>

Federal Rule of Civil Procedure 50(b) governs renewed motions for judgment as a matter of law, following a motion made during trial under Rule 50(a), and provides that the court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." In rendering its decision on a Rule 50 motion, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Lakeside–Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009); *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and

that conclusion is contrary to the jury's verdict." *Josephs*, 443 F.3d at 1062.  "The verdict will be upheld if it is supported by substantial evidence, 'even if it is also possible to draw a contrary conclusion.'" *First Nat. Mortg. Co. v. Federal Realty Inv. Trust*, 631 F.3d 1058, 1067 (9th Cir. 2011) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). In reviewing the complete record, the court should disregard evidence favorable to the moving party that the jury was free to disbelieve. *Id*.  However, judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott*, 556 F.3d at 803.  This court's limited role is to determine whether sufficient evidence was elicited at trial to support the claim on which plaintiff prevailed.

III.  ANALYSIS

The jury returned a verdict in plaintiff's favor on his claim based on California Civil Code § 3344. Section 3344 provides in pertinent part:

> Any person who knowingly uses another's . . . likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof.

CAL. CIV. CODE § 3344(a). "To sustain a claim for violation of California Civil Code section 3344, a plaintiff must prove: (1) the defendant's knowing use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage; (3) lack of consent; (4) resulting injury and (5) a direct connection between the alleged use and the commercial purpose." *Palermo v. Underground Solutions,* Inc., No. 12cv1223 WQH (BLM), 2012 WL 3134255, at *5 (S.D. Cal. August 1, 2012) (alterations and quotation omitted); *see also*

/////
/////
/////
/////

3

*Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 413-15 (9th Cir. 1996). At trial, the court instructed the jury as follows:

> Plaintiff claims that defendant violated his statutory right to publicity under Civil Code 3344. To establish this claim, plaintiff must prove all of the following:
>
> (1) That defendant knowingly used plaintiff's name to advertise its products or services;
>
> (2) That the use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign;
>
> (3) That defendant did not have plaintiff's consent;
>
> (4) That defendant's use of plaintiff's name was directly connected to defendant's commercial purpose;
>
> (5) That plaintiff was harmed; and
>
> (6) That defendant's conduct was a substantial factor in causing his harm.

(ECF 219 at 18.) Defendant argues that (1) the press release cannot be characterized as an advertisement under the statute, (2) that AT&T did not knowingly use plaintiff's name for advertising purposes, (3) that plaintiff's name was connected to news or public affairs, and (4) that the press release is shielded by the First Amendment.[1]

First, defendant argues that section 3344 only applies to traditional, paid advertising. The statutory language itself rebuts this argument, because it applies to any use "for purposes of advertising *or selling*, *or soliciting purchases of*, products, merchandise, goods or services, without such person's prior consent . . ." CAL. CIV. CODE § 3344(a) (emphasis added). This expansive definition accords with the statute's proscription of the use of someone's name to promote commercial interests without duly compensating that person. The jury had before it the

---

[1] Defendant also argues unpersuasively that plaintiff failed to prove ownership of his name. Plaintiff testified that he owned the interest in his name and defendant did not attempt to rebut that assertion during trial.

press release and defendant's witnesses' testimony regarding the drafting of the release and the reasons for its contents, including use of plaintiff's name. (*See, e.g.*, ECF 236 at 65-189; ECF 237 at 9-55). There is sufficient evidence in the record to support the jury's determination that the release was not an advertisement.

Second, defendant argues that section 3344 requires proof of "knowing" use, that the evidence at trial showed defendant did not consider its press release to be an "advertisement" and therefore, it could not knowingly use plaintiff's name for advertising purposes. Plaintiff argues in response that "knowing" as relevant to the statute merely applies to use of the plaintiff's identity. The parties' dispute is mooted by the fact that the jury had to find both types of knowledge under the first element in the instruction. There was ample evidence admitted at trial supporting these findings, in the form of testimony by the drafter, who admitted that his task was to procure favorable press treatment, that one purpose of the press release "was to create positive association in consumers' minds" and that third party coverage in the press is more valuable than traditional advertising (ECF 236 at 163, 171-172), that defendant's primary competitors made similar announcements (*id*. at 187-188), that a "hook" typically leads a press release and that the opening statement of a "B-roll" video designed to accompany the press release mentions plaintiff (ECF 237 at 27-28), that the press release included non-newsworthy self-promotional statements (*id*. at 38-39), and that the press release aimed to "let people know we were very focused on improving our ability to respond to natural disasters and get service up as quickly as possible" (*id*. at 42). There also was testimony by defendant's emergency preparedness coordinator that the press release overstated the amount of money spent on hurricane preparedness (ECF 236 at 98-99), that all of the elements of program announced had existed previously (*id*. at 115), that she was unsure why or when the acronym changed to MACH prior to the press release (*id*. at 106-108, 111-112), that the promotional B-roll video leading with mention of plaintiff was withheld during discovery (*id*. at 96-97), that the presentation from which the press release was drawn mentioned the positive public relations benefits of

5

emphasizing the work of the emergency program (*id*. at 154), and that defendant hurried to get the press release out a few days before the hurricane season began even though all components were not confirmed to be in place (*id*. at 156).[2]

Moreover, defendant's parsing of the word "advertisement" is repetitive of its first argument addressed above. As noted, the jury considered the written product issued by defendant, plaintiff's name in the document describing a new service enhancement and the manner in which defendant released the statement. The jury's conclusion is not inconsistent with the evidence admitted at trial.

Third, defendant argues the release was related to news and public affairs. For the reasons addressed above, the jury's finding that the press release was not related to public affairs was supported by substantial evidence.

Finally, defendant reasserts its First Amendment defense, which the court addressed prior to trial. *See Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089 (E.D. Cal. 2009). The record established at trial does not disturb the previously-assigned district judge's

---

[2] Even if the court construed defendant's argument as a mistake of law defense, defendant failed to request such an instruction and thereby waived it as a defense. As the case law repeatedly notes, the word "knowing" was added to section 3344 in order to preserve the mistake or inadvertence defenses that are unavailable in response to a common law claim for right of publicity. *See, e.g., Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 346 n.6 (1983) ("Section 3344, subdivision (a) requires a knowing use whereas under case law, mistake and inadvertence are not a defense against commercial appropriation."). Understood in this context, and given the statute's roots in the tort of invasion of privacy, the paradigm case for mistake is where a name is used without knowing its real life owner will be affected by the use. *See, e.g., Kerby v. Hal Roach Studios*, 53 Cal. App.2d 207 (1942) (amorous mailing signed in plaintiff's name and sent to 1000 men actionable as libel notwithstanding defendant's belief the name was fictional); *Taylor v. Hearst*, 107 Cal. 262, 270 (1895) (plaintiff's name was mistakenly published in defamatory article when the publisher meant an individual with a different middle initial; "'One who has published a libel on another cannot successfully resist the latter's action for redress by showing he did not intend to publish it, and that its publication was due to carelessness, inadvertence, or mistake. Hence it is not a sufficient defense that the publication of a libel resulted from an error in setting type.'" (citing *McAllister v. Detroit Free Press Co.*, 76 Mich. 338 (1889)); 5 Witkin, Summary of Cal. Law, Torts § 626, p. 932 (10th ed. 2005) ("Thus, where the defendant or the defendant's employees through an honest and reasonable mistake defame the *wrong person*, the defendant is liable." (emphasis in original)). Therefore, it is doubtful that the mistake or inadvertence defense embedded in the knowing requirement of section 3344 extends to mistakes of law as well as fact.

analysis. Given the nature of the press release as at least minimally promotional, and the use of plaintiff's name and accomplishment as a framing device for defendant's newly developed service enhancement, which it was announcing in a competitive environment in the hope of obtaining free media coverage, the press release here qualifies as commercial speech.

Accordingly, defendant's motion for judgment as a matter of law is denied.

IT IS SO ORDERED.

DATED: August 30, 2012.

_____
UNITED STATES DISTRICT JUDGE